# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY CRAIG, et al., | : | |
| | : | |
| Plaintiffs | : | Civil Action No. 4:08-CV-2317 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| RITE AID CORPORATION and | : | (Magistrate Judge Carlson) |
| ECKERD CORPORATION d/b/a | : | |
| RITE AID, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM ORDER

In the above-captioned action, the Defendants have moved the Court to restrict the Plaintiffs' ability to discover a number of potentially relevant documents on the grounds that the documents are protected from disclosure by the "self-critical analysis privilege." Specifically, Defendants argue that the Court should apply this privilege to shield from disclosure certain documents related to Defendants' voluntary internal assessment of their compliance with the Fair Labor Standards Act ("FLSA"), labor laws, and existing bargaining agreements, an assessment the company undertook as part of a store-level restructuring program. Plaintiffs oppose Defendants' assertion of the privilege, and argue that the privilege is not recognized by courts within the Third Circuit, and that even where such a privilege is recognized, the privilege has been properly limited to documents that were prepared as part of mandatory

governmental reports or other governmental compulsion. Additionally, Defendants contend that even where the privilege has been recognized, courts have refused to apply the privilege to the types of documents at issue in this case.

We have carefully considered the parties' respective positions, and the case law that has addressed the issue. Because we find that the documents that Defendants seek to protect from disclosure may be relevant to Plaintiffs' claims in this case, and because we do not find that they can be properly shielded from discovery by the invocation of a broadly-framed self-critical analysis privilege, we reject Defendants' reliance upon this privilege to withhold production of the responsive documents at issue.

## II. FACTUAL BACKGROUND

According to the Defendants, Rite Aid, a national pharmaceutical retailer, engaged in a voluntary self-critical analysis in 2008 and early 2009, aimed at assessing the company's compliance with the FLSA, certain labor laws, and existing bargaining agreements, as part of the company's restructuring of its stores, and the implementation of changes in how its stores are operated. (Doc. 223, Ex. A, Decl. of Kristin Crandall at ¶¶ 4-5.) Defendants represent that Kristin Crandall, Rite Aid's Vice President of Field Human Resources, led the human resources aspect of the store structure project team under the direction of Rite Aid's in-house counsel. (Id. at ¶ 4.)

The project included participation by numerous high-level corporate employees from Rite Aid's operations, compensation, and human resources departments. (Id. ¶ 5.)

According to Rite Aid, the company's analysis included information-gathering, assessments, drafts, and recommended changes to store operations, and all of this information and material was shared with Rite Aid's counsel for the purpose of obtaining legal advice, and in anticipation of future FLSA litigation. Rite Aid represents that "the store structure team was conducting a candid internal evaluation of Rite Aid's current and future compliance with the FLSA, and considering whether changes to store structures were appropriate and would also be in compliance." (Doc. 223, at 3.)

Defendants now assert that the "self-critical analysis privilege" permits them to withhold documents produced or compiled as part of this 2008-2009 internal assessment. Plaintiffs argue that the privilege either is not recognized within the Third Circuit, or should not be found to apply to the kinds of documents at issue, which were generated as part of a voluntary initiative that Defendants undertook.

## III. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). In this case, Plaintiffs are seeking to discover documents and materials that Rite Aid generated as part of its internal analysis regarding the company's compliance with the FLSA, labor laws, and bargaining agreements, all of which were apparently conducted as part of the company's voluntary restructuring initiatives. There does not appear to be any real dispute that the materials that were created and compiled as part of Rite Aid's self-assessment may be relevant to Plaintiffs' claims in this case, or that it may be reasonably calculated to lead to the discovery of admissible evidence.

Instead, in their motion Defendants argue only that they should not be forced to respond to discovery requests that seek production of documents created or compiled as part of the internal self-assessment, because these materials are protected by a self-critical analysis privilege. In general, the self-critical, or self-evaluation, privilege has been found in some cases to protect evaluative materials created in

4

accordance with governmental requirements, or for purposes of "self-improvement." Davis v. Kraft Foods North America, No. 03-6060, 2006 U.S. Dist. LEXIS 87140, 2006 WL 3486461, at *1 (E.D. Pa. Dec. 1, 2006) (citing Note, The Privilege of Self-Critical Analysis, 96 Harv. L. Rev. 1083, 1083 (1983). As one commentator has explained:

> The self-critical analysis qualified privilege allows individuals or businesses to candidly evaluate their compliance with regulatory and legal requirements without creating evidence that may be used against them in future litigation. The rationale for this qualified privilege is that critical self-evaluation fosters the compelling public interest that individuals and businesses comply with the law.

