# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY CRAIG, et al., | : | |
| | : | |
| Plaintiffs | : | Civil Action No. 4:08-CV-2317 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| RITE AID CORPORATION and | : | (Magistrate Judge Carlson) |
| ECKERD CORPORATION d/b/a | : | |
| RITE AID, | : | |
| | : | |
| Defendants | : | |

## ORDER

## I. INTRODUCTION

Shirley Craig and others (collectively, "Plaintiffs") initiated this action for overtime compensation under the Fair Labor Standards Act ("FLSA") with the filing of a collective action complaint on December 29, 2009. (Doc. 1.) At bottom, the case concerns Plaintiffs' claims that Rite Aid misclassified Assistant Store Managers as exempt employees under the FLSA. The District Court in this case subsequently entered an order conditionally certifying the following collective class for purposes of providing notice of the action and an opportunity to opt-in: "All individuals classified as exempt from the FLSA's overtime pay provisions and employed as salaried Assistant Store Managers during any workweek within the previous three years in any of the 4, 901 stores identified in Rite Aid Corporation's April 17, 2009

Annual Report as being operated by Rite Aid Corporation." (Doc. 72.) Following entry of this order, Defendants sought leave to take an interlocutory appeal of the District Court's order granting conditional certification (Doc. 83), and this request was denied (Doc. 99). Plaintiffs thereafter issued notices and consent forms to potential members of the collective class. The parties have indicated that at least 1,073 individuals have opted-in as plaintiffs ("Opt-ins") in this case.

The parties are now locked in a dispute about how to proceed with discovery of the Opt-ins. For their part, Plaintiffs urge the Court to permit representative discovery by authoriziing depositions of 50 randomly selected Opt-ins, and to authorize written discovery of 50 separate, randomly selected Opt-ins. (Doc. 221, at 2.) Plaintiffs represent that discovery of these 100 randomly selected Opt-ins, coupled with additional corporate discovery and depositions of each of the deponents' supervisors, will provide counsel with sufficient information for the parties and the Court to determine whether additional discovery is necessary.[1] (Doc. 221, at 2-3.) Plaintiffs argue that should the Court adopt their proposal, no party would be prejudiced from later arguing that additional discovery is necessary or warranted. Furthermore, Plaintiffs contend that their proposal benefits from being efficient;

---

[1] We note that Plaintiffs have further represented that they would consent to have Defendants select the Opt-ins who would be subject to discovery, provided that such selection is randomly done. (Doc. 225, at 1.)

2

arguing that to authorize more expansive individual discovery, as Defendants propose, would be unnecessarily costly and burdensome, and would serve only to undermine the one of central purposes of conditionally certifying collective actions in these types of cases, namely the efficient resolution of claims.

In response to Plaintiffs' letter setting forth the foregoing discovery proposal, Defendants' have filed their own motion in which they urge the Court to adopt a far more expansive plan for conducting individual discovery of the Opt-ins. (Doc. 222.) As part of this proposed discovery plan, Defendants request that the Court authorize the parties undertake a "pilot study" to determine whether Plaintiffs' claims under the Fair Labor Standards Act in this collective action are amenable to representative proof. (Doc. 222, at 2.) If this pilot study concludes that the claims in this case are amenable to representative proof, Defendants further seek to structure discovery to ensure that the discovery ultimately undertaken is, in their view, "representative." (Id., at 6.) In summary, Defendants explain their proposed discovery plan as follows:

- Written Discovery: Written discovery to all 1,073 Opt-ins in the form of a questionnaire.

- Depositions: An initial pilot study utilizing depositions of 180 of the 1,073 Opt-ins to determine whether representative proof is possible and, if so, what will be required. The 180 deponents would be selected in groups of 30 from six separate employee groups, or "strata," to ascertain a statistically significant

3

sampling. The six suggested strata are:

1. Assistant Store Managers (ASMs) from non-24 hour store locations with less than a year of experience;
2. ASMs from non-24 hour store locations with more than a year of experience;
3. ASMs from 24-hour store locations with less than a year of experience;
4. ASMs from 24-hour store locations with more than a year of experience;
5. ASMs who worked at former Eckerd brand stores with less than one year of experience; and
6. ASMs who worked at former Eckerd brand stores with more than one year of experience.

(Id., at 6-7.) Defendants submit that a random selection of Opt-ins to be deposed, without consideration of each of these strata "serves little purpose." (Id., at 7.) Instead, Defendants maintain that their own proposal "is based on objective, statistically valid and reliable criteria that would favor neither Plaintiffs nor Defendants." (Id.) In addition to individual written discovery and an depositions of 180 ASMs, Defendants propose that Plaintiff be permitted to take a Rule 30(b)(6) deposition at Defendants' corporate level, and that Plaintiff be allowed to depose a store manager or district manager with supervisory authority over each Opt-in. (Id. at 8.)

