### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHIRLEY CRAIG, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | **Civil Action No. 4:08-CV-2317** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| **RITE AID CORPORATION and** | : | **(Magistrate Judge Carlson)** |
| **ECKERD CORPORATION d/b/a** | : | |
| **RITE AID,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

## I.   INTRODUCTION

This matter comes before the Court on a dispute over Plaintiffs' request that Defendants produce advance copies of any non-bates numbered documents that Defendants intend to use as exhibits during the depositions of Opt-In Deponents.[1] Defendants declined Plaintiffs' request, asserting that the documents that they selected and identified for possible use as exhibits during depositions constituted protected attorney work product that did not need to be revealed prior to the introduction of the exhibit at the deposition.  Unable to reach an agreement on this issue, the parties submitted letter briefs to the Court outlining their respective

---

[1] Specifically, Plaintiffs have requested that Defendants be required to provide copies of non-bates numbered documents 72 hours in advance of each deposition at which the documents might be used as exhibits.

positions.  (Docs. 398, 399.)

## II.   <u>SUMMARY OF THE PARTIES' POSITIONS</u>

In support of their request, Plaintiffs observe that Defendants had made available in warehouses throughout the United States millions of pages of documents that may pertain to each Opt-In Deponent's employment, and Plaintiffs contend that the documents were kept – and produced – in utter disarray.  (Doc. 375.)  Plaintiffs also note that Defendants had represented that they were producing the documents in this fashion because they did not want to undertake the time and expense required to cull through the warehoused documents and produce a smaller quantity of documents in a more customary manner.  Although Plaintiffs considered complaining to the Court about the form of production, they agreed instead to commence review in the interest of avoiding delays in the discovery process.  Nevertheless, Plaintiffs claim that they later learned Defendants' counsel had copied a total of more than 953,000 documents from the initial production, out of which documents were to be selected for the depositions of Opt-Ins.  None of these documents have been bates numbered. Plaintiffs now contend that they "have no idea whether the non-bates-numbered documents being used at deposition were made available at the warehouse."  (Doc. 398, at 2.)

Plaintiffs concede that the identity of documents selected by lawyers for use

at depositions are generally protected as attorney work product.  (Id.) (citing <u>Sporck</u> <u>v. Peil</u>, 759 F.3d 312 (3d Cir. 1985)).   However, Plaintiffs argue that given the circumstances of the document production in this case, they should be provided advance copies of the potential deposition exhibits because they have "a substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means."  (Id., at 3) (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)).

In response, Defendants assert that Plaintiffs' request is disingenuous and should be denied.  Defendants complain that Plaintiffs insist on their request for advance copies of potential deposition exhibits, despite the fact that:  Plaintiffs have given no specific reason to believe that non-bates labeled documents were not part of the store document production that Plaintiffs reviewed; Plaintiffs could have imaged and bates labeled all of the documents Defendants produced, but chose not to do so; Plaintiffs rejected Defendants offer to provide them with the barcode number of the box in which any non-bates labeled document was located, which Plaintiffs could then cross-check against their own index of the barcoded boxes that Plaintiffs reviewed; and Plaintiffs rejected Defendants effort to allow Plaintiffs to obtain bates-labeled copies of the more than 953,000 pages that Defendants selected from the store documents production.

More fundamentally, Defendants contend that they should not be compelled to produce documents that Defendants' counsel have selected from the more than 953,000 pages that might be used as exhibits at depositions because these materials classify opinion work product of counsel – material that is afforded "an almost absolute protection from discovery." (Doc. 399, at 5) (quoting Sporck, 759 F.2d at 316.)  Alternatively, Defendants argue that even if the documents identified as possible deposition exhibits are classified only as fact-based, rather than opinion work product, they should still be protected from advance disclosure because Plaintiffs cannot demonstrate substantial hardship and lack of ability to obtain the documents by other means.  In this regard, Defendants note that Plaintiffs have had complete access to the very same documents from which Defendants' selections were made, and Plaintiffs made their own discovery selections from among these documents, which were thereafter imaged, bates labeled, and provided to them on disc.

Thus, Defendants maintain that Plaintiffs are seeking to invade the mental processes and strategy of Defendants' counsel by obtaining advance copies of documents that Defendants' counsel may use at depositions.  Defendants argue that being required to provide copies of the requested documents 72 hours prior to a deposition would further risk allowing Plaintiffs' counsel to confer with an Opt-In

deponent about questions that might be asked, and thereby undermine the integrity of the deposition process.

## III.   DISCUSSION

We have carefully considered the parties' respective letter briefs, and we have further discussed this issue with counsel during two phone conferences on July 1, 2011, and July 22, 2011.   As we informed the parties during the latest phone conference, the Court sees the current dispute somewhat differently than do the parties, and will enter an order that provides for a middle ground between their respective positions.

