IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY CRAIG, et al., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 4:08-CV-2317 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| RITE AID CORPORATION and | : | (Magistrate Judge Carlson) |
| ECKERD CORPORATION d/b/a | : | |
| RITE AID, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

    **A.    Overview of the Case**

Shirley Craig and others (collectively, "Plaintiffs") initiated this action for overtime compensation under the Fair Labor Standards Act ("FLSA") with the filing of a collective action complaint on December 29, 2009. (Doc. 1) At bottom, the case concerns Plaintiffs' claims that Rite Aid misclassified Assistant Store Managers as exempt employees under the FLSA. The District Court in this case subsequently entered an order conditionally certifying the following collective class for purposes of providing notice of the action and an opportunity to opt-in: "All individuals classified as exempt from the FLSA's overtime pay provisions and employed as salaried Assistant Store Managers during any workweek within the previous three

years in any of the 4,901 stores identified in Rite Aid Corporation's April 17, 2009 Annual Report as being operated by Rite Aid Corporation." (Doc. 72) Thus far, more than 1,000 individuals have identified themselves as putative opt-in plaintiffs in the course of this litigation.

### B. Plaintiffs' Motion to Stay Briefing on Defendants' Motion for Decertification Pending Completion of Fact Discovery

Prior to the close of fact discovery, Defendants filed a "Pre-Close of Discovery Motion for Decertification." (Doc. 470) In this motion, Defendants request that the Court decertify the conditionally certified class of assistant store managers who have opted into this case – a number that by now exceeds 1,000 individual employees. Defendants have represented that the motion is properly filed at this juncture in the litigation because, in their view, the claims of the opt-in Plaintiffs simply cannot be adjudicated but in an individualized manner in separate proceedings. Accordingly, Defendants urge the Court to consider the merits of the motion even before discovery is complete.

After Defendant filed this motion, and before responding to it substantively, Plaintiffs filed a motion seeking a stay of all briefing pertaining to Rite Aid's decertification motion. (Doc. 490) In support of their motion, Plaintiffs argue that FLSA decertification motions are typically filed, and ruled on, after the close of fact

discovery. Plaintiffs maintain that this custom makes sound practical sense because, as discussed further below, the Court's decertification analysis will necessarily require the Court to evaluate multiple, non-exclusive factors in light of the totality of the evidence and the circumstances of the case. Plaintiffs contend that they have not yet been able to complete discovery that may well be relevant to this multi-factored inquiry, and consideration of Defendants' decertification motion is, therefore, premature.

In this regard, Plaintiffs argue that Defendants' move to decertify the class is simply unfair at this stage of the litigation, because although the motion was filed after Rite Aid had completed most of its own affirmative discovery, Plaintiffs have not had "a meaningful opportunity to obtain corporate-level discovery." (Doc. 491, at 1) Plaintiffs emphasize that such corporate-level discovery will be central to their opposition to Defendants' motion for decertification, and for that reason argue that they should be able to conclude this necessary discovery before the Court considers decertification.

In addition, Plaintiffs underscore that in FLSA collective actions, analysis of the totality of circumstances relevant to questions of decertification motions requires a considerable investment of resources by the parties and the Court. For this reason, Plaintiffs argue that Defendants' suggested *seriatim* approach to decertification

issues, and assertion that they may well seek to file multiple motions for decertification at whatever time they deem appropriate, risks inefficiency and needless expenditure of legal and judicial resources. For these related reasons, Plaintiffs urge the Court to stay all briefing relating to Defendants' decertification motion until after such time as both parties have had an opportunity to conclude their fact discovery, and at time when Plaintiffs contend that the record will be more complete, and permit the Court to consider certification or decertification based upon a full evidentiary record.

In opposing Plaintiffs' motion to stay briefing, Defendants observe that there is no hard and fast rule mandating that defendants refrain from moving for decertification until after the close of discovery, or until after plaintiffs have conducted the fact discovery they believe is necessary to support their request to proceed collectively. For their part, Defendants see Plaintiffs' proposal as yet another attempt to prolong litigation that has already grown expensive and burdensome for all parties, and particularly because Defendants believe that the current evidentiary record – and the facts revealed during the representative discovery of opt-in Plaintiffs – cuts sharply against final certification of the class of plaintiffs. Defendants argue that the discovery already taken demonstrates that this action cannot proceed as a collective FLSA action, and, therefore, whatever additional discovery Plaintiffs claim

to need will do nothing to make final certification appropriate. Accordingly, Defendants maintain that the parties should brief the outstanding issue of certification now, without any additional discovery, and that the Court should consider the issue without delay.

