**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHIRLEY CRAIG, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | **Civil Action No. 4:08-CV-2317** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| **RITE AID CORPORATION and** | : | **(Magistrate Judge Carlson)** |
| **ECKERD CORPORATION d/b/a** | : | |
| **RITE AID,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OPINION**

I. **INTRODUCTION**

　A. **Overview of the Case**

Shirley Craig and others (collectively, "Plaintiffs") initiated this action for overtime compensation under the Fair Labor Standards Act ("FLSA") with the filing of a collective action complaint on December 29, 2009. (Doc. 1.) At bottom, the case concerns Plaintiffs' claims that Rite Aid misclassified Assistant Store Managers as exempt employees under the FLSA. The District Court in this case subsequently entered an order conditionally certifying the following collective class for purposes of providing notice of the action and an opportunity to opt-in: "All individuals classified as exempt from the FLSA's overtime pay provisions and employed as salaried Assistant Store Managers during any workweek within the previous three

years in any of the 4,901 stores identified in Rite Aid Corporation's April 17, 2009 Annual Report as being operated by Rite Aid Corporation." (Doc. 72.) Thus far, more than 1,000 individuals have identified themselves as putative opt-in plaintiffs in the course of this litigation.

**B.      Defendants' Assertion of the Attorney-Client Privilege or the Work-Product Doctrine as a Basis to Resist Production of Certain Written Discovery that Plaintiffs Have Requested.**

Now pending before the Court is a dispute between the Plaintiff and Defendants regarding Defendants' assertion that the attorney-client privilege and work-product doctrine shield from disclosure various corporate documents that Plaintiffs have requested be produced as part of discovery in this collective action. Informed assessment of these privilege claims, in turn, requires some consideration of the factual context in which these documents were created at Rite Aid. In broad terms, the allegedly privileged documents appear to relate to a multi-faceted internal corporate restructuring analysis that was undertaken at Rite Aid, examining the organization and operation of its stores, many of which had been acquired over time from other companies, and had different corporate and organizational cultures. This multi-faceted analysis entailed many non-attorney participants and included, on occasion, corporate in-house counsel. This process examined multiple business facets of store operations, including on occasion legal compliance issues, and was inspired by a host of business

concerns, including occasionally potential legal liability concerns. In sum, the records at dispute in this matter are not simply the fruit, or product, of some preparation for litigation, or legal analysis of a discrete corporate issue. Rather, these documents are inspired by a multiplicity of business operation and reorganization concerns, and reflect a thorough assessment and analysis of this broad array of matters relating to issues of corporate structure, governance and organization, only some of which are legal in nature.

Cast against this background, Defendants initially asserted that these documents were virtually all protected by both the attorney-client privilege and the work-product doctrine, and provided Plaintiffs with a privilege log setting forth the basis for withholding production. Plaintiffs disputed the adequacy of Defendants' privilege log and, by extension, the legitimacy of Defendants' assertions of privilege or work-product protection. Plaintiffs ultimately moved the Court to examine the entire collection of documents that had been withheld and listed on Defendants' privilege log.

Defendants demurred, arguing that their privilege log was legally sufficient, and maintaining that no *in camera* review of the documents was warranted. Upon consideration, the Court directed Defendants to submit for *in camera* review the 30 documents that Plaintiffs' had identified on Defendants' privilege log as having the

most relevance to Plaintiffs' case, and as to which Plaintiffs had the most substantial questions concerning the application of the attorney-client privileges and other asserted bases for withholding production.[1]   (Doc. 380.)   Thereafter, Defendants submitted these documents to the Court for the Court's review, which has now concluded.

The documents that have been provided to the Court, and Defendants' various assertions of the reasons for withholding production of these documents, exemplify of the difficulty that courts often face when tasked with assessing the application of privileges to corporate-level documents that, on their face, often do not provide any clear indication that they were generated primarily for the purpose of obtaining legal advice, or that they were prepared in connection with or anticipation of litigation.  In some instances, certain of the documents that have been provided to the Court indicate that the author of the document was providing legal advice to a representative of the company, or that one or more of the company's officers were seeking legal advice from in-house counsel with respect to a particular legal issue.  It appears further that these particular instances of legal counsel were provided in the context of the larger store restructuring process that the company had undertaken in 2008 and 2009.

---

[1] These documents have been identified at Document 289, Exhibit C, on the docket in this action.

However, many of the documents Defendants have submitted bear no indication at all that they were prepared at the direction of counsel; that they were prepared primarily for the purpose of obtaining or furnishing legal advice, or that they were created at the direction of a lawyer for legal reasons; or that they had any obvious relation to a lawyer's work in connection with litigation involving the company, whether actual or anticipated.  Indeed, very few of the documents submitted to the Court were prepared by a lawyer, and many documents were circulated among entirely non-legal corporate personnel who appear to have been evaluating a number of business considerations with respect to a store-wide restructuring effort with respect to certain employment positions within the company.

We acknowledge the fact that a senior counsel to Defendants has submitted a sworn declaration from in-house counsel, Mr. Chima, stating that many of the documents that are the subject of the current discovery dispute were prepared in connection with a review and assessment of the impact of store structure changes on the exempt status of certain store-level employment positions, and was undertaken at the direction of in-house counsel "in large part" because of existing or anticipated litigation.  (Doc. 269, Ex. 6, Decl. of Ron S. Chima, ¶ 6.)  However, Mr. Chima's declaration is extraordinarily broad, and essentially asserts that every piece of documentation provided to the Court for *in camera* review was part of a large

corporate restructuring initiative that was undertaken at the direction of in-house counsel.  However, as we discuss below, the declaration lacks specificity regarding any of the particular documents in question, and instead relies upon sweeping generalities made by in-house counsel who serves many corporate functions, only some of which would cloak documents in privilege. Taken together, we find that these factors undermine the evidentiary value of this declaration when we conduct a document-by-document review of privilege claims, as we are required to do.

In addition, we are mindful that Kristin Crandall, Rite Aid's Vice President of Field Human Relations, previously submitted a separate sworn declaration in connection with a separate, and now-resolved, discovery dispute concerning Defendants' assertion that the self-critical analysis privilege should protect a number of related documents from discovery in this case.  (Doc. 232, Ex. A, Decl. of Kristin Crandall.)   In that declaration, Ms. Crandall represented that her review of the company's then existing store structure was undertaken at the direction of in-house counsel for Rite Aid, and that her team of human resources, compensation, legal, and operations personnel worked under the understanding that the information gathered as part of this collective effort would be provided to in-house counsel to assist in providing legal advice to the company.  (Id., ¶¶ 5-6.)  For this reason, Ms. Crandall represented that these personnel were informed that the communications exchanged

during this project would be treated as confidential. (<u>Id.</u>, ¶ 7.)