6 Moore's Federal Practice § 26.48[2] (3d ed.).

This privilege has been recognized and employed by some courts to protect from disclosure certain information in cases where a compelling public interest is found to outweigh the needs of private litigants and the judicial system for access to information relevant to the litigation. See Zoom Imaging, L.P. v. St. Luke's Hosp. & Health Network, 513 F. Supp. 2d 411, 413 (E.D. Pa. 2007) (citing 6 Moore's Federal Practice ¶ 26.48[2] and Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431 (E.D. Pa. 1978)). The privilege was not recognized at common law, Zoom Imaging, L.P., 513 F. Supp. 2d at 413, and appears not to have been recognized by the Third Circuit. See Alaska Elec. Pension Fund v. Pharmacia Corp., 554 F.3d 342, 351 n.12

(3d Cir. 2009) (observing in a footnote that the privilege "has never been recognized by this Court and we see no reason to recognize it now."); see also Davis, No. 03-6060, 2006 U.S. Dist. LEXIS 87140, 2006 WL 3486461, at *4 ("The Third Circuit has not recognized the self-critical analysis privilege, and is unlikely to do so.").[1] In addition to the fact that the privilege not recognized at common law, and has not been embraced by the Third Circuit, Congress has not created a self-critical analysis privilege. Zoom Imaging, L.P., 513 F. Supp. 2d at 413. In light of this dearth of support for the privilege, the question presented in this case is whether the privilege ought to be recognized under federal common law and, if so, whether it should be applied to the type of reports that Defendants seek to shield in this case.

Rule 501 of the Federal Rules of Evidence "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in light of reason and experience.'" Jaffee v. Redmond, 518 U.S. 1, 8 (1996). By enacting Rule 501, Congress indicated its intent "not to freeze the law of privileges. Its purpose rather

---

[1] Other circuit courts have similarly declined to recognize or apply the privilege. See, e.g., Burden-Meeks v. Welch, 319 F.3d 897 (7th Cir. 2003); Union Pac. R.R. v. Mower, 219 F.3d 1069 (9th Cir. 2000); In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000); Reynolds Metals Co. v. Rumsfeld, 564 F.2d 663, 667 (4th Cir. 1977). But see LaClair v. City of St. Paul, 187 F.3d 824, 828-29 (8th Cir. 1999) (affirming district court's exclusion of documents based on the privilege, but not explicitly adopting the privilege); Bredice v. Doctors Hosp., Inc., 479 F.2d 920 (D.C. Cir. 1970) (affirming district court's application of the privilege).

was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis . . . .'" Trammel v. United States, 445 U.S. 40, 47 (1980) (quoting 120 Cong. Rec. 40, 891 (1974) (statement of Rep. William Hungate)).

Yet, while Rule 501 permits courts the latitude to recognize new privileges when facts and circumstances may warrant, the Third Circuit has admonished that "[t]he legislature, not the judiciary, is institutionally better equipped to perform the balancing of competing policy issues required in deciding whether the recognition of a . . . privilege is in the best interests of society." In re Grand Jury, 103 F.3d 1140, 1154 (3d Cir. 1997). Moreover, Rule 26 of the Federal Rules of Civil Procedure manifests a clear intention to limit Rule 501's flexibility "by favoring full disclosure of facts during discovery." Zoom Imaging, L.P., 513 F. Supp. 2d at 413 (citing Wei v. Bodner, 127 F.R.D. 91, 95-96 (D.N.J. 1989). As a result of this liberal policy favoring open discovery, the creation of new privileges is disfavored. Herbert v. Lando, 441 U.S. 153, 175 (1979); In re Grand Jury, 103 F.3d 1140, 1149 (3d Cir. 1997); see also United States v. Nixon, 418 U.S. 618, 710 (1974) (observing that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth."); In re Grand Jury, 103 F.3d at 1154 (courts should be "circumspect about creating new privileges based on perceived public policy considerations.").

Consistent with the Supreme Court's hesitance to recognize new and expansive privileges that frustrate discovery, the Supreme Court itself has been reluctant to expand upon common-law privileges. See University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990) (declining to create a common-law privilege to protect peer review materials from discovery in a Title VII case). This hesitance grows out of a recognition that privileges contravene the principle that "the public . . . has a right to every man's evidence." United States v. Bryan, 339 U.S. 323, 331 (1950). When privileges are created or recognized, they must be narrowly construed and allowed "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel, 445 U.S. at 50 (quoting Elkins v. United States, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting).

In keeping with the foregoing principles that caution against the recognition of new and broadly framed privileges in civil litigation, courts within the Third Circuit have recently, with few exceptions, declined to recognize or apply a self-critical analysis privilege. See, e.g., Smith v. Life Investors Ins. Co. of America, No. 2:07-681, 2009 U.S. Dist. LEXIS 96310, 2009 WL 3364933, at *8 (W.D. Pa. Oct. 16, 2009)("the 'self critical analysis privilege' is not recognized by Pennsylvania or the

Third Circuit and does not apply." citing Alaska Elec. Pension Fund v. Pharamacia, supra); Zoom Imaging, L.P., 513 F. Supp. 2d at 417 (declining to adopt a self-critical analysis privilege to prevent the discovery of confidential documents produced by an outside consultant for an organizational study of a competing provider's radiological practice); Davis v. Kraft Foods North America, No. 03-6060, 2006 U.S. Dist. LEXIS 87140, 2006 WL 3486461, at *2 (E.D. Pa. Dec. 1, 2006) (refusing to recognize a self-critical analysis privilege where the defendant sought to withhold certain corporate documents, including a document that contained analysis and recommendations regarding the defendant's compensation efforts for minority and non-minority employees).