We have considered the parties' competing views about the proper means of conducting discovery of the Opt-ins of the conditionally certified class, and conclude

that adopting Defendants' proposal at this time would be prohibitively expensive, overly burdensome, and ultimately unnecessary. Moreover, we find that to require the parties to undertake Defendants' proposed discovery plan would serve to undermine one of the central purposes of conditional certification of collective actions, namely efficient resolution of this litigation. Furthermore, we have no doubt that embracing an unnecessarily complicated and time-consuming discovery process at the outset of this litigation would unreasonably delay the ultimate resolution of Plaintiffs' claims.

In contrast, we agree that Plaintiffs' more limited proposal of starting with 50 depositions of randomly selected Opt-ins, coupled with written discovery to 50 separate, randomly selected Opt-ins, together with corporate discovery and depositions of each of the deponents' supervisors is likely to provide more than sufficient evidence to allow the parties to assess whether still additional discovery is necessary. Furthermore, we note that neither Defendants nor Plaintiffs will be prejudiced from later seeking additional discovery if it turns out that the preliminary discovery has failed to generate sufficient evidence in this case. Finally, we again note that Plaintiffs have consented to allow Defendants to randomly select the 100 Opt-ins who will be subject either to depositions or written discovery. Accordingly, we will authorize the parties to proceed in the manner of representative discovery

proposed by the Plaintiffs, without prejudice to either party returning to the Court to seek additional discovery if they conclude that the representative discovery authorized has been inadequate.

## II. DISCUSSION

As Plaintiffs aptly note, it is common in FLSA actions for disputes to arise over the proper scope of discovery of opt-in plaintiffs, with plaintiffs often seeking to engage in limited representative discovery, and defendants urging courts to require more expansive individualized discovery. Defendants do not dispute that in a number of cases, courts have reconciled considerations underlying the FLSA by concluding that representative discovery is appropriate. Indeed, our research reveals that a number of district courts have concluded that large-scale individualized discovery such as that sought by Defendants in this case is neither appropriate nor necessary in FLSA cases. See, e.g., Perez-Benites v. Candy Brand, LLC, No. 07-CV-1048, 2010 U.S. Dist. LEXIS 115590, at *5-6 (W.D. Ark. Oct. 27, 2010) (entering a protective order to prevent defendants from taking additional discovery where they had already been permitted to take representative discovery from a 20% sample of opt-in plaintiffs); In re Am. Family Mut. Ins. Co. Overtime Pay Litig., 2009 U.S. Dist. LEXIS 39383, at *6 (D. Colo. Apr. 27, 2009) ("[Defendant] is not entitled to individual discovery from each and every opt-in Plaintiff, but rather discovery from

a certain number of Plaintiffs."); Cranney v. Carriage Servs., Inc., No. 07-cv-1587, 2008 U.S. Dist. LEXIS 113606, at *15 (D. Nev. June 16, 2008) (authorizing discovery of 10% of opt-in plaintiffs, unless defendants demonstrated a need for additional discovery, observing that to "Permit[] the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources."); Geer v. Challenge Fin. Investors Corp., No. 05-1109, 2007 U.S. Dist. LEXIS 33498, at *13 (D. Kan. May 4, 2007) (granting protective orders after defendant noticed depositions for all named and opt-in plaintiffs); Smith v. Lowe's Home Ctrs., 236 F.R.D. 354, 357-58 (S.D. Ohio 2006) (limiting discovery of opt-ins to a "statistically significant sample," but expressly noting that defendant could move for broader discovery if appropriate after conducting initial discovery of sample); Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (allowing parties to take discovery from 25 opt-in plaintiffs, named plaintiffs, and six other opt-in plaintiffs chosen by defendants in a case involving more than 300 opt-ins); Adkins v. Mid-America Growers, Inc., 143 F.R.D. 171 (N.D. Ill. 1992) (authorizing representative discovery, after concluding that individual depositions and interrogatories were not appropriate to determine individual plaintiffs' job duties one a week-by-week and product-by-

product basis where court already concluded that the plaintiffs were similarly situated); see also McGrath v. City of Phila., No. 92-4750, 1994 U.S. Dist. LEXIS 1495 (E.D. Pa. Feb. 14, 1995) (noting that "individualized discovery is rarely appropriate in FLSA collective actions"). Many of these representative discovery plans have entailed an initial discovery survey of approximately 10% of the putative plaintiff population, and one similar in scope to the Plaintiffs' proposal here.