As a threshold matter, although the Court recognizes that Sporck is binding precedent within the Third Circuit, and that the case stands for the proposition that a lawyer's compilation of non-protected documents during the course of discovery, solely for use in preparing that lawyer's witnesses for deposition, constitutes opinion work product that is afforded "almost absolute protection from discovery." Sporck, 759 F.2d at 316; see also Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co., 32 F.3d 851, 866 (3d Cir. 1994) ("[E]fforts to obtain disclosure of opinion work product should be evaluated with particular care.").[2]  Defendants contend that the very same

---

[2]   At the same time, we are constrained to observe that more recently, the Third Circuit has "held that opinion work product protection is not absolute, but requires a heightened showing of extraordinary circumstances." In re Cendant

rule should apply in the instant action, even though the discovery at issue is not intended to remain private, but will manifestly be produced to Opt-In Deponents and Plaintiffs' counsel during the course of depositions.  Thus, unlike in <u>Sporck</u>, where the documents that counsel had identified and used to prepare witnesses were never to be revealed to opposing counsel, Defendants do not dispute that they will be producing the documents to counsel and the witnesses during the depositions themselves.  Thus, we find <u>Sporck</u> to be distinguishable to the case at bar, and we do not find that the documents that have apparently been identified as potential deposition exhibits necessarily constitute opinion work product that is subject to a greater degree of protection.

Instead, we find that the more analogous persuasive authority relevant to this dispute is found in <u>In re San Juan Dupont Plaza Hotel Fire Litig.</u>, 859 F.2d 1007 (1st Cir. 1988), a case cited with approval by the United States Court of Appeals for the Third Circuit in <u>In re Cendant Corp. Sec. Litig.</u>, 343 F.3d 658 (3d Cir. 2003).  In <u>San Juan</u>, the First Circuit upheld the district court's order requiring the parties taking a deposition to provide, five days in advance, a list of exhibits to be utilized during questioning.  The district court ordered that this pre-disclosure process be followed

---

Corp. Sec. Litig., 343 F.3d 658, 664 (3d Cir. 2003)(citing  <u>In re San Juan Dupont Plaza Hotel Fire Litig.</u>, 859 F.2d 1007 (1st Cir. 1988).

in a case involving over 2,000,000 documents and more than 2,000 depositions. The

plaintiffs appealed, arguing that the advance disclosure of the exhibits would

improperly require disclosure of attorney work product. Upon consideration, the First

Circuit upheld the district court's discovery order setting forth advance disclosure

requirements. Finding that the discovery demands of the case necessitated judicial

involvement, id. at 1015, the First Circuit found further justification in the district

court's order because the documents to be used in the depositions would be revealed

at the depositions:

> We recognize, of course, that the process of selecting relevant documents for use in depositions "is often more crucial than legal research." Shelton v. American Motors Corp., 805 F.2d 1323, 1329 (8th Cir. 1986). But as we have already pointed out, the information spotlighted by such lists (including whatever insights may be gleaned from the choice of exhibits) will undeniably be gained during the course of the deposition. Like requiring pleadings, answers to contention interrogatories, pretrial exhibit and witness lists, and trial memoranda, the district court's identification protocol merely adjusts the timing of disclosure. The situation is not remotely analogous to the situation where a party seeks an attorney's personal notes and memoranda which contain his confidential assessments of the testimony of prospective witnesses. See Hickman, 329 U.S. 512-13. Such notes and memoranda are usually prepared solely for the attorney's own use – or, at most, for confidential consideration between attorney, client, and their privies (e.g., junior counsel, investigators, retained experts). Under ordinary circumstances, the lawyer can expect that such materials will never be subject to his opponents' scrutiny – or at least, that he can effectively control whether or not such dissemination will occur. In contrast, no lawyer can be so sanguine as to expect that the opposition will not become privy to his choice of deposition exhibits; the exhibits are

7

integral to the taking of the deposition and will, by definition, have to be revealed during the session.

Id. at 1017.[3]  Indeed, although the First Circuit rejected Sporck's reasoning regarding the categorization of counsel's work product in that case as "opinion" work product, the First Circuit more aptly distinguished the decision on much the same grounds that we do today on the facts applicable to this case:

> Sporck should be distinguished because, unlike in this case, the lawyer's selection process there was never designed to see the light of day; the exhibits had been selected not for use in examination of an adverse or neutral witness, but for a markedly more private purpose– preparation of the attorney's own client.  We believe the distinction is a critical one. And Sporck, which dealt with a classic one-on-one discovery dispute – plaintiff's attempt to secure the results of defense counsel's document triage from a defendant during an adversary deposition – is also distinguishable because it did not in any way concern the district court's case management powers.

Id. at 1018.  Thus, although we acknowledge Sporck's precedential value in the separate context of work product protection for documents that are not disclosed in depositions but used solely to prepare for depositions, on the facts of the case before the Court –which involves the degree of protection afforded to documents that parties plan to disclose and use in depositions where those depositions entail numerous

---

[3]  Because we agree with this reasoning, which clearly distinguishes the context of the actions in Sporck and San Juan, we do not agree with Defendants' assertion that the "distinction [between documents compiled for witness preparation and those expected to be used at a deposition] is one without a difference."  (Doc. 399, at 6.)

witnesses, and an onerous discovery process that involves millions of pages of documents warehoused across the country that were produced in a fashion that made their review more challenging than it might have been in a less document-intensive action – we find <u>San Juan</u> to be persuasive authority relevant to the resolution of this dispute, just as the United States Court of Appeals for the Third Circuit has cited <u>San Juan</u> with approval. <u>See</u> <u>In re Cendant Corp. Sec. Litig.</u>, 343 F.3d 658, 664 (3d Cir. 2003)

Having so found, we turn to fashioning an appropriate ruling in this matter.  In fashioning this ruling we recognize that decisions regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. Thus, it has long been held that issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court.  <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion.  <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983).This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. <u>See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc</u>., 174 F.R.D. 572, 585

(D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing <u>Scott Paper Co. v. United States</u>, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

Exercising this discretion, upon careful consideration, we find that Plaintiffs have not adequately articulated the kind of hardship and substantial need necessary to justify ordering 72-hour advance disclosure of the documents that may be used as exhibits during the depositions of Opt-In Deponents. We recognize that this case, unlike <u>San Juan</u>, does not involve thousands of depositions, but rather a more discrete number of depositions. Moreover, we are sensitive to Defendants' well-placed concern that advance disclosure of the exhibits could provide Plaintiffs' counsel with an unfair opportunity to confer with witnesses in advance of depositions about the non-bates labeled exhibits that may be used, and thereby compromise witness candor and the integrity of the discovery process.

10

At the same time, we share with the parties an interest in ensuring that the depositions proceed in an orderly fashion, and that we avoid unnecessary delays in an action that will involve substantial discovery, and considerable effort of all counsel to ensure that it is completed timely.  Accordingly, we find it that requiring Plaintiffs to undertake a subsequent review of the more than 953,000 documents that Defendants culled from the initial document production, to ensure that documents used in depositions were, in fact, previously disclosed in this case, could delay and very likely compromise the discovery process now underway.

Seeking to balance these competing considerations, we will direct that Defendants produce only non-bates labeled documents that Defendants' counsel have identified for use as substantive evidence during the depositions of Opt-In Deponents, and provide copies of these documents to Plaintiffs' counsel at the outset of each deposition at which exhibits specific to that deposition may be utilized.  This ruling applies to documents which will be used as substantive evidence during these depositions, and nothing in this ruling would preclude the defendants, consistent with Rule 26(a)(3) of the Federal Rules of Civil Procedure from retaining without disclosure exhibits that they may elect to use solely for impeachment purposes at trial. Nor does this ruling constitute any waiver of privilege objections the defendants may possess. Rather, it constitutes a recognition that this privilege is limited in scope, and

that the privilege protection afforded to this material will lapse entirely during the deposition when the evidence is introduced.

Plaintiffs' counsel are advised that we are directing this advance production solely for the purpose articulated by the plaintiffs, to assess whether the documents had been disclosed in discovery, and the Court does not intend to permit Plaintiffs' counsel an unfair opportunity to confer with witnesses about the exhibits before they are presented to the witness during the deposition itself.  Indeed, Plaintiffs are hereby instructed to avoid conferring with witnesses about the documents prior to or during the deposition, or during any breaks that may be taken during the depositions, before the documents have been presented to the deponent, without the agreement of Defendants' counsel.  Instead, as Plaintiffs have represented that their central motivation in seeking advance disclosure of the exhibits is to ensure that the non-bates labeled documents were, in fact, produced during the course of discovery, we find only that they have demonstrated a hardship and need to be able to make this verification efficiently and without undue delay in this case; we do not find that Plaintiffs have demonstrated that they should be given advance notice of the documents for purposes of counseling or preparing their witnesses in advance of their depositions.

IV.  **ORDER**

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' counsel are directed to provide to Plaintiffs' counsel, at the inception of each Opt-In deposition, a copy of each non-bates labeled exhibit that may be used or introduced during that Opt-In Deponent's deposition, provided, however, that Defendants shall not be obligated to provide advance production of any exhibit that might be used solely for purposes of impeachment.

IT IS FURTHER ORDERED THAT Defendants' counsel shall also provide Plaintiffs' counsel with the barcode number of the box in which any non-bates labeled document was located, so that Plaintiffs can cross-check the exhibit against their index of barcoded boxes that they reviewed during discovery.

IT IS FURTHER ORDERED THAT Plaintiffs' counsel shall not confer with an Opt-In Deponent about any exhibit revealed at the outset of that deponent's deposition prior to the deposition, or during the deposition before the exhibit is used with the deponent, or during any breaks that may be taken during the deposition, without the agreement of Defendants' counsel.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

Dated: July 22, 2011