Upon consideration, although we agree with Defendants that there is no procedural, statutory, or other legal requirement mandating that decertification motions be filed, and considered, only after the conclusion of fact discovery, we also find it clear that in most cases the parties and courts consider the issue of decertification at the conclusion of fact discovery. Indeed, the Third Circuit recently issued a decision that suggests the Court approves of this traditional two-stage approach to certification questions in FLSA cases, with the decertification stage occurring after the parties have completed, or largely concluded, fact discovery.

We also find that this practice has much to recommend it generally, particularly given the fact that, although plaintiffs have a relatively light burden of having a class conditionally certified at the outset of a putative collective FLSA action, they face a much more stringent burden at the second stage of the process, when the parties argue for and against final certification. Because plaintiffs have a greater burden at this later stage, and because a determination of certification questions at the second stage

is a more fact-intensive inquiry, we find that the custom of considering decertification motions after the parties have concluded discovery is sound.

Moreover, with respect to this action in particular we find that this traditional practice is especially warranted, as the nationwide group of more than 1,000 opt-in Plaintiffs in this case is relatively large, and the factual questions raised at the certification stage may well implicate centralized corporate-level policies and uniform operating procedures – precisely the kind of information that Plaintiffs contend they have not yet had an opportunity to fully discover and review. Given that the Court's adjudication of decertification will entail a multi-faceted legal and factual inquiry, and consideration of the totality of the evidence and circumstances bearing upon the suitability of the plaintiffs to proceed collectively, we believe that consideration of Defendants' decertification motion should await the conclusion of fact discovery, when a ruling on Defendants' motion will be more fully informed and fair to all parties. Accordingly, we will grant Plaintiffs' motion to stay briefing on decertification until after fact discovery in this action has concluded.[1]

---

[1] At such time, Defendants will be permitted to amend their pending motion for decertification to include additional arguments or factual discussion, to the extent they believe that additional information learned during the discovery process bears on the motion.

## II. <u>DISCUSSION</u>

The United States Court of Appeals for the Third Circuit recently summarized the practice that courts in this circuit, as well as others, typically employ in administering actions brought as putative collective actions under the FLSA:

> In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery. In the absence of statutory guidance or appellate precedent on the proper definition of "similarly situated," a divergence of authority has emerged on the level of proof required at this stage. Some trial courts within our circuit have allowed a plaintiff to satisfy her burden simply by making a "substantial allegation" in her pleadings that she and the prospective party plaintiffs suffered from a single decision, plan or policy, but the majority of our circuit's trial courts have required the plaintiff to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated. See <u>Wright v. Lehigh Valley Hosp.</u>, Civ. No. 10-431, 2010 U.S. Dist. LEXIS 86915, at *7-10 (E.D. Pa. Aug. 24, 2010) (canvassing cases).
>
> Under the "modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. <u>Smith v. Sovereign Bancorp, Inc.</u>, No. 03-2420, 2003 U.S. Dist. LEXIS 21010,

> at *10 (E.D. Pa. Nov. 13, 2003). We believe the "modest factual showing" standard – which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions – best comports with congressional intent and with the Supreme Court's directive that a court "ascertain[] the contours of [a collective] action at the outset." See Hoffman-La Roche [, Inc. v. Sperling, 493 U.S. 165, 173 (1989)].
>
> ***After discovery***, and with the benefit of "a much thicker record than it had at the notice stage," a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008). "The second stage is less lenient, and the plaintiff bears a heavier burden." Id. Should the plaintiff satisfy her burden at this stage, the case may proceed to trial as a collective action.

Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192-93 (3d Cir. 2011)(emphasis added)..

The Third Circuit recognized that this two-step approach "is nowhere mandated," but noted that "it appears to have garnered wide acceptance." Id. at 193 n.5. Notably, although the Third Circuit was considering only the notice stage during the appeal in Symczyk, it declined to address specifically the level of proof necessary to satisfy the "similarly situated" requirement at the "post-discovery stage." Id. at 193 n.6. The Court did offer that the standard "must necessarily be more rigorous than the standard applicable at the notice stage," and – importantly – also commented that

"the fact-specific, flexible nature of this approach affords district judges latitude in exercising their discretion." Id. The Third Circuit's instructions in this regard are noteworthy, in part because: (1) they validate the two-stage approach taken by courts in this circuit; they suggest that decertification generally will be properly considered at the "post-discovery stage," id.; (2) they recognize that at the decertification stage, district courts must engage in a "fact-specific, flexible" approach to evaluating the suitability of an action to proceed collectively; and (3) because they recognize the discretion that district courts bring to this inquiry.

The Third Circuit's observation that the second-stage of the certification process typically occurs at the "post-discovery stage" – "[a]fter discovery, and with the benefit of 'a much thicker record than . . . at the notice stage" – is borne out by even a cursory review of recent FLSA cases throughout this circuit. See, e.g., Andrako v. U.S. Steel Corp., 788 F. Supp. 2d 372 (W.D. Pa. 2011) (decertification stage occurs "*after the court is more fully informed through discovery*"); Bell v. Citizens Fin. Group, Inc., Civ. A. No. 10-320, 2010 U.S. Dist. LEXIS 91172, *6 (W.D. Pa. Sept. 2, 2011) ("The second phase of class certification takes place *after discovery has occurred* . . . ."); Gallagher v. Lackawanna County, No. 3:07-0912, 2008 U.S. Dist. LEXIS 43722, *23 (M.D. Pa. May 30, 2011) (noting that "[t]he second step occurs *after discovery is complete*, typically prompted by a defendant's

motion for decertification."); Aquilino v. Home Depot USA, Inc., No. 04-4100, 2011 U.S. Dist. LEXIS 15759, at *16 (D.N.J. Feb. 15, 2011) (decertification stage occurs "when discovery is mostly complete and the case is ready for trial"); Zavala v. Wal-Mart Stores, Inc., No. 03-5309, 2010 U.S. Dist. LEXIS 65530, at *6 (D.N.J. June 25, 2010) ("At the second stage, the court 'makes a second determination after discovery is largely complete and the case is ready for trial.'") (quoting Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 495 (D.N.J. 2000)) Parker v. NutriSystem, Inc., No. 08-1508, 2008 U.S. Dist. LEXIS 74896, at *3 (E.D. Pa. Sept. 26, 2008) ("***Stage two takes place after discovery*** and demands a more fact-specific analysis."); Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000) ("***Once discovery is complete*** and more factual information is available to the Court, the Defendant may file a motion to decertify the class.").[2]

Review of other recent cases from courts outside the Third Circuit also reveals that this two-stage process has wide acceptance elsewhere, with courts routinely waiting until the conclusion of fact discovery to consider decertification motions. See, e.g., Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006) (noting

---

[2] But see Camesi v. Univ. of Pittsburgh Med. Ctr., No. 09-85J, 2011 U.S. Dist. LEXIS 146067 (W.D. Pa. Dec. 20, 2011) (considering decertification prior to the close of all fact discovery, but doing so on a consent order of the parties, who had filed competing motions for certification and decertification).

that second stage typically "occurs after 'all of the opt-in forms have been received *and discovery has concluded*.'") (quoting Goldman v. Radio Shack Corp., 2003 U.S. Dist. LEXIS 7611, 2003 WL 21250571, at *6 (E.D. Pa. Apr. 17, 2003); Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819, 822 (N.D. Ohio 2011) (observing that in the usual FLSA collective action, the decertification stage "occurs after the opt-in notices have been sent, responses received and *discovery has concluded*, at which point plaintiffs must meet a much stricter standard to proceed."); Beauperthuy v. 24 Hour Fitness USA, Inc., 772 F. Supp. 2d 1111, 1117 (N.D. Cal. 2011) (defendant moved for decertification "*after the close of non-expert discovery*."); McClean v. Health Sys., No. 11-03037, 2011 U.S. Dist. LEXIS 142283, at *8 (W.D. Mo. Dec. 12, 2011) ("*After discovery is complete* and the courts have full information, the defendant may move to decertify the class.") (emphasis added to all citations).

This wide-spread practice of considering decertification after discovery is entirely or largely complete also appears to be grounded in a recognition that, when considering whether to decertify a collective action, district courts must evaluate the totality of the evidence and circumstances that may bear upon the suitability of a particular action to proceed collectively. In this regard, the Third Circuit has instructed that

> [a] representative (but not exhaustive or mandatory) list of relevant factors [at this stage] includes whether the plaintiffs are employed in the same corporate department, division and location; advanced similar claims of . . . discrimination; sought substantially the same form of relief; and had similar salaries and circumstances of employment. Plaintiffs also may be found dissimilar on the basis of case management issues, including individualized defenses.

Symczyk, 656 F.3d at 193 n.6 (quoting Ruehl v. Viacom, Inc., 500 F.3d 375, 389 n.17 (3d Cir. 2007)).

In this case, Defendants argue that these last factors – case management issues and individual defenses – that have arisen during the course of discovery already taken in this case demonstrate conclusively that this case cannot proceed collectively, and that the parties have become aware of problems with the "discovery sample" in this case with respect to whether opt-in Plaintiffs will participate in discovery or prosecute their claims. As a result, Defendants maintain that willingness of individual plaintiffs to participate in discovery or prosecute their claims has been "highly individualized," and, therefore, any attempt to rely upon the sample as representative would violate due process. (Doc. 498, at 10)  In short, Defendants' position is that it is already clear from the discovery taken to date that this action is not properly suited for collective adjudication, and no other discovery taken can alter this fact.  Defendants thus suggest that if the Court denies the pre-close of discovery

motion for decertification, "discovery will continue, and Defendant will again move for decertification (possibly multiple times) again in reliance on some or all of the factors." (Id., at 9.)

The Court is mindful of Defendants' arguments regarding what has been revealed by the discovery taken to date of the representative sample of opt-in Plaintiffs, and of Defendants' indication that they intend to move possibly multiple times for decertification in a seriatim fashion until they prevail. Notwithstanding the ardor with which Defendants argue their position regarding decertification and their right to have this matter decided before the close of fact discovery, the Court also recognizes that it enjoys considerable discretion in determining how to structure discovery in this action, how to manage the briefing of motions that bear upon questions of decertification, and what factors are relevant to consider in resolving such motions.

In short, with respect to these litigation management questions the Court fully understands and appreciates the responsibility of counsel to propose. Indeed, we welcome proposals which enhance procedural and substantive fairness. However, we also recognize that in the final analysis it is the duty of the Court to ultimately determine when, and how, to dispose of these issues.

The Court is also mindful of the fact that this action now involves over 1,000 opt-in Plaintiffs, and that the parties have already devoted considerable resources and energy to fact discovery in this case. Although the parties have expended time and energy to date in conducting discovery, the Court finds that it would be inappropriate to deny Plaintiffs an opportunity to take some additional corporate-level discovery that might bear upon the question of whether the group of Plaintiffs should be permitted to proceed collectively, or, alternatively, whether this action should be decertified. Courts have found that, along with numerous other factors, the existence of a "single [corporate] decision, policy, or plan" may bear upon whether decertification is, in fact, appropriate in a given case, regardless of the existence of individual differences between plaintiffs. See Alsonso v. Uncle Jack's Steakhouse, Inc., No. 08 Civ. 7813, 2011 U.S. Dist. LEXIS 106356, at *11 (S.D.N.Y. Sept. 21, 2011) (quoting Ayers v. SGS Control Servs., No. 03 Civ. 9078, 2007 U.S. Dist. LEXIS 19634, 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007); see also Andrako v. United States Steel Corp., 788 F. Supp. 2d 372, 379 (W.D. Pa. 2011) ("Plaintiffs are correct that whether they were impacted by a 'single decision, policy, or plan' is material to [the court's] analysis of the variations in Plaintiffs' factual and employment settings."); Wilks v. Pep Boys, No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537, 2006 WL 2821700, at *3(M.D. Tenn. Sept. 26, 2006) (existence of a single

plan or policy "may assuage concerns about plaintiffs' otherwise varied circumstances."); In re Tyson Foods, Inc., 694 F. Supp. 2d 1372, 1379 (M.D. Ga. 2010) ("Tyson's common practice of paying Plaintiffs by the mastercard method weighs heavily against decertification"); Johnson v. Koch Foods, Inc., 657 F. Supp. 2d 951, 955-56 (E.D. Tenn. 2009); Kasten v. Saint-Gobain Performance Plastics Corp., 556 F. Supp. 2d 941, 946-47 (W.D. Wis. 2008); Moss v. Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000).

The fact that whether a company subjected its employees to a uniform corporate decisions, policies, or plans is relevant to questions of decertification compels the Court to agree with Plaintiffs that questions of decertification should be stayed pending conclusion of discovery. The Court recognizes and appreciates Defendants' assertion that individual differences have become manifest through the representative discovery taken thus far, and cause this action to be inappropriate for collective adjudication. Nevertheless, the Court will be prepared to consider that argument, and any other arguments that Defendants believe bear upon their motion for decertification, after Plaintiffs have an opportunity to gather testimony from certain corporate-level employees regarding Rite Aid's policies, procedures, or plans that may be relevant to the Court's decertification analysis. Accordingly, in an exercise of our discretion, the Court will stay further briefing on Defendants' motion

for decertification until after fact discovery in this action has concluded, and the parties have the benefit of a more complete evidentiary record on which to address Defendants' motion.

Finally, working with the parties, we are confident that we can avoid the principal concern voiced by the Defendants in support of their proposed serial decertification process–the prospect of open-ended and protracted discovery. In that regard, we note that, having observed the skill, energy, initiative and industry which counsel have exhibited throughout this litigation we are confident that the parties and the Court can arrive at a discovery schedule which will ensure the prompt, and fair, resolution of certification questions on a full factual record. Having stayed consideration of this decertification motion for this purpose, we stand ready to work with the parties to achieve this goal.

### III.  ORDER

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiffs' motion to stay briefing on Defendants' pre-close of discovery motion for decertification (Doc. 490) is GRANTED. The parties shall defer briefing the motion for decertification until after the close of fact discovery, at which time the Court will issue a briefing schedule, and the parties can comprehensively argue for and against decertification with the benefit of a more complete evidentiary record.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Date: January 31, 2012