Fairly construed, we believe that Ms. Crandall's declaration confirms our more nuanced view regarding the complex corporate decision-making process reflected in these records, a process which was inspired by, driven by, and informed by a host of inter-related business considerations, many of which do not fall within the paradigm of the attorney-client or work-product privileges. As explained below, we have carefully assessed each of the documents that Defendants submitted for *in camera* review, and we have done so through the perspective of the multi-faceted business planning reflected in these documents, guided by the relevant law governing the application of the privileges asserted in this particular setting, and balancing the general assertions of Rite Aid's in-house counsel and Ms. Crandall against a review of what each document actually reveals.  As explained further below, while in some instances this review sustains claims of privilege, we find that in a number of instances Defendants have not carried their burden of demonstrating that certain documents are, in fact, subject to the attorney-client privilege or work-product protection.  Where we have not found a sufficient basis to conclude that either of these evidentiary privileges applies to the documents in question, we will order the documents to be produced.  With respect to the remaining documents, we have concluded that they are properly shielded from disclosure either by the attorney-client

privilege or the work-product doctrine, and we will uphold Defendants' decision to withhold production.

## II.  <u>SUMMARY OF THE APPLICABLE LAW</u>

In endeavoring to resist the disclosure of a number of corporate-level documents that Plaintiffs have requested for production, Defendants have invoked the protections of either the attorney-client privilege or the work-product doctrine.

The United States Court of Appeals for the Third Circuit recently summarized the purposes of, and distinctions between, the attorney-client privilege and the work-product doctrine, and the importance of limiting recognition of evidentiary privileges when necessary to achieve their purposes, as follows:

> Though they operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes.  The purpose behind the attorney-client privilege is "'to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice.'" <u>In re Impounded</u>, 241 F.3d 308, 316 (3d Cir. 2001) (quoting <u>In re Grand Jury Proceedings</u>, 604 F.2d 798, 802 (3d Cir. 1979)).  The work-product doctrine, by contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." <u>Westinghouse Elec. Corp. v. Republic of the Phil.</u>, 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).

> Though evidentiary privileges have important purposes, their recognition may result in the withholding of relevant information and so may

> obstruct the search for truth.  Indeed, the protections are effective only
> if they shield relevant evidence and thus they necessarily obstruct the
> search for the truth at a trial at which they are recognized either
> implicitly or explicitly.  Consequently, privileges should be recognized
> only when necessary to achieve their respective purposes.  See Fisher v.
> United States, 425 U.S. 391, 403 (1976).

In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011).

Because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is also well-established that, " 'The burden of proving that the . . .  privilege applies is placed upon the party asserting the privilege.' United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)." Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979). Therefore, the burden of proof is this case rests squarely with Rite Aid, which has asserted the privilege. With this preliminary guidance in mind, we turn to consideration the attorney-client privilege and work-product doctrines.

## 1.    The Attorney-Client Privilege

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007).  The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn v. United States 449 U.S. 383,

389 (1981).  The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)).  Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976); see also In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communications made by client and an attorney are privileged if made "for the purpose of securing legal advice."); United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client.  To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390.  However, the privilege extends only to the disclosure of the communications, and does not extend to disclosure of the underlying facts conveyed in those communications.  Id. at 385.

While recognizing the value served by the privilege, courts must also be mindful that the privilege obstructs the truth-finding process and should be "applied only where necessary to achieve its purpose." Wachtel, 482 F.3d at 231; see also Westinghouse Elec. Corp., 951 F.2d at 1423. Therefore, because the purpose of the privilege is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where the lawyer is providing non-legal, business advice. Wachtel, 482 F.2d at 231; see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); Hardy v. New York News, Inc., 114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice . . . .").

Federal courts are further required to assess the application of the privilege on an individualized  case-by-case basis.  Thus, "Rule 501 [of the Federal Rules of Evidence] requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." Id. at 230; see also Upjohn, 449 U.S. at 386, 396-97; In re Processed Egg Prods. Antitrust Litig., MDL No. 2002, 08-Md.-2002, 2011 U.S. Dist. LEXIS 120708, at *10-11 (E.D. Pa. Oct. 19, 2011).  In addition, the party

11

asserting the privilege bears the burden of providing that it applies to the communication at issue.  <u>In re Grand Jury</u>, 603 F.2d 469, 474 (3d Cir. 1979). Accordingly, we may not rely upon broad and sweeping assertions of privilege to wholly excuse an individualized examination of particular communications.

## 2.    **The Work-Product Doctrine**

The work-product doctrine is embodied within Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" unless otherwise discoverable or a party shows substantial need for the material. Fed. R. Civ. P. 26(b)(3).  The doctrine is, in essence, a recognition that a lawyer requires a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947).

The doctrine thus is intended "to protect material prepared by an attorney acting for his client in anticipation of litigation."  <u>United States v. Rockwell Int'l</u>, 897 F.2d 1255, 1265 (3d Cir. 1990); <u>see also</u> <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").  Notably, the doctrine does not extend to protect documents that were prepared "in the ordinary course of business, or pursuant to public requirements

12

unrelated to litigation, or for other nonlitigation purposes.'" <u>Martin v. Bally's Park Place Hotel & Casino</u>, 983 F.2d 1252, 1260 (3d Cir.1993) (quoting Fed. R. Civ. P. 26(b)(3) advisory committee note).

In order for the doctrine to apply, Rule 26(b)(3) requires "that the material be prepared in anticipation of some litigation, not necessarily in anticipation of the particular litigation in which it is being sought." <u>In re Ford Motor Co.</u>, 110 F.3d at 967 (emphasis omitted). It is not necessary that litigation has been commenced or even threatened before a document can be found to have been prepared in anticipation of litigation. See <u>In re Processed Egg Prods. Antitrust Litig.</u>, MDL No. 2002, 08-Md.-2002, 2011 U.S. Dist. LEXIS 120708, at *16 (E.D. Pa. Oct. 19, 2011) (citing <u>Hydramar, Inc. v. Gen. Dynamics Corp.</u>, 115 F.R.D. 147, 150 n.3 (E.D. Pa. 1986)). However, documents will come within the scope of the work-product doctrine only where the documents were prepared primarily in anticipation of future litigation. <u>See In re Diet Drugs Prods. Liability Litig.</u>, MDL No. 1203, 2001 U.S. Dist. LEXIS 5494, 2001 WL 34133955, at *5 (E.D. Pa. Apr. 19, 2001).

**3.**      <u>**Application of these Privileges to Complex, Multi-Faceted Corporate Decision-Making Involving In-House Counsel**</u>

The application of these legal privileges to documents generated in complex multi-faceted corporate restructuring decision-making has, in turn, led to the development of a series of additional guiding principles. The work of applying the law of privileges to records generated in corporate restructuring involving in-house counsel has typically fallen to the lower courts, which have identified several key tenets to guide their analysis of these claims.

First, in a corporate business restructuring setting, it is evident that: "The involvement of in-house counsel alone is not enough for the attorney-client privilege to be applicable. 'Because in-house counsel is often extensively involved in the business matters of the company (not infrequently holding executive positions), ... [c]ourts have not been willing to presume that the services provided were of a legal, as opposed to a business, nature.' 1 Rice, Attorney–Client Privilege § 3:14, at 55–56 & n. 32 (citing cases)." Visa U.S.A., Inc. v. First Data Corp., 02-1786,  2004 WL 1878209, 10 (N.D.Cal. Aug. 23, 2004).

This refusal to automatically extend the privilege to matters which touch upon in-house counsel reflects a simple corporate reality:

> [U]nlike outside counsel, in-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an

attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys. <u>Fischel,</u> 557 F.2d at 211. Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel. <u>Accord, U.S. v. Chevron Corp</u>., 1996 WL 264769, *4 (N.D. Cal.1996).

<u>United States v. ChevronTexaco Corp</u>., 241 F.Supp.2d 1065, 1076 (N.D.Cal. 2002).

These corporate realities, in turn, prescribe the showing which must be made to assert a claim of privilege in this setting: "With respect to internal communications involving in-house counsel, [a party] must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice. <u>In re Sealed Case</u>, 737 F.2d 94 (D.C.Cir.1984)." <u>United States v. ChevronTexaco Corp</u>., 241 F.Supp.2d at 1076.

Corporate culture, and the role of in-house counsel in that culture, define the legitimate scope of these privileges in another fundamental respect.  In this setting, "[t]here are substantial policy reasons for holding that business documents submitted for attorney review are not by that virtue automatically exempt as privileged or work product protected communications." <u>In re Seroquel Products Liability Litigation</u>, 06-1769, 2008 WL 1995058, 4 (M.D.Fla. May 7, 2008)(citations omitted). As one court has observed:

The structure of certain business enterprises, when their legal

15

departments have broad powers, and the manner in which they circulate documents is broad, has consequences that those companies must live with relative to their burden of persuasion when privilege is asserted. See, e.g., In re Vioxx Products Liability Litigation, 501 F.Supp.2d 789, 805 (E.D.La.2007). When the business "simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes." Id. (citing United States v. Chevron Corp., 1996 WL 444597 (N.D.Cal.1996)); United States v. International Business Machines Corp., 66 F.R.D. 206, 213 (S.D.N.Y.1974) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice."). Consequently, the privilege does not protect such communications. In re Vioxx, 501 F.Supp.2d at 805; Attorney-Client Privilege § 7.2.1 ("Because of the ease with which e-mail technology allows in-house counsel to be brought into discussions, counsel are contacted far more frequently, and through those contacts, are likely encouraged to participate in regular business matters far more frequently and broadly than was the case in the past.").

Preferred Care Partners Holding Corp. v. Humana, Inc., 258 F.R.D. 684, 689-90 (S.D.Fla. 2009).

Applying these benchmarks, courts have eschewed broad claims of privilege premised upon the involvement of in-house counsel in multi-participant corporate restructuring processes, in favor of a far more narrowly tailored and fact specific analysis of privilege claims.

## III.   **DISCUSSION**

With this legal framework in mind, we turn to the parties' competing positions

with respect to the documents that Defendants have sought to withhold from production. In doing so, the parties take divergent, sweeping positions: Defendants contend that all of the documents enjoy broad protection, whereas Plaintiffs insist that Defendants' assertions of privilege were improper and all of the documents should, accordingly, be disclosed. Upon consideration, and in summary, we find that with respect to a number of the challenged documents, Defendants simply have not carried their burden of showing that either the attorney-client privilege or the work-product doctrine applies. With respect to these documents, because it is not evident that the privilege applies, and because Defendants have not persuaded us that the privilege should be found applicable, we will require Defendants to produce the documents. In other cases, we conclude that the documents are, in fact, protected from disclosure under either theory and we will not compel their disclosure.

In endeavoring to carry its obligation to establish that each document at issue is privileged, United States v. LeCroy, 348 F. Supp. 2d 375, 382 (E.D. Pa. 2005), Defendants have primarily chosen to rely on the content of the documents themselves, the explanatory notes contained in the privilege log provided to Plaintiffs – many of which are substantively identical – and on two paragraphs from the declaration of Ron S. Chima, a senior in-house counsel to Rite Aid who was assigned to the corporate team that was charged with evaluating and assessing the existing store structure.

(Doc. 269 and Exhibit 6 thereto, ¶¶ 5-6.)   In addition, Mr. Chima has referred generally to Kristin Crandall's sworn declaration, which was previously submitted in support of Defendants' assertion that a number of related documents should be deemed protected from discovery by the self-critical-analysis privilege.  (Doc. 223, Ex. A.)  Defendants did not submit declarations or evidence from any other corporate counsel or members of the team that was engaged in the assessment of Rite Aid's store structure at the time. Nor did the defendants provide declarations addressing in a particularized way the application of the privilege to specific document, despite the fact that " '[t]he burden of proving that the . . .  privilege applies is placed upon the party asserting the privilege.' United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)," Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979), and "[w]ith respect to internal communications involving in-house counsel, [a party] must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice. In re Sealed Case, 737 F.2d 94 (D.C.Cir.1984)." United States v. ChevronTexaco Corp., 241 F.Supp.2d at 1076.

Given the exacting, and specific standards applied by the courts to corporate restructuring communications between in-house counsel and non-lawyers, we find this

categorical approach unpersuasive, and decline to adopt this approach. However, upon an individualized review of these records, we conclude that the following documents are privileged and exempt from disclosure. The bases for our decisions with respect to these records are set forth below:

A.     **Analysis of Privileged Documents**

       **PRV 000094 through PRV 000108**

These documents, all of which have been labeled as "confidential" and covered by "work product / attorney client privilege" appear to be internal corporate Power Point communications identifying a number of activities being undertaken in connection with the corporate assessment and restructuring of Rite Aid's front end store leadership structure, and assigning responsibility for the various initiatives to one or more team members.  Defendants claim that the documents are covered by both the attorney-client privilege and the work-product doctrine.

Defendants' privilege log states that the Power Point slides reflect the advice of counsel that was given in anticipation of FLSA litigation, and that the documents represent "extensive planning, and related legal review, as well as legal advice, for purposes of a large scale reduction in force and changes to manager positions and store structure."  The privilege log indicates that Kristin Crandall, rather than an in-house attorney, prepared the slides.  The slides do not specifically explain or otherwise

indicate what information within the slides is the product of legal counsel and advice, although some of the information contained within them suggests that it was, at least in part, the product of legal counsel.  In his declaration in support of Defendants' assertion of privilege, Ron Chima does not specifically address these Power Point slides, or explain why they are privileged, or what information contained in the slides was privileged. While Defendants' assertion of the privilege is both vague and broad, we ultimately find that although the document was prepared by Kristin Crandall, there is sufficient indicia of legal advice throughout the document itself, and the involvement of counsel appears evident throughout. Accordingly, although we find Defendants' support for withholding this document to be somewhat weak, we are persuaded that by the substance of the documents that they represent the product of legal counsel that had been rendered in connection with the store restructuring, and thus we will affirm Rite Aid's assertion of the privilege to shield these materials from discovery.

## PRV 000127 through PRV 000129

These documents, together, form an internal memorandum regarding front end store leadership structure for fiscal year 2010 that Defendants' contend reflects counsel's mental impressions and advice in anticipation of and in light of FLSA litigation.  The documents were not prepared by a lawyer, but were instead prepared

by Kristin Crandall in May 2009, and appear to have grown out of the store restructuring project that Rite Aid had undertaken in the fall of 2008.  Rite Aid took steps to protect the information, stamping a "do not distribute" label on the documents, and identifying them as attorney work-product and subject to attorney-client privilege. Defendants represent that the factual information has already been produced to Plaintiffs in its entirety, and the dispute over these documents appears therefore to be no longer a live issue. Accordingly, based upon Defendants' representation that the factual information contained in the documents has already been produced, and given the other indicia of privilege reflected in the records, we will sustain Defendants' decision to withhold production of the internal memorandum itself.

### PRV 000188 through PRV 000189

These documents are part of an internal communication that Kristin Crandall prepared in February 2009, which addresses specific FLSA concerns, actions that the company was planning to address these concerns, and a status update on these initiatives.  The documents are labeled as confidential attorney directed work product, and seem to reflect, in a number of specific instances, the legal advice that had been communicated as part of the store restructuring project with respect to specific, discrete issues.  Accordingly, we agree with Defendants that these documents may be

withheld from production on the basis of attorney-client privilege.

### PRV 000190 through PRV 000191

These documents, similar in style and substance to those identified above as PRV 000094 through PRV 000108, are Power Point slides that were part of an internal corporate presentation regarding FLSA compliance and implementation, and reflects in numerous instances, what appears to be the result of in-house legal advice regarding numerous store restructuring initiatives. Although the document was prepared by Kristin Crandall, we find sufficient indicia of legal advice throughout the document itself, and the involvement of counsel appears evident throughout. Accordingly, we are persuaded that the documents represent the product of legal counsel that had been rendered in connection with the store restructuring, and thus we will affirm Rite Aid's assertion of the privilege to shield these materials from discovery.

### PRV 000197 through PRV 000198; PRV 000204 through PRV 000206

These documents consist of internal emails exchanged between Traci Burch, Rite Aid Vice President of Labor Relations and Employment Counsel, and members of the restructuring team.  Specifically, two of the emails come from Ms. Burch in which she provides express legal advice, and three of them come from Ms. Crandall and David Markley, in which they provide requested information or otherwise ask

legal questions of Ms. Burch.  The e-mails were contemporaneously identified as "privileged and confidential" when they were written.

The email chain thus specifically addresses discrete legal issues that arose in connection with the store restructuring project, and expressly reflect legal advice that Ms. Burch, an in-house attorney, was providing to Ms. Crandall and other members of the restructuring team, regarding some of the proposed changes, particularly with respect to collective bargaining and labor-related issues.  It is thus clear that these documents are covered by the attorney-client privilege, and we will not require Defendants to produce them.

### PRV 000220

This document consists of emails exchanged between Kristin Crandall and Traci Burch, Rite Aid's Vice President for Labor Relations and Employment Counsel, and which were also shared with other senior finance, labor relations, and human relations personnel.  The emails include requests made to Ms. Burch for legal counsel, and Ms. Burch's responses, which are legal in nature and relate to hours reductions and litigation, anticipated union grievances, or other concerns that may result.  The legal nature of the communication is obvious, and we find that the attorney-client privilege and work-product protections apply to shield this document from discovery.

### PRV 000304

This document consists of emails between in-house counsel, Traci Burch, and David Markley, Rite Aid's Vice President of Financial Labor Analysis.  The email exchange was labeled "privileged and confidential" and was motivated by legal considerations relating to Rite Aid's store structure changes, and expressly requests information for the purpose of providing legal advice.  Ms. Burch's response is filled with confidential communications from counsel regarding legal advice being provided to Mr. Markley and other senior managers.  As such, we agree with Defendants that these materials are protected from disclosure by the attorney-client privilege as well as the work-product doctrine.

### PRV 000349 through PRV 000358

These documents consist of an email from Kristin Crandall dated April 30, 2009, sent to Ron Chima and members of Rite Aid's senior management circulating draft information regarding the reduction-in-force initiative and store restructuring. Defendants have asserted that these materials were also prepared in anticipation of litigation regarding the staffing reductions, and severance concerns involved in the store structure changes.  Thus, Defendants contend that the materials are covered by the attorney-client privilege and the work-product doctrine. Upon review, it appears that these documents are substantively similar to those that we previously found to be covered by the attorney-client privilege, and which have been identified as PRV

000094 through PRV 000108.   For the same reasons we provided following our

analysis of those documents, we agree with Defendants that these materials may be

withheld from production on the basis of both the attorney-client privilege and work-

product doctrine.

### PRV 000465 through PRV 000486; PRV 000487 through PRV 000527; and PRV 000528 through 000549

These documents consist of internal spreadsheets or charts that, according to

Defendants' privilege log, were prepared by David E. Markley, Rite Aid's Vice

President of Financial Labor Analysis, and provided to Robert B. Sari, Rite Aid's

former Executive Vice President, General Counsel and Corporate Secretary.  The first

set of spreadsheets, PRV 000465 through 000486, was prepared on September 25,

2007.  The second series of documents, PRV 000487 through PRV 000527, was

prepared on February 25, 2008, and the third collection of documents, PRV 000528

through PRV 000549, was prepared on September 26, 2007.  According to the

declaration of Ron Chima, these materials would have been prepared and provided to

the former General Counsel during a time when Rite Aid was defending itself in a

variety of FLSA litigation, and when the company could reasonably expect further

litigation to arise in the future.  (Doc. 269, Ex. 6, Decl. of Ron S. Chima, at ¶ 5.)

The documents include a variety of factual information that Defendants claim

was requested for the purposes of providing legal advice regarding pending and

anticipated litigation regarding the exempt status of assistant store managers. Defendants contend that requiring them to divulge these materials would force them to reveal counsel's mental impressions and legal advice.

These particular materials present something of a challenge for the Court on *in camera* review. The difficulty in ascertaining whether the attorney-client privilege or work-product doctrine shields these documents stems, in part, from the fact that the documents themselves appear to convey only raw factual information to the General Counsel. Additionally, it appears that Robert Sari is no longer employed by Rite Aid and, perhaps for that reason, has not offered any attestation to support Defendants' assertions regarding the nature and provenance of these documents. Instead, Defendants rely on bare assertions and the two paragraphs of Ron Chima's declaration on which they base substantially all of their privilege claims. Notwithstanding some of the challenges that these circumstances present, upon careful review of the documents, we believe it is sufficiently clear that the content of the information being conveyed, the manner in which it was arranged, the representation that the information was provided exclusively to the company's General Counsel regarding actual and anticipated litigation, and Ron Chima's sworn declaration that the documents were prepared for the purpose of helping counsel render legal services to the company with respect to this litigation, collectively support Defendants' claim that the materials are

protected attorney work-product, and we will uphold Defendants' invocation of the protections afforded by Federal Rule 26(b)(3) to withhold these materials from production.[2]

### PRV 007918 through PRV 007937

The final privileged document that Defendants have submitted is a sworn declaration that Thomas Marano, a Co-Manager of a Rite Aid in Highland, New Jersey, gave on October 22, 2009, and provided to outside counsel in connection with FLSA litigation involving assistant store managers. It is not clear exactly what the declaration was used for, although it appears to have clearly been obtained in connection with FLSA litigation. Defendants argue that the declaration is protected by the attorney-client privilege and the work-product doctrine, although they represent

---

[2]In addition to what we noted earlier in this order about the work-product doctrine, we observe that work product consists of "written materials obtained or prepared by [] counsel with an eye toward litigation," and includes: "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs . . . ." Bogosian v. Gulf Oil Corp., 738 F.2d 587, 592 (3d Cir. 1984). In order to determine whether a particular document was "prepared in anticipation of litigation," Fed. R. Civ. P. 26(b)(3), the relevant inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993) (citing United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990)). Guided by these factors, and following review of the documents in question, the timing of their creation, the fact that they were provided exclusively to the company's General Counsel, and in further consideration of Ron Chima's declaration, we conclude that the materials are protected work product.

that if Mr. Marano becomes a witness in the instant litigation, they will produce his declaration to Plaintiffs.  Defendants contend that until such time as they elect to rely upon Mr. Marano as a witness, his declaration provided to counsel should be considered confidential and be protected from disclosure.

Upon consideration, we tentatively agree with Defendants that disclosure of this material should not be compelled at this time.  The declaration itself appears to have been obtained by Rite Aid counsel in connection with FLSA litigation brought by former New Jersey Rite Aid Assistant Managers.  We have difficult understanding how this declaration could qualify as attorney-client privileged material, and we have some question as to whether the signed declaration itself rightly qualifies as attorney work product.  In this regard, we note that in similar cases courts have similarly found that a witness's declaration, standing alone, is not work product, whereas an attorney's notes from a witness interview will generally be protected.  See, e.g., Murphy v. Kmart Corp., 259 F.R.D. 421, 431 (D.S.D. 2009); Doe v. Luzerne County, No. 3:04-1637, 2008 U.S. Dist. LEXIS 47796, at *13 (M.D. Pa. June 19, 2008).  In this case, the document sought to be protected is the witness's declaration itself, not the attorney's notes or memoranda.

Nevertheless, we are persuaded that the declaration need not be produced at this time because Defendants have not identified Mr. Marano as a witness likely to have

discoverable information that the disclosing party may use to support its case.  See

Fed. R. Civ. P. 26(a)(1)(A)(I).  To the extent that Mr. Marano is identified as such a

witness whose identity must be disclosed, Defendants will be required to disclose his

name and information to Plaintiffs, and at such time may be required to produce his

sworn declaration.  We note that there is no work-product protection that would

excuse Defendants from making such an initial disclosure to the extent they identify

Mr. Marano as a witness.  See id.  But, at this time, Defendants have not identified Mr.

Marano as a witness in this litigation, or identified him as an individual likely to have

discoverable information, and we thus do not find that disclosure of his declaration

is properly compelled at this time.  Accordingly, Defendants will not be required to

produce Mr. Marano's declaration at this point in the litigation.

### B.  Analysis of Non-Privileged Documents

Having concluded that the foregoing records are cloaked in privilege, we have

determined that the following documents are not privileged. Accordingly, for the

reasons set forth below, we will order these documents  disclosed.

### PRV 000062 through PRV 000063

The first document at issue consists of a series of internal emails sent on

October 13 and 14, 2008, by Kristin Crandall to members of the team of Rite Aid

personnel who were working together to assess and make changes to the company's

existing store structure, particularly with respect to front-end leadership.  In the first email, Ms. Crandall writes to Jason Linsey, a former senior director of payroll and compensation, asking whether he could assist with providing a "wage sensitivity analysis" related to certain changes that the company was contemplating concerning assistant managers.  (Defendants' PRV 00062.)  Ms. Crandall indicates that her question was inspired by a "great suggestion" that she had gotten from former General Counsel Robert Sari, although the email is silent as to what the suggestion itself was, or to what it related, or whether it was legal in nature.  Nothing in the email indicates that Mr. Sari had rendered legal advice – or, if he did, what the advice might have been – and it is not clear that the information Ms. Crandall was soliciting from Mr. Linsey was intended to be provided to counsel for the purposes of securing legal advice.

The second email was sent to fifteen members of the Rite Aid team working on the store-structure assessment, including two in-house counsel, seeking review and feedback with respect to proposed store structure changes.  (Defendants' PRV 000063.)  The email summarizes a number of the expected benefits from the revised front-end store leadership structure, including corporate consistency, appropriate leadership coverage levels, defined payroll plan expectations, and FLSA compliance. Other than a general request for feedback on the attached proposal, the

correspondence does not expressly seek legal counsel and does not indicate that it is covered by any privilege.  Indeed, although in the email Ms. Crandall does seek input on a number of issues, none of them are clearly legal in nature.

In their privilege log, Defendants assert that the information was being "gathered at the request of in-house counsel Robert Sari, Ron Chima, and Traci Burch for the purpose of providing legal advice regarding plans for store structure changes and in light of FLSA litigation over managers' exempt status."  However, the document itself does not support the assertion that it was being generated at the direction of counsel, and in many respects it appears to be part of a much larger corporate initiative, regardless of whether it may have touched upon matters of legal concern.  Nothing in Ms. Crandall's emails to members of the corporate team reviewing Rite Aid's corporate structure supports Defendants' blanket assertion that the documents are covered by either the attorney-client privilege or the work-product doctrine, and we are unable to conclude that the documents are privileged or properly withheld from production.

## PRV 000064 through PRV 000066

These documents consist of internal corporate email messages regarding the ongoing store structure assessment project in October 2008, and are in part duplicative of the documents identified as PRV 000062-000063.  The additional documents are

follow-up messages from Jason Linsey, the former senior director of payroll and compensation, and from Matt Gerber, a senior manager of payroll compensation.  In their emails, Messrs. Linsey and Gerber provide Ms. Crandall with very general information, and some questions, regarding the requested wage sensitivity analysis, comparing pay rates for assistant managers and shift supervisors by region, and about what the financial impact would be if Rite Aid had these employees' base hours reduced.

In their privilege log, Defendants indicate that these documents would be produced with certain redactions, which Defendants have not identified.  Defendants also assert, again, that the emails in question were gathered at the request of in-house counsel for purpose of providing legal advice, but the documents suggest rather that they were generated as part of Rite Aid's corporate reassessment of its existing store structure, and in particular with respect to its plans to reduce base hours for assistant managers.  Although this undertaking undoubtedly had legal implications, the documents themselves do not appear to be privileged, as they do not appear to have been created and shared for the primary purpose of obtain legal counsel.  We simply do not find that Defendants have carried their burden to show that these documents, or many of the front end structuring reassessment documents, fall under a broad application of either the attorney-client privilege or work-product doctrine.

Accordingly, we will order that the documents be produced.

### PRV 000069 through PRV 000071

These documents consist of further correspondence from Kristin Crandall to members of the corporate team evaluating and revising the front-end store leadership structure, and seeking additional input from team members on issues concerning hours equivalency and payroll budgeting, operations issues, and questions relating to compensation and benefits. Other documents in this series consist of the emails discussed above, and identified as PRV 000062-000063.

As before, we find insufficient indicia that these documents were, in fact, being gathered and distributed at the direction of in-house counsel, or that the documents were created primarily for the purpose of obtaining legal advice, or at counsel's direction for use in real or anticipated litigation. Instead, these documents appear to be a continuation of the documents that reflect a large corporate restructuring effort that appears to have been driven principally by business concerns, even if it touched on legal matters as well. Again, none of the documents contain information from counsel, and none of the documents specifically refer to legal counsel, or request input from legal counsel on the matters set forth in the email. These documents will, accordingly, be ordered produced.

### PRV 000192 through PRV 000193

These documents are an internal spreadsheet that Defendants claim was prepared at the direction of in-house counsel for the purpose of pending FLSA litigation and for providing legal advice.  The document was prepared by David E. Markley, Rite Aid's Vice President of Financial Labor Analysis, and was provided to Kristin Crandall, the Vice President of Field Human Resources.   Other than Defendants' general assertion that the documents were prepared at the direction of counsel, nothing in the documents themselves indicates that they contain confidential communication that was provided to or from counsel, and the documents do not appear to "reflect counsel's mental impressions and legal advice," regardless of Defendants' general contentions to the contrary.

Instead, the spreadsheet appears to consist of factual information regarding the number of store managers in various store-level positions throughout the company. Defendants further note that they already produced factual information about the number of managers in relevant positions, and for this reason suggest that these documents are redundant of those that have been made available to Plaintiffs.  To the extent that Defendants have already produced this information to Plaintiffs, and production of these documents would be redundant, we will not require that the documents be produced.   However, to the extent that these documents contain different information regarding the numbers of managers in various capacities, we do

not find that it is privileged or subject to work-produce protection, and it must be produced.

### PRV 000208 through PRV 000209

These documents are part of an internal email communication chain from May 8, 2009, between Kristin Crandall and other human resources and labor relations personnel on the restructuring team, with respect to proposed front end store structure changes, and particularly with respect to union and labor considerations.

Defendants claim that the documents "reflect legal advice and counsel's mental impressions," but it is difficult to credit this broad assertion given that none of the correspondence involves communication from a lawyer, and although in-house counsel, Traci Burch, was copied on some of the emails, she was not asked to render legal advice or to otherwise weigh in on the issues being discussed.

Defendants also claim that the these documents constitute protected attorney-work product, but again we find insufficient basis to credit this assertion, because there is an inadequate basis to find that the information was being shared in anticipation of litigation.  To the contrary, it appears that the overriding reason for the communication was for members of the restructuring team to exchange ideas and concerns regarding the proposed store leadership changes – a project we have already found cannot properly be concealed in its entirety behind the attorney-client privilege

or work-product doctrine.   We can appreciate the sensitive nature of the communications, but we are unable to conclude that either the attorney-client privilege or the work-product doctrine apply to shield this information from discovery.

### PRV 000223 through PRV 000286

These documents consist of an initial transmittal email from Kristin Crandall to Steve Parsons, Senior Vice President of Human Resources, and Scott Bernard, Senior Vice President of Store Operations, and copied on a number of corporate employees regarding possible exceptions to the store restructuring proposal. Specifically, the email addresses a proposal to except certain assistant store managers from the proposed changes to hours reductions, demotions, and terminations that were part of the store restructuring proposal regarding front end store leadership.

Ms. Crandall's email indicates that her email and comments were the product of discussions that she had with Kenneth Black, Rite Aid's Group Vice President of Compensation and Benefits, and reflected certain reservations that Mr. Black's "team" had with some of the proposed changes. Attached to the email is the exception list itself, which appears to be a spreadsheet listing a number of assistant store managers, their store, and the district and region in which the stores are located.

Nothing in Ms. Crandall's email, or in the attached spreadsheet, supports Defendants' broad assertion that the information was prepared or communicated in

anticipation of union grievances or FLSA litigation, and the email does not expressly indicate that it was the product of any legal considerations or advice from in-house or outside counsel.  Thus, it is difficult to credit Defendants' assertion – which appears to be based upon the same general attestations that Ron Chima provided in his declaration in support of all privilege claims before the Court – that the documents reflect counsel's advice and mental impressions. Instead, the communication is exchanged solely between non-lawyers, and reflects business and compensation considerations, rather than legal advice or planning.

Defendants have represented that the list of managers is over-inclusive, and the information about "relevant managers" has already been produced to Plaintiffs in "multiple other formats."  Nevertheless, because we do not find that Defendants have shown that either the attorney-client privilege or work-product protections apply to these documents, and because it appears that the information included in the documents differs in certain respects from that already produced to Plaintiffs, we will order that the documents be produced unless Plaintiffs no longer seek this information in light of Defendants' previous production.

### PRV 000290 through PRV 000291

These documents consist of an email from Kristin Crandall to Ron Chima and a number of senior management personnel soliciting feedback on a draft proposal

relating to Rite Aid's restructuring initiatives and reduction-in-force efforts. The document was clearly intended to be kept confidential by the recipients, but with the exception of being sent to one of Defendant's in-house attorneys in addition to other management personnel, it is not clear from the document that it is really seeking counsel's legal advice. Instead, the document generally requests each recipient's "thoughts," (PRV 000290), and Ms. Crandall specifically solicits only business-related feedback from Kenneth Black, Jason Linsey, and David Markley – senior managers assigned to compensation, payroll, and finance issues. No specific legal questions were directed at in-house counsel. To the extent Ron Chima responded with specific legal information or advice, that communication is not included with these documents. Upon consideration, we find that the document does not, facially, seek legal advice or counsel, but instead concerns the company's broad restructuring effort, an effort that may have been motivated, in part, by legal considerations, but which was also – like other documents from the restructuring initiative – driven by business concerns. We do not find that paragraphs 5 and 6 of Ron Chima's declaration are sufficient to support Defendants' contention that these documents should be withheld from production on the basis of either the attorney-client privilege or the work-product doctrine, and these documents will therefore be ordered produced.

**PRV 000311 through PRV 000348**

These documents consist of two pages of email communications, followed by a spreadsheet listing of assistant store managers who would be excepted for purposes of hours reductions, demotions, and terminations, and was contemplated as part of Rite Aid's front end store restructuring project. The email correspondence that serves as a transmittal cover for the spreadsheets was shared among Kristin Crandall and as many as six senior managers on the restructuring team. Notably, no member of Rite Aid's in-house counsel was copied on the email or the spreadsheets that were transmitted. The email communication does not make express reference to any specific legal issue on which Rite Aid was seeking advice from its attorneys; instead, the documents address potential problems with the exceptions list, principally pay-related issues.

Defendants claim that these materials were prepared in anticipation of union grievances and in light of pending FLSA litigation, and Defendants assert that revealing the list of assistant store manager names will somehow "reveal both legal advice and in-house counsel's mental impressions." Once again, Defendants support this assertion by referring the Court to two paragraphs of Ron Chima's declaration in which he contends, essentially, that every aspect of Rite Aid's store restructuring project was undertaken at the direction of counsel, and that during the course of the project he and other members of Rite Aid's in-house counsel department provided

legal advice to corporate personnel regarding the proposed changes.  (Doc. 269, Ex. 6, Chima Decl. at ¶¶ 5-6.)  Mr. Chima's declaration does not speak to these specific documents in any way.

Notwithstanding Mr. Chima's general representations, however, we note that none of the correspondence seeks legal advice, and there is no indication that this correspondence was shared with counsel, or that counsel provided any legal advice regarding the information contained in either the email or the spreadsheet being transmitting.  Upon consideration, we find Defendants' claims of privilege and work-product protections for these materials is insufficiently supported and is not corroborated by anything in the documents themselves.

Defendants have represented that the list of managers has already been produced to Plaintiffs in "multiple other formats."  Nevertheless, because we do not find that Defendants have shown that either the attorney-client privilege or work-product protections apply to these documents, and because it appears that the information included in the documents differs from that already produced to Plaintiffs, we will order that the documents be produced unless Plaintiffs no longer seek this information in light of Defendants' previous production.

### PRV 007120 through PRV 007123

These documents consist of internal email communications and an attached

draft memorandum regarding the front end store restructuring assessment that appears to be substantively similar to the documents we considered previously, and which were identified at PRV 000062 through 000063. The additional email correspondence included with PRV 007120 through 007123 appear to have been shared between senior managers, and touch upon issues relating to payroll budgeting and scheduling considerations.

Consistent with our prior analysis, we do not find that Defendants have adequately demonstrated that these materials are protected from discovery by either the attorney-client privilege or the work-product doctrine, and we will therefore direct that they be produced.

### PRV 007284

This document is apparently a discussion outline and related handwritten notes that Kristin Crandall prepared in 2008 and placed in a file. The document, which does not appear to have been shared with any other Rite Aid personnel or counsel, addresses possible store restructuring ideas that the company was considering at this time. Defendants claim that the memorandum reflects counsel's mental impressions and legal advice in anticipation of litigation.

Upon consideration, we find that Defendants have not demonstrated sufficiently

that this particular document, which appears not to have been communicated or shared

with anyone internally at the company, and which does not state in any way that it was

the product of legal advice or counsel, or that it was prepared at counsel's direction

in anticipation of litigation, is subject either to the attorney-client privilege or the

work-product doctrine.[3]  Because Defendants have not sufficiently demonstrated that

this document is subject to privilege or other protection, it must be produced.

### PRV 007285 through PRV 007286

These documents are internal memoranda relating to Rite Aid's store

restructuring project, and were prepared by Kristin Crandall at some point in or

around 2008.  The documents were not shared with anyone, but were instead placed

---

[3]  Because we conclude that Defendants have not adequately demonstrated that the memorandum is privileged, we find it unnecessary to consider whether a memo to the file prepared by a non-lawyer is properly subject to the attorney-client privilege.  We do note that some courts have concluded that such memoranda are not properly privileged, because they fail to satisfy the first element of the privilege, namely that the information to be protected constitute a "communication" for purposes of obtaining legal advice.  See Stafford Trading, Inc. v. Lovely, No. 05-C-4868, 2007 U.S. Dist. LEXIS 13062, at * 22 (N.D. Ill, Feb. 22, 2007) ("Memos to files prepared by non-legal personnel containing business information are clearly not privileged.  These memos are not communications directed to anyone for the purpose of obtaining legal advice and cannot therefore fall within the ambit of the privilege.") (quoting Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 6 (N.D. Ill. 1980)).  In this case, there is simply insufficient evidence for the Court to conclude that Ms. Crandall's memo to her file contains legal advice of counsel, or counsel's mental impressions, as Defendants' assert.

in a file.  Defendants claim that these documents are protected by the attorney-client privilege and the work-product doctrine, and they rely on Ron Chima's general declaration in support of this claim.  We note that PRV 007285 and PRV 007286 are substantively identical, except that PRV 007286 contains handwritten notes that Defendants claim "reflect both legal advice and counsel's mental impressions".  Defendants also contend that they already provided Plaintiffs with PRV 007285, with the exception of a subsection briefly addressing the FLSA.

Upon consideration, as with PRV 007284, we do not find that Defendants have met their burden of showing that these documents should be withheld from production on the basis of privilege or work-product protection.  None of the documents is marked as privileged or as attorney-directed work product.  Other than assertions in Defendants' privilege log, which are quite general, Ron Chima's declaration does not speak in any way to these memoranda, or what are apparently Ms. Crandall's handwritten notes on PRV 007286.  We observe further that nothing in the notes themselves causes it to be evident that the notes were the product of counsel's mental impressions or legal advice.  In short, there is an insufficient basis for the Court to find that these memoranda are privileged or otherwise protected, and they will be ordered

produced.[4]

## C.    Conditional Privilege Ruling

Finally, we have identified the following documents which we conditionally find not to be privileged based upon the Defendants' current factual showing. However, mindful of the fact that the privilege is evanescent, and is lost entirely when first disclosed, we will provide the Defendants an opportunity to further buttress this particular privilege claim, if it chooses to do so. Our analysis of the privileges and their application to these particular documents, is set forth below:

### PRV 000074 through PRV 000076

These documents consist of further internal communications between and among members of the restructuring team.  The additional correspondence contained in this set of documents is found on PRV 000074 and PRV 000075, which are emails exchanged between Kristin Crandall and Bradley Sapp, the Director of Labor Relations for the West Coast.  In these emails, Ms. Crandall solicits Mr. Sapp's input

---

[4] We acknowledge that Defendants have already produced much of this information in a redacted format.  Nevertheless, we do not find that Defendants' assertion of privilege have been supported, and we thus have no basis on the current record to permit Defendants' to resist production of these documents in their entirety.  We note further that although the redacted portion of PRV 007285 concerns FLSA matters, the redacted material is especially general, does not indicate that it is the product of counsel's legal advice or mental impressions, and therefore does not on its own appear to represent privileged information, notwithstanding that it is information touching upon FLSA compliance.

on certain proposed changes to the store leadership structure, and Mr. Sapp provides detailed guidance regarding particular concerns and problems presented by collective bargaining agreements applicable to California stores.

Mr. Sapp clearly recognizes that the company was seeking store-wide changes in an effort to create consistency in the front-end store structure company-wide, but he raised a number of questions and concerns with respect to certain provisions in the collective bargaining agreements applicable to California stores and their relevance to the changes being proposed. Although legal concerns animate Mr. Sapp's correspondence, it does not appear to have been shared with a lawyer, and it is not clear that the correspondence was provided for purposes of securing legal advice from counsel.

Defendants state that these materials contain work product that was created in anticipation of litigation, but the documents do not support this assertion. Instead, the documents appear to describe business decisions taken in response to past litigation, and have been created with corporate-wide business interests in mind, regardless of the fact that relevant legal considerations were also recognized and discussed. Without a further, and more detailed factual showing, we cannot conclude that the documents consist of protected work-product, or that the attorney-client privilege attaches to shield these documents from production. Neither Mr. Sapp nor Ms. Crandall is

identified as a lawyer for the company, and the lack of a sufficient indication that this correspondence was generated at the behest of a lawyer, or for the purpose of obtaining legal advice, cuts against Defendants' generic assertion that the correspondence is privileged. Although Rite Aid's in-house attorney, Ron Chima, has submitted a declaration stating states generally that these documents, and apparently all of the 30 sets of documents that have been marked as privileged, were prepared at the direction of counsel, in anticipation of litigation, and were related to legal advice provided to the company, we find Mr. Chima's declaration to be overly general and insufficient to cause us to find that the correspondence exchanged between these two non-lawyers is privileged or protected work-product. We will, however,  permit Defendants an additional opportunity to more fully and specifically explain and support their basis for asserting either the attorney-client privilege or work-product protection with respect to this email before ordering it be produced.

## PRV 000216

This single document is an email that Kristin Crandall sent to members of Rite Aid's senior leadership team regarding the proposed store structure changes, and particularly regarding assistant store managers.  Although the email is sent to a number of leadership personnel, we observe that the email was not sent to or copied on any member of Rite Aid's in-house or outside counsel, and does not appear to seek

legal advice of any kind.  Instead, Rite Aid contends that the document reflects the legal advice that counsel had provided during the restructuring process itself, and further reflected counsel's mental impressions in light of existing and anticipated FLSA litigation.   In essence, Defendant relies on the same generic assertions regarding the attorney-client privilege and work-product protections that they resort to with respect to all of the documents submitted.

At first blush, we have difficulty agreeing with Defendants that the attorney-client privilege or work-product protection attaches to this document.  Although there is a reference in the email that it is "the recommendation with all taken into account," it is not clear that the recommendation is the result of legal advice given by counsel, and Defendants have not explained with any degree of specificity why the document should be privileged.

At the same time, having reviewed the contents of the email, we can perceive how some parts of the correspondence may reflect the advice given by counsel, which was in turn being shared with senior management involved in the store-restructuring project.  Nevertheless, the document does not bear any indicia of confidentiality, is not marked as privileged, and does not otherwise indicate that it is communicating legal counsel, or that it is being conveyed at counsel's direction.

Although this document presents a close call, we find at this time that

47

Defendants have not adequately supported their contention that this email communication is privileged material that should not be produced.  Defendants' reliance upon the same blanket and general assertions regarding the privilege, and their claim that every aspect of the store-restructuring project and seemingly all communications shared by members of Rite Aid's restructuring team are privileged, is simply not persuasive or sufficient.  However, because it does appear that the document may touch upon legal matters and real and potential litigation against the company, we will permit Defendants an additional opportunity to more fully and specifically explain and support their basis for asserting either the attorney-client privilege or work-product protection with respect to this email before ordering it be produced.

**PRV 007291 through PRV 007296**

These documents are also draft internal corporate memoranda that Kristin Crandall prepared, and placed in a file, at some point during fiscal year 2010. These memoranda relate to Rite Aid's front end store structure and FLSA compliance, and contain different proposals for managerial staffing and FLSA designation depending on the front-end volume of a respective store. The memoranda also contain handwritten notes, although the notes are brief and quite general. In contrast to the memoranda discussed above, these documents were labeled as "Attorney Directed Work Product." Defendants maintain that these draft memoranda were prepared at the direction of counsel Ron Chima, for the purpose of providing legal advice and in light of pending FLSA litigation. Defendants also note that final versions of the draft documents used for business purposes have already been produced to Plaintiffs.

Upon consideration, although it is a somewhat closer issue, we do not find that Defendants have met their burden of showing that these documents should be withheld from production on the basis of privilege or work-product protection. Although the documents are marked as attorney-directed work product, it is difficult to perceive how these front-end store leadership changes were part of legal counsel's litigation strategy, and neither Ron Chima nor any other legal representative of the company has explained adequately how these documents can reasonably be

considered work product created for litigation purposes.  Instead, the documents appear to consider forward-looking restructuring initiatives that may have been inspired by the myriad lawsuits Rite Aid was defending against, but the documents do not suggest that they were prepared to assist counsel with respect to the litigation itself.

Although Defendants also contend that the memoranda are protected by the attorney-client privilege, we again find an insufficient basis to reach this conclusion. The documents were, apparently, written by Ms. Crandall and then placed in a file. Nothing in Defendants' submission to the Court supports their contention that the documents were prepared primarily for the purposes of obtaining legal advice; instead they appear to have been merely draft memos to the file.  Other than assertions in Defendants' privilege log, which are quite general, Ron Chima's declaration does not speak specifically to these memoranda, or what are apparently Ms. Crandall's handwritten notes.  We observe further that nothing in the notes themselves causes it to be evident that the notes were the product of counsel's mental impressions or legal advice.  In short, Defendants have provided an insufficient basis for the Court to find that these memoranda are privileged or otherwise protected, and they will be ordered

produced.[5] We will, however,  permit Defendants an additional opportunity to more fully and specifically explain and support their basis for asserting either the attorney-client privilege or work-product protection with respect to this memoranda before ordering it be produced.

### PRV 007308

This document is another internal memorandum regarding Rite Aid's store restructuring proposals, prepared by Kristin Crandall and placed in a file sometime in or around 2008.  The document appears to set forth a number of corporate objectives with respect to the restructuring, including FLSA compliance, defined supervisory structure, clarity of leadership expectations, and profitability.  The document does indicate that some of the goals of the restructuring were to limit the corporation's liability in extant and future litigation, but nothing in the document indicates that it was the product of legal counsel, or that it contains legal advice or opinions, or that it was created at counsel's direction to assist in actual or anticipated litigation.  In short, this brief document highlights restructuring objectives, touches on legal and business issues, but does not clearly "reflect the advice of in-house counsel in

_____

[5] Although Defendants claim to have produced to Plaintiffs final versions of the documents that were used for business purposes, we do not find that this provides a sufficient basis for us to conclude that the draft memoranda is either irrelevant or necessarily redundant of the material already produced.

51

anticipation of / in light of existing FLSA litigation," as Defendants state in their privilege log.  Moreover, nothing in the two paragraphs in Ron Chima's declaration on which Defendants' rely speaks directly to this particular memorandum, which was created by a non-lawyer and thereafter placed in a file.   In consideration of these factors, we conclude that Defendants have not shown that this memorandum is privileged or protected by the work-product doctrine, and it will be produced. We will, however,  permit Defendants an additional opportunity to more fully and specifically explain and support their basis for asserting either the attorney-client privilege or work-product protection with respect to this email before ordering it be produced.

An appropriate order follows:

## IV.   **ORDER**

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT:

1.   The Court finds that Defendants' have failed adequately to support their assertions of attorney-client privilege or work-product protection for the following documents, and therefore directs that these documents be produced within 20 days from the of this Order:

- PRV 000062 through PRV 000063
- PRV 000064 through PRV 000066
- PRV 000069 through PRV 000071
- PRV 000192 through PRV 000193
- PRV 000208 through PRV 000209
- PRV 000223 through PRV 000286
- PRV 000290 through PRV 000291

- PRV 000311 through PRV 000348
- PRV 007120 through PRV 007123
- PRV 007184
- PRV 007185 through PRV 007186
- PRV 007291 through PRV 007296
- PRV 007308

2.  The Court finds that Defendants have adequately justified withholding the following documents from disclosure on the basis of either the attorney-client privilege, the work-product doctrine, or for the reasons otherwise explained in the within memorandum:

    - PRV 000094 through PRV 000108
    - PRV 000127 through PRV 000129
    - PRV 000188 through PRV 000189
    - PRV 000190 through PRV 000191
    - PRV 000197 through PRV 000198
    - PRV 000204 through PRV 000206
    - PRV 000220
    - PRV 000304
    - PRV 000349 through PRV 000358
    - PRV 000465 through PRV 000549
    - PRV 007918
    -

3.  With respect to PRV74-76, PRV 000216, PRV 007291 through PRV 007296, and PRV 007308 although we do not find that Defendants have adequately supported their assertion that this document is protected from disclosure either on the basis of attorney-client privilege or work-product protection, because it appears that the document might potentially be subject to protection from disclosure, we will permit Defendants a final opportunity to explain the basis for withholding this document from production.  Accordingly, on or before **February 27, 2012**, Defendants may submit with the Court any additional information and evidentiary support that they may have in support of their contention that these records are privileged or otherwise protected from disclosure.

/s/ Martin C. Carlson
Martin C. Carlson

53

United States Magistrate Judge

Dated: February 9, 2012