Furthermore, in a number of cases, courts have found that if the self-critical analysis privilege has any application in civil litigation between private parties, it only applies narrowly and extends to mandatory reports and other materials that are prepared at the direction of the government. See, e.g., Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 434 (E.D. Pa. 1978);[2] see also Paladino v. Woodloch Pines,

---

[2] The court in Webb observed that even where the requested material constitutes subjective, evaluative materials prepared in the course of fulfilling governmental requests, such "material may not always be precluded from discovery." 81 F.R.D. at 434. Furthermore, the court noted that "several factors" provide guideposts in assessing the application of the privilege: (1) the materials generally are those prepared "for mandatory governmental reports"; (2) only subjective, evaluative materials are subject to protection; and (3) courts are

9

Inc., 188 F.R.D. 224, 226 (M.D. Pa. 1999) ("[T]he 'self-critical analysis privilege will not extend to reports, analyses, surveys and the like ***which are not mandated by the government***.") (original emphasis); Frazier v. Se. Pa. Transp. Auth., No. 84-3004, 1988 U.S. Dist. LEXIS 12311, 1988 WL 117869 (E.D. Pa. Nov. 1, 1988) (refraining from extending the self-critical analysis to reports, analyses, and surveys that were not mandated by the government, and which contained only objective information).

Although we recognize that Defendants have pointed to some case law from within this circuit where courts have either recognized the existence of the privilege, or applied it to the case under consideration, we are doubtful of the privilege's validity in the Third Circuit, in light of the appellate court's recent admonition that: "The self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now. Cf. Union Pac. R.R. Co. v. Mower, 219 F.3d 1069, 1076 n. 7 (9th Cir.2000) (calling the privilege 'novel,' and noting that the Ninth Circuit has not recognized the privilege)." Alaska Elec. Pension Fund v. Pharmacia Corp. 554 F.3d 342, 351 n. 12 (3d Cir. 2009). Furthermore, even if the privilege has, at times, been recognized within this circuit, it appears that it has not been widely applied in cases such as the one at bar, where a defendant has voluntarily undertaken

---

mindful of plaintiffs' need for such materials, and have denied discovery "only where the policy favoring exclusion of the materials ***clearly outweighs the plaintiff's need***." Id. (emphasis added).

an internal review of its own practices and policies, in contrast to a situation where an entity prepared an internal report that was compelled by law or government regulation. In consideration of these factors, mindful of the fact that the subject matter of the report appears to have relevance to Plaintiffs' claims, and recognizing that we are to exercise caution and restraint in applying privileges since "[t]he legislature, not the judiciary, is institutionally better equipped to perform the balancing of competing policy issues required in deciding whether the recognition of a . . . privilege is in the best interests of society," In re Grand Jury, 103 F.3d 1140, 1154 (3d Cir. 1997), we conclude that Defendants may not rely upon a broad assertion of the self-critical analysis privilege to withhold documents related to Defendants' internal assessment of their compliance with the FLSA, labor laws, and existing bargaining agreements, generated as part of Defendants' store restructuring program.[3]

---

[3] This ruling, of course, does not strip the Defendants of the ability to legitimately protect materials that are embraced by other, universally recognized legal privileges. Defendants also assert that in addition to the self-critical analysis privilege, each of the documents it has withheld from production is also protected by the attorney-client privilege, or otherwise constitutes attorney work product. The parties have not addressed the application of either the attorney-client privilege or the work-product doctrine to the documents at issue, and we, therefore, express no opinion as whether either may apply. We understand that Defendants have furnished Plaintiffs with an updated privilege log, and that the parties are attempting to reach an agreement with respect to privilege issues that will obviate the need for further Court order. (Doc. 223, at 1-2 n.1.) To the extent

## IV. ORDER

Accordingly, for the reasons set forth above, the Court finds that Defendants' are not entitled to rely upon the self-critical analysis privilege to withhold documents related to Defendants' internal assessment of their compliance with the FLSA, labor laws, and existing bargaining agreements, an assessment the company undertook as part of a store-level restructuring program in 2008 and 2009. As a result of this finding, IT IS HEREBY ORDERED THAT Defendant's Motion and Brief in Support of Defendants' Reliance on the Self-Critical Analysis Privilege (Doc. 223) is DENIED.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: December 29, 2010

---

the parties remain unable to resolve any further disagreements regarding the application of privileges to the documents in question, the Court stands ready to assist them.