At the same time, we recognize that other courts have treated opt-in plaintiffs in a collective action as ordinary party plaintiffs who are subject to the full range of discovery that is authorized by the Federal Rules of Civil Procedure. See, e.g., Abubakar v. City of Solano, No. 06-2268, 2008 U.S. Dist. LEXIS 17456, at *10 (E.D. Cal. Feb. 22, 2008) (allowing individual discovery of approximately 160 opt-ins); Coldiron v. Pizza Hut, Inc., No. 03-5865, 2004 U.S. Dist. LEXIS 23610, at *5-7 (C.D. Cal. Oct. 25, 2004) (allowing individual discovery of all 306 opt-in plaintiffs); Krueger v. New York Telephone Co., 163 F.R.D. 446 (S.D.N.Y. 1995) (permitting discovery addressed to all 152 opt-in plaintiffs); Rosen v. Reckitt & Colman, Inc., No. 91-cv-1675, 1994 U.S. Dist. LEXIS 16511 (S.D.N.Y. 1994) (allowing individual discovery of 49 opt-ins); Brooks v. Farm Fresh, Inc., 759 F. Supp. 1185, 1188 (E.D. Va. 1991) (allowing discovery of all 127 opt-ins); Kaas v. Pratt & Whitney, No. 89-8343, 1991 U.S. Dist. LEXIS 11177 (S.D. Fla. 1991) (authorizing individual

discovery of all 100 opt-in plaintiffs).  We note, however, that these cases typically appear to have involved farm smaller pools of putative plaintiffs, where the costs and burdens of discovery are vastly less significant.

Recognizing that there are competing strains of thought with respect to the appropriateness of authorizing full-scale individual discovery in collective action cases under the FLSA, and considering these different approaches in the context of the instant case before the Court that includes over 1,000 Opt-ins, we conclude that implementing Defendants' proposed discovery plan at the outset of discovery would be unduly burdensome, unnecessary, and likely to undermine the interests of efficiency and fairness in this particular case.  We therefore will not adopt the discovery plan put forward by Defendants, including the use individualized interrogatories to over 1,000 opt-in plaintiffs.

We are also unpersuaded by Defendants' argument regarding their proposal for deriving a statistically significant sampling, developed by Defendants' own expert, in order to fairly conduct representative discovery of the Opt-ins.  Notably, at least one district court from within this circuit has observed that "representative" does not automatically mean that "the group of testifying plaintiffs [must] reflect a statistically significant sample for the jury to consider their testimony and render conclusions." Stillman v. Staples, Inc., No. 07-849, 2009 U.S. Dist. LEXIS 42247, at *76 (D.N.J.

May 15, 2009). Indeed, we note that such representative proof has been admitted at trial in FLSA cases over objections have it does not meet vigorous statistical sample standards. Id. Given that this kind of proof is admissible at trial, we find that it also constitutes an adequate method for conducting discovery designed to identify admissible evidence. Defendants have not persuaded the Court that the statistical analysis upon which their expert relied in developing a plan to create six strata of ASMs is the sole means of conducting this initial discovery. Of course, we recognize, as the parties concede, that we should be prepared to examine the assumptions underlying the initial representative discovery as the case moves forward.

Furthermore, Plaintiffs have conceded that they have no opposition to Defendants selecting 50 deponents and 50 Opt-ins who will respond to written discovery, so long as the sampling of these individuals is done randomly. We find that this proposal is sufficient to allow the parties to engage in discovery of a representative sampling, and that it is unnecessary to engage in a preliminary pilot study, and subsequent selection of 180 deponents from six different strata identified only by Defendants' own statistician, whose own bases appear to be of questionable value. Moreover, we are hard-pressed to understand why all Opt-ins in this case should be required to respond to written discovery, and Defendants fail to justify this broad request.

In contrast to the lack of a reasonable basis for such wide-ranging individual discovery, this request would almost surely lead to an expensive, inefficient process that would unnecessarily delay and frustrate the process in this action. We thus agree that the random selection of 50 deponents and 50 separate, randomly selected Opt-ins who will respond to written discovery should provide an adequate representative sampling for the parties to evaluate the suitability of this case to proceed as a collective action. This discovery will be further supplemented by the use of a deposition at the corporate level, and the depositions of each of the deponents' supervisors. We find that such representative discovery is appropriate in this case and consistent with the approach of other courts administering collective actions with substantial numbers of opt-in plaintiffs. In reaching this conclusion, we emphasize that after the parties have engaged in this representative discovery, the parties may return to the Court if they believe that additional discovery is warranted after examining what has been learned through this initial representative process.

### III. <u>ORDER</u>

AND NOW, this 7th day of February, 2011, upon consideration of Plaintiffs' letter requesting that the Court enter an order authorizing representative discovery (Doc. 221), and Defendants' motion in support of its own discovery plan (Doc. 222), and for the reasons set forth in the foregoing memorandum, IT IS HEREBY

ORDERED THAT Plaintiff's request is GRANTED and Defendants' motion is DENIED.

IT IS FURTHER ORDERED THAT:

1. Defendants shall randomly select 50 Opt-ins who will be subject to depositions.
2. Defendants shall randomly select 50 different Opt-ins who will be subject to written discovery.
3. Plaintiffs shall be permitted to take depositions of each of the deponents' supervisors.
4. The parties shall coordinate regarding a Rule 30(b)(6) deposition and additional corporate discovery.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge