IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| SHIRLEY CRAIG, *et al.* | : | 4:08-cv-02317-JEJ |
| | : | |
| v. | : | |
| | : | |
| RITE AID CORPORATION, *et al.* | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL**

Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
KLAFTER OLSEN & LESSER LLP
Two International Drive
Suite 350
Rye Brook, New York 10573
Telephone:  (914) 934-9200

*Lead Counsel for Plaintiffs*


Peter D. Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
THE WINEBRAKE LAW FIRM, LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Telephone: (215) 884-2491

*Plaintiffs' Local Counsel*

# **TABLE OF CONTENTS**

I.   Introduction......................................................................................3

    A.   Shirley Craig v. Rite Aid Corp., et al. .................................................5

    B.   Eddie Ibea v. Rite Aid Corp. ..............................................................7

    C.   Jennifer Elliot, Jose Fermin, & Yvon Witty v. Rite Aid Corp., et al....9

    D.   James Fisher and Daniel Knepper v. Rite Aid Corp., et al. ...............11

    E.   Sheryl Doyon v. Rite Aid Corp., et al. ..............................................14

    F.   Ralph Cedano and Donna Garcia v. Rite Aid Corp., et al. ................15

    G.   Justin Torres and Priscilla Thomas v. Rite Aid Corp., et al...............17

    H.   The Remaining Cases .........................................................................18

    I.   The Mediation and Settlement Negotiations......................................24

II.   Summary of The Terms of The Settlement And Relief Presently Sought ....25

III.   Legal Argument ...............................................................................29

    A.   The Settlement Agreement Should Be Preliminarily Approved by The Court ...................................................................................................29

        1.   The Standards And Procedures for Preliminary Approval .......30

        2.   There Is A Strong Basis to Believe That The Settlement Is Fair, Reasonable And Adequate ........................................................33

    B.   Certification of The Settlement Classes Is Appropriate......................38

        1.   The Elements of Rule 23(a) Are Satisfied for Settlement Purposes in The Present Case ....................................................39

        2.   Numerosity Under Rule 23(a)(1)..............................................40

        3.   Commonality Under Rule 23(a)(2)...........................................40

        4.   Typicality Under Rule 23(a)(3) ...............................................43

5.      Adequacy Under Rule 23(a)(4)..................................................44

6.      The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes ....................................................................................46

C.      The Proposed Notice Provides Adequate Notice to The Members of The Classes........................................................................................50

1.      The Notice Satisfies Due Process .............................................50

2.      The Proposed Class Notices Are Accurate, Informative And Easy to Understand .................................................................52

D.      A Final Fairness Hearing Should Be Scheduled .................................53

IV.   The Court Should Issue An Injunction Prohibiting Duplicative Actions .....54

V.    Conclusion .........................................................................................56

ii

# Table of Authorities

Page(s)

CASES

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997)...........................................................31, 38, 46, 48

*Atl. C. L. R. Co. v. Bhd. of Locomotive Eng'rs*,
   398 U.S. 281 (1970)............................................................................54

*Baby Neal* v. *Casey,*
   43 F.3d 48 (3d Cir. 1994) ..............................................................40, 41

*Barnes* v. *American Tobacco Co.,*
   161 F.3d 127 (3d Cir. 1998) ..............................................................39

*Benjamin v. Dep't of Pub. Welfare,*
   807 F. Supp. 2d 201 (M.D. Pa. 2011)..................................................36

*Bogosian* v. *Gulf Oil Corp.,*
   561 F.2d 434 (3d Cir. 1977) ..............................................................43

*Carlough v. Amchem Products, Inc.*,
   10 F.3d 189 (3rd Cir. 1993) ..........................................................54, 55

*Cook* v. *Rockwell Int'l Corp.,*
   151 F.R.D. 378 (D. Colo. 1993) ........................................................44

*Cotton* v. *Hinton,*
   559 F.2d 1326 (5th Cir. 1977) ..........................................................35

*Cuevas v. Citizens Fin. Group, Inc*.,
   2011 U.S. Dist. LEXIS 155160 (E.D.N.Y. May 21, 2012)..........41, 49

*Cullen v. Whitman Med. Corp*.,
   197 F.R.D. 136 (E.D. Pa. 2000)........................................................36

*Damassia*, *v. Duane Reade, Inc.,*
   250 F.R.D. 152 (S.D.N.Y. 2008) ..............................................42, 44, 48

*Dietrich v. Bauer,*
   192 F.R.D. 119 (S.D.N.Y. 2000) ......................................................46

*Espinoza v. 953 Assocs. LLC*,
   2011 U.S. Dist. LEXIS 132098 (S.D.N.Y. 2011)................................49

*Fisher Brothers* v. *Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985) ......................................................35

*Fisher v. Rite Aid Corp.*,
   2010 U.S. Dist. LEXIS 56383 (D. Md. June 8, 2010).........................11

*Fisher v. Rite Aid Corp.*,
   2011 U.S. Dist. LEXIS 15375 (M.D. Pa. Feb. 16, 2011) ...................12

*Gen. Tel. Co. of Southwest* v. *Falcon*,
   457 U.S. 147 (1982)............................................................................43

*George v. Staples, Inc.*,
   2:08-cv-05746 (D.N.J.) .......................................................................42

*Girsh* v. *Jepson*,
   521 F.2d 153 (3d Cir. 1975) ...............................................................33

*Han v. Sterling Nat. Mortg. Co., Inc.*,
   2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. 2011) ..............................49

*Hanlon* v. *Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................39, 48

*Hayworth* v. *Blondery Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1992) ...............................................................43

*Hearn v. Rite Aid Corp.*,
   2012 N.J. Super. Unpub. LEXIS 643 (N.J. Super. Ct. App. Div. Mar. 27,
   2012) ...................................................................................................54

*Hochschuler* v. *G.D. Searle & Co.*,
   82 F.R.D. 339 (N.D. Ill. 1978)...........................................................46

*Ibea v. Rite Aid Corp.*,
   2012 U.S. Dist. LEXIS 4682 (S.D.N.Y. Jan. 6, 2012) ....................8, 9

*In re Asbestos Sch. Litig.*,
   104 F.R.D. 422 (E.D. Pa. 1984)...............................................41, 43, 44

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985) .......................................................54, 56

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*
  410 F. Supp. 659 (D. Minn. 1974).......................................................35

*In re Diet Drugs Prods. Liab. Litig.*,
  282 F.3d 220 (3rd Cir. 2002) .......................................................54, 55

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ...........................................30, 32, 33, 35

*In re Inter-Op Prosthesis Liab. Litig.,*
  204 F.R.D. 359 (N.D. Ohio 2001) .......................................................36

*In re Mex. Money Transfer Litig.*,
  267 F.3d 743 (7th Cir. 2001) .......................................................48

*In re NASDAQ Market Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1999) .......................................................36

*In re Pet Food Prods. Liab. Litig.,*
  629 F.3d 333 (3d Cir. 2010) .......................................................36

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) .......................................................passim

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .......................................................33

*In re Sugar Industry Antitrust Litig.,*
  73 F.RD. 322 (E.D. Pa. 1976).......................................................46

*In re Telectronics Pacing Systems,*
  172 F.R.D. 271 (S.D. Ohio 1997).......................................................47

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) .......................................................48

*Klay v. United Healthgroup, Inc.*,
  376 F.3d 1092 (11th Cir. 2004) .......................................................55

*Knepper v. Rite Aid Corp.*,
  675 F.3d 249 (3d Cir. 2012) .......................................................13, 14

*Lake* v. *First Nat'l Bank,*
   900 F. Supp. 726 (E.D. Pa. 1995) ...................................................36

*Lewis* v. *Curtis,*
   671 F.2d 779 (3d Cir. 1982) ...........................................................44

*Marisol A.* v. *Giuliani,*
   126 F.3d 372 (2d Cir. 1997) ...........................................................43

*Martin v. Foster Wheeler Energy Corp.,*
   2008 U.S. Dist. LEXIS 25712 (M.D. Pa. Mar. 31, 2008) ................36

*McLaughlin v. Liberty Mut. Ins. Co.*,
   224 F.R.D. 304 (D. Mass. 2004)......................................................42

*Morris v. Affinity Health Plan, Inc*.,
   2012 U.S. Dist. LEXIS 64650 (S.D.N.Y. 2012)..............................49

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985).........................................................................54

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v.
   *Anderson,*
   390 U.S. 414 (1968).........................................................................30

*Rite Aid Corp. Wage and Hour Litigation*,
   655 F.Supp.2d 1376 (J.P.M.L. 2009) ..............................................23

*Ross v. Citizens Bank, N.A.*,
   667 F.3d 900 (7th Cir. 2012) ...............................................40, 41, 49

*Sherman v. Am. Eagle Express, Inc,*
   2012 U.S. Dist. LEXIS 30728 (E.D. Pa. Mar. 8, 2012) ..............47, 49

*Smilow v. Southwestern Bell Mobile Sys., Inc.,*
   323 F.3d 32 (1st Cir. 2003)..............................................................48

*Stewart v. Abraham,*
   275 F.3d 220 (3d Cir. 2001) ............................................................40

*Stillman v. Staples, Inc.,*
   2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009)..........34, 37, 45

*Stoetzner* v. *U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ...............................................................32

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ..............................................................52

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)..................................................................40, 41

*Walsh* v. *Great Atlantic & Pacific Tea Co.*,
   726 F.2d 956 (3d Cir. 1983) ...............................................................33

*Weiss* v. *Mercedes-Benz of N Am. Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995)........................................................36

*Weiss* v. *York Hosp.*,
   745 F.2d 786 (3d Cir. 1984) ........................................................43, 44

*Wetzel* v. *Liberty Mut. Ins. Co.*,
   508 F.2d 239 (3d Cir. 1975) ........................................................39, 44

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910).............................................................................30

*Wolfert v. Transamerica Home First Inc.*,
   439 F.3d 165 (2d Cir. 2006) ...............................................................48

*Youngblood v. Family Dollar Stores, Inc.*,
   2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011)..............41, 49

*Zinberg* v. *Washington Bancorp, Inc.*,
   138 F.R.D. 397 (D.N.J. 1990)..............................................................40

## STATUTES

43 P.S. §§ 333.101, *et seq.* .....................................................................20

28 U.S.C. § 1407 ................................................................................7, 23

28 U.S.C. § 1651 ..............................................................................54, 55

28 U.S.C. § 1651(a) ..................................................................................2

28 U.S.C. § 1715 ...........................................................................................3, 29

28 U.S.C. § 1715(d) ............................................................................................53

29 U.S.C. § 201, *et seq.* ...........................................................................passim

29 U.S.C. § 216(b) .................................................................................7, 28, 52

## OTHER AUTHORITIES

*Newberg on Class Actions* (Fourth) ...............................................................44, 53

Fed. R. Civ. P. 15(a)(2) .........................................................................................2

Fed. R. Civ. P. 23 .....................................................................................passim

Fed. R. Civ. P. 23(a) ...........................................................................39, 43, 44, 45

Fed. R. Civ. P. 23(a)(1) ........................................................................................40

Fed. R. Civ. P. 23(a)(2) ...................................................................................40, 42

Fed. R. Civ. P. 23(a)(3) ........................................................................................42

Fed. R. Civ. P. 23(a)(4) ........................................................................................44

Fed. R. Civ. P. 23(b)(3) ...........................................................................31, 41, 46, 47

Fed. R. Civ. P. 23(e) .............................................................................30, 31, 32, 52

Fed. R. Civ. P. 23(g) ............................................................................................18

Fed. R. Civ. P. 23(h) ............................................................................................53

Fed. R. Civ. P. 30(b)(6) ....................................................................................9, 18

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ..31, 32, 53

Pennsylvania Rule of Civil Procedure 1028(a)(6) ................................................20

Plaintiffs Shirley Craig, Ralph Cedano, Sheryl Doyon, Larry Eaton, Jennifer Elliot, Thomas Finley, James Fisher, Jose Fermin, Donna Garcia, Rene Hough, Eddie Ibea, Daniel Knepper, Lisa Laun, Robin Mazzantini, Karriem Perkins, DeShawn Powell, Angel Quinones, Priscilla Thomas, Justin Torres, Robert Vasvari, and Yvon Witty (collectively, "Plaintiffs"), by and through their counsel, hereby move the Court for preliminary approval of the proposed collective and class action settlement ("Settlement") set forth in the Settlement Agreement ("Settlement Agreement")[1] (Copy attached as Exhibit A to Declaration of Seth R. Lesser in Support of Motion for Preliminary Approval of Proposed Class and Collective Action Settlement ("Lesser Decl."))[2]  Specifically, Plaintiffs respectfully request that the Court enter an Order (the "Preliminary Approval Order") that would:

1) grant preliminary approval of the proposed Settlement;

2) preliminarily certify, for settlement purposes only and pursuant to the terms of the Settlement Agreement between the parties, the proposed collective class pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA") and proposed state law class pursuant to Rule 23 of the Federal Rules of Civil Procedure, as described in the Second Consolidated Amended Collective/Class Action Complaint ("Second

---

[1] Defendant Rite Aid Corporation, Eckerd Corporation d/b/a Rite Aid, and the Defendants identified in the Second Consolidated Amended Collective/Class Action Complaint (collectively "Rite Aid") join this motion only for purposes of settlement.  Rite Aid reserves the right to assert all of its defenses, including without limitation its defenses to class or collective action certification or in any other context.

[2] The proposed Second Consolidated Amended Collective/Class Action Complaint, proposed Preliminary Approval Order, proposed form of Notice of the Settlement, and the proposed Claim Form are attached as Exhibit A-D to the Settlement Agreement, respectively.

Amended Complaint"),[3] and below, all for the purposes of providing notice to the members of the proposed Settlement Classes;

3)  approve the form and content of and direct the distribution of the proposed Notice, Claim Form and Consent to Join and Release, annexed to the Settlement Agreement, as Exhibits C-D;

4)  appoint Lead Counsel and Settlement Class Counsel as representing the Plaintiffs and classes named in the Second Amended Complaint and in the Settlement Agreement for purposes of the Settlement;

5)  appoint the Plaintiffs named in the Second Amended Complaint as Settlement Class Representatives;

6)  appoint Garden City Group, Inc. as Claims Administrator;

7)  pursuant to 28 U.S.C. § 1651(a), enjoin all members of the proposed Settlement Classes from initiating or proceeding with any and all suits, actions, causes of action, claims, or demands in federal or state court based on putative violations of the FLSA or any state or local law (including statutory, regulatory, and common law) pertaining to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted by or on behalf of salaried Assistant Store Managers and salaried Co-Managers who worked for Rite Aid within the applicable proposed Class Periods through the date of dismissal of the following lawsuits:

*Ralph Cedano & Donna Garcia v. Rite Aid Corporation, et al*., 2:10-cv-00237 (D. Oregon) (filed March 2, 2010) ("*Cedano*");
*Shirley Craig v. Rite Aid Corporation, et al*., 4:08-cv-02317 (M.D. Pa.) (filed December 29, 2008) ("*Craig*");
*Sheryl Doyon v. Rite Aid Corporation, et al*., 2:11-cv-00168 (D. Me.) (filed April 22, 2011) ("*Doyon*");
*Larry Eaton, et al. v. Rite Aid of Pennsylvania, Inc., et al*., Case ID: 090400455, Philadelphia Court of Common Pleas (filed April 8, 2009) ("*Eaton*");

---

[3] In conjunction with and as a part of this proposed Settlement, the parties have agreed to and have filed, pursuant to Fed. R. Civ. P. 15(a)(2), a Second Consolidated Amended Collective/Class Action Complaint in this action.

2

*James Fisher v. Rite Aid Corporation, et al.*, 1:10-cv-01865 (M.D. Pa.) (filed September 3, 2010) ("*Fisher*");
*Jose Fermin v. Rite Aid Corporation, et al.*, 1:08-cv-11364 (S.D.N.Y.) (filed December 31, 2008) ("*Fermin*");
*Rene Hough v. Rite Aid Corporation, et al.*, 1:11-cv-2212 (M.D. Pa.) (filed May 5, 2011) ("*Hough*");
*Eddie Ibea v. Rite Aid Corporation, et al.*, 1:11-cv-05260 (S.D.N.Y.) (filed July 6, 2010) ("*Ibea*");
*Daniel Knepper v. Rite Aid Corporation, et al.,* 1:09-cv-2069 (M.D. Pa.) (filed July 22, 2009) ("*Knepper*");
*Lisa Laun and Deshawn Powell v. Rite Aid Corporation*, Case ID: 090600789, Philadelphia Court of Common Pleas (filed June 4, 2009) ("*Laun*");
*Robin Mazzantini v. Rite Aid Corporation, et al.*, 1:11-cv-02324 (M.D. Pa.) (filed June 17, 2011) ("*Mazzantini*");
*Angel Quinones & Thomas Finley v. Rite Aid Corporation, et al.*, 1:12-cv-00870 (M.D. Pa.) (filed March 23, 2012) ("*Quinones*");
*Priscilla Thomas & Theresa Paris v. Rite Aid of New Jersey, Inc., et al.*, 1:09-cv-05878 (D.N.J.) (filed November 7, 2009) ("*Thomas*");
*Justin Torres v. Rite Aid Corporation, et al.*, 3:09-cv-02922 (D.N.J.) (filed June 16, 2009) ("*Torres*"); and
*Yvon Witty, et al. v. Rite Aid Corporation, et al.*, 1:11-cv-00013 (S.D.N.Y.) (filed January 3, 2011) ("*Witty*"); and

8) set the final fairness hearing for a date no earlier than one hundred (100) days from the date of this motion, as required by 28 U.S.C. § 1715, at the Middle District of Pennsylvania, Harrisburg Vicinage.[4]

In support of the motion for preliminary approval, Plaintiffs submit the following memorandum of points and authorities.

## I.   Introduction

The proposed Settlement would resolve (1) the thirteen cases that are presently before this Court; and (2) a parallel, non-removable state court case in

---

[4] Pursuant to 28 U.S.C. § 1715, final approval of the settlement may not be granted less than 100 days after preliminary approval.

Pennsylvania, the consolidated case of *Larry Eaton, et al. v. Rite Aid of Pennsylvania, Inc., et al.*, Case ID:  090400455, Philadelphia Court of Common Pleas (filed April 8, 2009), and *Lisa Laun and Deshawn Powell v. Rite Aid Corporation*, Case ID: 090600789, Philadelphia Court of Common Pleas (filed June 4, 2009).  Collectively, these lawsuits involve nationwide claims that were brought, either under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") or under the laws of those states that have state wage and hour statutes analogous to the FLSA, on behalf of Rite Aid salaried Assistant Store Managers and salaried Co-Managers.

The scope of the litigation has involved approximately 4,700 stores, and during the relevant time periods, Rite Aid's store hierarchy has largely consisted of a Store Manager ("SM") in each store, and potentially an Assistant Store Manager or Co-Manager (collectively referred to herein as "Assistant Store Managers" or "ASMs"), Shift Supervisors, Cashiers, and Stockpersons in the front end of each store.  *See* Lesser Decl. at ¶ 2.[5]  At all relevant time periods, Rite Aid designated Co-Managers and certain ASMs as exempt under the FLSA and under the laws of the states that have analogous state wage and hour laws.  *Id.*

_____

[5] By using this defined term, Rite Aid agrees, only for settlement purposes, that Assistant Store Managers and Co-Managers are similar job positions and that the individuals employed in the Assistant Store Manager and Co-Manager positions perform similar job duties and responsibilities.

4

In effect, the proposed Settlement is an omnibus settlement that would, if approved, constitute the end of several years of dogged litigation – literally coast to coast, from Portland, Maine (the *Doyon* case) to Portland, Oregon (the *Cedano* case) – in which both sides, believing they were correct, litigated the propriety of Rite Aid's classification of Co-Managers and some Assistant Store Managers as "exempt" from overtime pay requirements under federal and state laws.

### A. *Shirley Craig v. Rite Aid Corp., et al.*

The litigation began with the filing of the *Craig* case in December 2008, a case that asserted claims under the FLSA on behalf of Rite Aid's ASMs.  That case, whose docket has over 550 entries, proceeded through discovery; through this Court's conditional certification of a collective action of the matter pursuant to Section 16(b) of the FLSA in February 2010; through approximately 40 depositions of ASMs and corporate employees throughout the country; exchange and analysis of hundreds of thousands of pages of documents; and through litigation and briefing regarding multiple other issues including privileged documents, motions for summary judgment relating to bankruptcy and merits issues, and electronically stored information. *See* Lesser Decl. at ¶ 4.  There were multiple motions involving disputed aspects of discovery, from the overall scope and timing of discovery to specific discovery disputes, and multiple hearings and motions before the Magistrate Judge. *Id.*  In fact, the Magistrate Judge (almost at

least once a month sometimes more often) was called upon to address disputes,

provide direction, rule on motions and the like and there were routine telephone

and in-person conferences with Magistrate Judge Carlson. *Id.* Plaintiffs' counsel

reviewed literally hundreds of thousands of pages of "store level" documents for

the opt-in deponents that Rite Aid collected and sent to document storage facilities

scattered throughout the country. Lesser Decl. at ¶ 5.

In addition, even when the parties were not before the Court through

conferences, arguments or briefing positions, the parties engaged, literally day after

day for the past several years, in conferrals about many difficult discovery issues

pertaining to collective action certification. *Id.* For electronic discovery matters,

for instance, Plaintiffs engaged an expert consultant from OrcaTec to assist with an

analysis of Rite Aid's electronic systems in order to determine the most effective

and cost efficient way to obtain relevant electronic discovery materials, which

entailed multiple systems (including legacy systems) spanning multiple years.

Lesser Decl. at ¶ 6. The parties exchanged innumerable letters and emails and

sought Court intervention (most often in the *Ibea* matter discussed below, but also

in the *Craig* case) concerning these electronic discovery issues. *Id.* As the Court

can see, the *Craig* litigation itself – even aside from the other parallel cases,

discussed below – has been a lengthy and expensive endeavor for both sides.

Following the conditional certification in *Craig*, additional ASM and Co-Manager cases were filed throughout the country asserting claims on behalf of ASMs and Co-Managers in multiple states.  Lesser Decl. at ¶ 7.  These were filed in separate courts under specific state laws, and continued to be so filed after the Judicial Panel on Multidistrict Litigation had rejected centralization of this litigation under 28 U.S.C. § 1407 and most plaintiffs preferred to proceed with their own individual state law claims in the federal courts in their states.  (Additionally, as discussed below, some of the state cases were transferred to this Court, upon Rite Aid's motions, but others were not.)  A discussion of these cases follows.

### B.  *Eddie Ibea v. Rite Aid Corp.*

On July 6, 2010, Eddie Ibea filed a lawsuit in the Eastern District of New York alleging that Rite Aid violated the FLSA by failing to pay Co-Managers overtime.  Lesser Decl. ¶ 8.  By agreement, the case was transferred to the Southern District of New York on July 28, 2011 where, as discussed below, other parallel cases were already pending.  *Id.*  Upon transfer, the parties engaged in FLSA § 216(b) pre-certification discovery which included, among other things, the depositions of 7 Co-Managers as well as a 30(b)(6) deposition covering multiple topics.  *Id.*  On November 14, 2011, Plaintiff filed his motion for conditional certification pursuant to Section 216(b) of the FLSA, and Magistrate Judge Henry

B. Pitman granted Plaintiff's motion on December 14, 2011. *Id.* at ¶ 9.   Rite Aid

objected to Magistrate Pitman's ruling, and the parties briefed the objections.

District Judge Jed S. Rakoff overruled Rite Aid's objections to Magistrate Judge

Pitman's Order on January 9, 2012. *Id.*; *see also Ibea v. Rite Aid Corp*., 2012 U.S.

Dist. LEXIS 4682 (S.D.N.Y. Jan. 6, 2012).   Following the ruling, the parties

litigated many issues, including the appropriate sample size for discovery of the

opt-ins, multiple protective orders and motions to compel concerning payroll data

for the collective action members, depositions of corporate witnesses and 30(b)(6)

topics, and numerous other discovery issues that arose during the post-conditional

certification discovery phase. *Id.* at ¶ 10.   There were approximately 20 Court

conferences in this matter alone addressing the certification motion and the

discovery issues. *Id.*

   In addition, the parties fiercely litigated electronic discovery matters relating

to both Rite Aid's and the opt-ins' electronic materials.   Lesser Decl. ¶ 11.   Both

sides engaged electronic discovery consultants to manage the complicated issues

that arose during the process. *Id.*   The parties exchanged thousands of pages of

electronic materials including various corporate policies and procedures,

communications to the opt-ins' stores in the form of "SYSMs", and electronic

mail. *Id.*   The parties also hotly litigated the issue of corporate custodians for

additional electronic mail and addressed this matter in multiple court conferences before Magistrate Judge Pitman, both in person and via telephone.  *Id.*

In addition, the parties took the depositions of more than 30 Co-Managers and corporate employees.  Lesser Decl. at ¶ 12.   At the time of the settlement, Plaintiffs planned, and had noticed, 10 depositions of corporate witnesses including a Fed. R. Civ. P. 30(b)(6) witness covering multiple topics.  *Id*.  To obtain these depositions, the parties had litigated numerous motions to compel and motions for protective orders that each side had filed.  *Id.*

By virtue of the court's expeditious handling of the scheduling in this case, all discovery would have been required to have been completed by June 8, 2012 and, at that point, final pretrial motions might have been expected but, as both sides would acknowledge, there was a substantial likelihood that the *Ibea* litigation would well have found itself shortly put on a pretrial scheduling track, with a trial that could have been starting in a mere few months.

**C.**      ***Jennifer Elliot, Jose Fermin, & Yvon Witty v. Rite Aid Corp., et al.***

On October 31, 2008, Yatrim Indergit filed a Complaint in the Southern District of New York on behalf of himself and all other Store Managers and Assistant Store Managers alleging that Rite Aid violated federal and state law by failing to pay overtime.  Lesser Decl. at ¶ 13.  On December 31, 2008 and September 1, 2010, Jose Fermin and Yvon Witty, respectively, filed Complaints

9

against Rite Aid alleging violations of the New York Labor Law on behalf of themselves and all others similarly situated, including, as here relevant, ASM claims. *Id*. On July 18, 2011, in a court conference before Magistrate Judge Henry Pitman, after issues of conflict of interest had arisen and been addressed before the Court, the parties (including plaintiffs' counsel in *Indergit*, *Fermin* and *Witty*) agreed before the Court to have counsel in *Fermin* and *Witty* continue to represent the ASM claims, while *Indergit* counsel would represent the SM claims. *Id*. at ¶ 14. At the same time (July 18th), the parties agreed to consolidate the *Witty* case with the *Fermin* case for all purposes. *Id*. On December 14, 2011, Plaintiffs moved to substitute Jennifer Elliot for Yvon Witty as Plaintiff due to Mr. Witty's personal situation requiring him to move to Haiti. *Id*. The motion to substitute was among the matters pending at the time that the parties reached a settlement. *Id*.

Discovery commenced in earnest in 2011, and the parties engaged in pre-certification discovery covering matters relating to Fed. R. Civ. P. 23 certification issues. Lesser Decl. at ¶ 15. Plaintiffs moved to compel a class list of ASMs to obtain discovery from putative class members, and Magistrate Judge Pitman granted Plaintiffs' motion on August 10, 2011. *Id*. Subsequently, the parties engaged in 30(b)(6) depositions covering multiple topics and took more than 20 depositions of ASMs and corporate witnesses across New York State covering

matters relating to whether or not the ASMs are similarly situated, Rite Aid's

corporate policies and procedures, and the nature and scope of the job duties that

ASMs actually perform.  *Id*.  The parties also engaged in written discovery

including the production of thousands of pages of documents.  *Id*.

On January 23, 2012, Plaintiffs filed a comprehensive motion to certify a

Rule 23 New York Labor Law class of ASMs who Rite Aid classified as exempt

from overtime (a motion that had 41 exhibits, reflecting the scope of the discovery

that had been undertaken), Rite Aid responded on April 13, 2012, and Plaintiffs'

reply was not yet due at the time the parties reached a settlement.  Lesser Decl. at ¶

16.

### D.    *James Fisher and Daniel Knepper v. Rite Aid Corp., et al.*

Plaintiff James Fisher originally filed his class action Maryland Wage and

Hour Law ("MWHL") claim ("*Fisher I*") in the United States District Court for the

District of Maryland on July 21, 2009.  Lesser Decl. at ¶ 17.  Rite Aid moved to

dismiss Plaintiff Fisher's claim, arguing that the first-to-file rule mandated that Mr.

Fisher pursue his claim in the Middle District of Pennsylvania, where *Craig v. Rite

Aid Corp*. was pending.  *Id*.  The parties fully briefed Rite Aid's motion to dismiss,

and on June 8, 2010 Judge Bennett dismissed Plaintiff's MWHL claim without

prejudice under the first-to-file-rule.  *See Fisher v. Rite Aid Corp*., 2010 U.S. Dist.

LEXIS 56383 (D. Md. June 8, 2010).

11

Plaintiff Fisher subsequently re-filed his Complaint in the federal district court for the Middle District of Pennsylvania. *See Fisher v. Rite Aid Corp.*, Civil No. 1:10-cv-01865 (M.D. Pa.) ("*Fisher II*"). On February 16, 2011, the Middle District of Pennsylvania dismissed Plaintiff's complaint without prejudice on the grounds that Plaintiff's MWHL claim was "inherently incompatible" with the FLSA claim he asserted in the *Craig* action as an opt-in. *See Fisher v. Rite Aid Corp.*, 2011 U.S. Dist. LEXIS 15375 (M.D. Pa. Feb. 16, 2011). The Court noted that Plaintiff could re-file his MWHL action in state court, a decision that Plaintiff appealed as discussed below. *Id*. at *17.

Plaintiff Fisher re-filed his action in the Baltimore City Circuit Court on April 18, 2011 ("*Fisher III*"). Lesser Decl. at ¶ 17. Defendants removed the action to United States District Court for the District of Maryland on April 14, 2011. *Id*. Rite Aid moved to dismiss Plaintiff Fisher's claims again, arguing that the law of the case doctrine mandated dismissal. *Id*. Judge Bennett again dismissed Plaintiff Fisher's claims on February 23, 2012. *Id*. Plaintiff appealed Judge Bennett's dismissal to the United States Court of Appeals for the Fourth Circuit. *Id*. Plaintiff thereafter voluntarily dismissed his appeal of *Fisher III* after the Third Circuit reversed the dismissal of *Fisher II*, a decision which is discussed below. *Id*.

On July 22, 2009, Robert Vasvari filed a Complaint in the Northern District of Ohio alleging that, on behalf of himself and all other Rite Aid Assistant Store

Managers, Rite Aid violated the Ohio Minimum Wage Fairness Act. *Id*. at ¶ 18. On October 19, 2009, the parties stipulated to transfer this matter to the Middle District of Pennsylvania. *Id*. While the litigation was pending, Mr. Vasvari passed away, and Plaintiff made an unopposed motion to substitute Daniel Knepper, which the Court granted on December 3, 2010. *Id*.

While *Fisher* and *Knepper* were pending, Rite Aid moved to dismiss the actions based upon a theory referred to as "inherent incompatibility," essentially claiming that Plaintiffs' state law claims were incompatible with their FLSA claims asserted in *Craig*. Lesser Decl. at ¶ 19. On February 16, 2011, this Court granted Rite Aid's motion, and Plaintiffs appealed the ruling to the Third Circuit. *Id*. at ¶ 20. After ordering briefing and holding oral argument, earlier this year, the Third Circuit reversed the order and reinstated the *Fisher* and *Knepper* actions holding that FLSA and state law claims are not inherently incompatible. *Id*. at ¶ 21; *Knepper v. Rite Aid Corp*., 675 F.3d 249 (3d Cir. 2012). This was a significant decision resolving a substantial question of FLSA law – indeed, the United States Department of Labor had intervened as an *amicus* and argued before the Third Circuit – which allowed the *Hough* and *Mazzantini* cases (which were putative state law class actions pending in the Middle District of Pennsylvania that would have arguably been subject to dismissal pursuant to the inherent incompatibility ruling) to proceed with *Fisher* and *Knepper* in the Middle District of Pennsylvania.

*Id*. Court conferences before this Court were scheduled at the time that this Settlement was reached.

> **E.** ***Sheryl Doyon v. Rite Aid Corp., et al.***

On April 22, 2011, Sheryl Doyon filed a lawsuit alleging, on behalf of herself and all others similarly situated, that Rite Aid violated the Maine Wage Payment Statute by failing to pay overtime to ASMs.  Lesser Decl. at ¶ 22.  On June 24, 2011, Rite Aid moved to change venue to the Middle District of Pennsylvania claiming that Plaintiff Doyon was an opt-in in the *Craig* matter and her Complaint made the same allegations and therefore should be transferred to the Middle District of Pennsylvania.  *Id*. at ¶ 23.  Plaintiff opposed the motion noting that, among other reasons, Ms. Doyon was no longer an opt-in in *Craig* due to the FLSA statute of limitations.  *Id*.  Rite Aid withdrew the motion, and discovery commenced thereafter.  *Id*.  Plaintiff again made a motion to compel the class list of ASMs, and Magistrate Judge John Rich granted Plaintiff's motion on November 18, 2011.  *Id*. at ¶ 24.  Pre-certification discovery followed including 30(b)(6) depositions covering multiple topics, the depositions of Plaintiff and a Regional Vice President in charge of Rite Aid's Maine stores.  *Id*.  Plaintiff filed a motion for class certification pursuant to Fed. R. Civ. P. 23 on April 19, 2012 while other discovery matters were being litigated including electronic discovery and the

depositions of the ASMs who offered declarations in support of Plaintiff's motion for class certification.  *Id*.

####  F.     *Ralph Cedano and Donna Garcia v. Rite Aid Corp., et al.*

On March 2, 2010, Plaintiff Sandra Zirkel filed a complaint in the federal district court of Oregon on behalf of herself and all other similarly situated current and former Assistant Store Managers employed by Rite Aid within the state of Oregon for violation of Oregon's state overtime wage laws.  Lesser Decl. at ¶ 25. An Amended Complaint was filed adding Thrifty Payless, Inc. as a Defendant on March 15, 2010.  *Id*.   Discovery requests were exchanged between the parties in July 2010 and responses were provided in August 2010.  *Id*.  Documents were exchanged in October 2010.  *Id*.

Plaintiff filed an unopposed Motion to file a Second Amended Complaint that was granted, and, on December 15, 2010, a Second Amended Complaint adding Ralph Cedano as a Plaintiff was filed.  Lesser Decl. at ¶ 26.  On December 17, 2010, Sandra Zirkel's claims were dismissed due to her bankruptcy filing in which she did not list this lawsuit as a potential claim.  *Id*.  Shortly thereafter, the parties addressed many issues through motion practice.  *Id*.

On March 4, 2011, Defendants filed a motion for stay asking that the case be stayed until the U.S. Supreme Court issued a ruling in the *Dukes v. Wal-Mart, Inc.* case.  Lesser Decl. at ¶ 27.  On March 7, 2011, Plaintiffs filed a motion to compel

to obtain the names and addresses of all the other current and former Oregon Assistant Store Managers, Store Managers, and District Managers. *Id.* Shortly thereafter, Defendants filed a motion for protective order seeking to preclude Plaintiffs from taking the depositions of Store Managers John Chamberlain and Paul Oleson, and District Manager Denny Horton, because defense counsel believed the court needed to resolve certain ethical considerations defense counsel had raised regarding representing Store Managers at depositions when those store managers were also opt-in collective action members in the *Indergit* Store Manager case pending in the Southern District of New York. *Id.* After the motion for a protective order was filed, Plaintiffs also filed a motion to compel the three depositions that had been noticed, as well as the depositions of the four *Indergit* opt-ins Defendants refused to identify. *Id.* On April 26, 2011, the Oregon court held a hearing to address these motions and granted Plaintiffs' motions to compel the class list and the depositions. *Id.* The court denied Defendants' motions to stay and motion for a protective order. Lesser Decl. at ¶ 27. Plaintiffs then moved to file a Third Amended Complaint to add Donna Garcia as plaintiff on August 30, 2011. *Id.* The court granted the motion in October 2011. *Id.*

Plaintiffs sought to take the depositions of non-party putative class members in support of their motion for class certification. Lesser Decl. at ¶ 28. Defendants filed a motion for a protective order on November 15, 2011, seeking to bar

16

Plaintiffs from taking those depositions. *Id*. On December 6, 2011, the Court

granted the motion for a protective order. *Id*.  On March 21, 2012, Defendants

filed a motion to compel supplemental responses by Donna Garcia to Defendants'

Second Request for Production of Documents and Second Set of Interrogatories.

Plaintiffs opposed this motion to compel on the grounds that it sought attorney

work product. *Id*.  The Court denied Defendants' motion to compel on April 23,

2012. *Id*.

Throughout the course of litigating these various motions, the parties

engaged in discovery which included written discovery and document production,

the depositions of Plaintiff Garcia, a Store Manager, a District Manager, and a

Regional Vice President, and discovery of electronically stored information.

Lesser Decl. at ¶ 29.  After these depositions, the parties exchanged various letters

concerning deficiencies in the Defendants' responses to discovery requests. *Id*.

The parties were preparing to address these discovery matters with the Court at the

time the settlement was reached. *Id*.

### G.    *Justin Torres and Priscilla Thomas v. Rite Aid Corp., et al.*

On June 16, 2009 and November 7, 2009, Justin Torres and Priscilla

Thomas, respectively, filed Complaints against Rite Aid alleging violations of the

New Jersey Wage and Hour Laws on behalf of themselves and all others similarly

situated.  Lesser Decl. at ¶ 30.  On February 9, 2011, the actions were consolidated

17

while pre-certification discovery was ongoing in the *Torres* matter. *Id*.

Particularly after a wait during which a motion for lead counsel appointment under

Federal Rule of Civil Procedure 23(g) was filed (and then denied), the parties

continued with pre-certification discovery, and exchanged documents. *Id*. at ¶ 31.

Plaintiffs took a Rule 30(b)(6) deposition covering various pre-certification topics.

Plaintiffs made a motion to compel the class list of New Jersey ASMs, a motion

that was granted on April 24, 2012. *Id*. The parties engaged in multiple conferrals

regarding various discovery issues and deficiencies in responses to discovery

requests. *Id*. Prior to Plaintiffs' filing a motion for class certification, the parties

reached a settlement.

### H.    *The Remaining Cases*

On May 5, 2011, Rene Hough filed a Complaint against Rite Aid in the

Western District of Washington alleging, on behalf of herself and all other Rite

Aid Assistant Store Managers, that Rite Aid violated Washington's overtime laws.

Lesser Decl. at ¶ 32. On August 2, 2011, Rite Aid filed a motion to dismiss and/or

transfer to the Middle District of Pennsylvania. *Id*. Plaintiffs opposed the motion.

*Id*. On November 8, 2011, the Court granted the motion to transfer and the case

was transferred to the Middle District of Pennsylvania. *Id*. The case was going to

proceed under this Court's direction, in light of the Third Circuit's *Fisher/Knepper*

decision at the time the settlement was reached. *Id*.

18

On June 17, 2011, Robin Mazzantini filed a Complaint against Rite Aid in the District of Massachusetts alleging, on behalf of herself and other Rite Aid Assistant Store Managers, that Rite Aid violated Massachusetts General Laws by failing to pay overtime and all wages owed.  Lesser Decl. at ¶ 33.  On August 11, 2011, Rite Aid moved to transfer the case to the Middle District of Pennsylvania and Plaintiff opposed the motion.  *Id.*  Oral argument was held on December 15, 2011 and, at that time, Judge Michael Ponser ruled with Rite Aid to grant the motion to transfer.  *Id.*

While the *Fisher* and *Knepper* appeals were pending in the Third Circuit, the parties filed a joint motion to stay the *Hough* and *Mazzantini* cases since the Third Circuit's decision would determine whether or not the cases could proceed given the Court's ruling regarding inherent incompatibility and the fact that Ms. Hough and Ms. Mazzantini are opt-ins in the *Craig* matter (like Mr. Fisher and Mr. Knepper).  Lesser Decl. at ¶ 34.  After the Third Circuit ruled, the parties filed a joint motion to consolidate *Fisher, Hough, Knepper*, and *Mazzantini* for discovery purposes on April 18, 2012.  *Id.*

On March 23, 2012, Angel Quinones filed a Complaint in the Southern District of New York against Rite Aid alleging, on behalf of himself and all Co-Managers, that Rite Aid violated New York Labor Law by failing to pay all wages due to him and other Co-Managers including overtime.  Lesser Decl. at ¶ 35.  On

May 10, 2012, Plaintiff voluntarily dismissed this action subject to an agreement with Rite Aid allowing re-filing in the Middle District of Pennsylvania. *Id*. On May 9, 2012, Angel Quinones re-filed his Complaint against Rite Aid which included allegations that Rite Aid also violated New Jersey Wage and Hour Laws on behalf of Plaintiff Thomas Finley and New Jersey Co-Managers. *Id*.

On June 4, 2009, Plaintiffs Lisa Laun and DeShawn Powell ("*Laun Plaintiffs*") filed a Class Action Complaint in the Philadelphia Court of Common Pleas alleging that Rite Aid violated the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* by misclassifying them and other Pennsylvania Assistant Store Managers as exempt from receiving overtime premium pay.  Lesser Decl. at ¶ 36.  On July 28, 2009, Rite Aid filed preliminary objections pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(6), arguing that another lawsuit titled *Janice Boyer et al. v. Rite Aid Corporation*, No. 090400455, June Term, 2009[6] was filed in the same court two months prior asserting similar PMWA class action claims on behalf of Pennsylvania ASMs.  *Id*. Rite Aid asked the Court to dismiss the *Laun* Plaintiffs' class allegations and stay their individual claims pending further order of the court.  *Id*.  Recognizing that the *Eaton* action was, in fact, filed first, the *Laun* Plaintiffs did not oppose Rite Aid's

---

[6]  In October 2009, the parties to the *Boyer* action stipulated to the dismissal of named Plaintiff Janice Boyer.  Thereafter, the *Boyer* action was re-titled *Larry Eaton, et al. v. Rite Aid of Pennsylvania, Inc. and Rite Aid Corporation*.  For ease of reference, this action is referred to herein as the "*Eaton* action."

preliminary objections.  *Id*.  The *Laun* action remained stayed for over two years. *Id*.

While the *Laun* action was stayed, the *Eaton* action proceeded.  However, on May 6, 2011, the Plaintiffs in *Eaton* filed a "Motion to Withdraw Motion for Class Certification and Discontinue Class Allegations" in which they sought to, *inter alia*, have their PMWA class allegations on behalf of ASMs discontinued.  Lesser Decl. at ¶ 37.  Then, on November 3, 2011, the Philadelphia Court of Common Pleas entered an order in *Laun* lifting the stay and setting case management deadlines.  *Id*.  Soon thereafter, the *Laun* Plaintiffs filed a motion for reconsideration asking that their PMWA class claims be revived in light of the *Eaton* parties' desire to dismiss the same claims on behalf of ASMs.  *Id*.  On February 27, 2012, the Philadelphia Court of Common Pleas entered an order consolidating the *Laun* and *Eaton* actions and making the *Laun* action the lead case.  *Id*.

While the stay in *Laun* was only lifted in the fall of 2011, the parties engaged in significant discovery during this period.  Lesser Decl. at ¶ 38.  This included: (i) the *Laun* Plaintiffs responding to Rite Aid's First Set of Interrogatories and Document Requests; (ii) Rite Aid responding to Plaintiffs' First Set of Interrogatories and Document Requests which included the production of over 900 documents that were reviewed by Plaintiffs' counsel; (iii) the *Laun*

21

Plaintiffs drafting a detailed letter to Rite Aid's counsel addressing deficiencies in

Rite Aid's discovery responses concerning ESI; (iv) Rite Aid had produced for

inspection numerous boxes of documents from the *Laun* Plaintiffs' respective

stores; and (v) the *Laun* Plaintiffs serving a Second Set of Interrogatories and

Document Requests on Rite Aid.  *Id*.

On September 24, 2010, Wanda Hadra filed a Complaint against Rite Aid

alleging, on behalf of herself and all others similarly situated, that Rite Aid

violated the FLSA by failing to pay Assistant Store Managers all wages due

including overtime.  Lesser Decl. at ¶ 39.  The case was filed, in part, to allow late

consenting ASMs from the *Craig* case to pursue a claim against Rite Aid.  *Id*.  On

November 29, 2010, the Court granted permission to file late consents in the *Craig*

matter, and the parties agreed to voluntarily dismiss the *Hadra* action on December

1, 2010.  *Id*.

The final case, *Robert Lohman v. Rite Aid Corporation, et al.*, was filed on

May 17, 2011 and alleged, on behalf of Mr. Lohman and all Rite Aid Assistant

Store Managers, that Rite Aid violated the New Hampshire Protective Legislation

Law.  Lesser Decl. at ¶ 40.  Upon review of the law, on December 14, 2011, the

parties stipulated to dismissal of the case because the New Hampshire Protective

Legislation Law does not apply to employers who are subject to the FLSA.  *Id*.

As noted briefly above, the litigation also entailed a trip to the Judicial Panel on Multidistrict Litigation.  At the time that the seven cases had been filed in Maryland, New Jersey, New York, Ohio and Pennsylvania, Plaintiffs' Lead Counsel, with the respective co-counsel in those cases, filed a motion for centralization under 28 U.S.C. § 1407.  Lesser Decl. ¶ 47.  After briefing, including Rite Aid's opposition, and argument before the Judicial Panel, on December 2, 2009, the motion was denied, thereby leading to the continued filing and separate litigation of the various cases addressed above.  *Rite Aid Corp. Wage and Hour Litigation*, 655 F. Supp. 2d 1376 (J.P.M.L. 2009).

\*   \*   \*

As the foregoing summary makes clear, the litigation between the parties to this Settlement has been intense – several years of day-in-day-out litigation in multiple federal and state venues.  The scope of litigated matters has been varied and comprehensive – from substantive issues that required addressing at the Third Circuit, to a MDL petition, to discovery disputes that are essentially innumerable.  By the time that the parties agreed to discuss settlement, there can be no question whatever that both sides were well versed in the facts, circumstances and law applicable to the disputed issues and had a comprehensive knowledge of what a potential trial record would look like.  Lesser Decl. at ¶ 41.

23

## I.   *The Mediation and Settlement Negotiations*

In the fall of 2011, the parties agreed to mediate the case.  After considering numerous possible mediators, the parties agreed to use Judge Joel B. Rosen, a former Magistrate Judge of the District of New Jersey, and a most highly respected mediator.  After pre-mediation submissions to Judge Rosen, a mediation session was held on November 15, 2011.  Both sides presented their cases to Judge Rosen, and he raised issues and pressed the parties to consider their risks.  That session, however, proved unproductive and the day-in-day-out litigation continued unabated.

Following the mediation session, Judge Rosen continued to press the sides, conveying proposals and questions about any potential settlement between the parties' lead counsel, Mr. Turner and Mr. Lesser.  Renewed discussions in May, 2012, proved more fruitful, leading to the present settlement.

The mediation and settlement process thus ultimately consumed eight months, involving thorough written submissions to the mediator, an analysis of potential damages and methods to calculate damages (using either a half-time method or a time-and-one-half method), and extensive telephone and email negotiations.  Lesser Decl. at ¶ 43.  On May 4, 2012, the parties agreed in principle to a settlement and negotiated the terms for the final settlement agreement which

involved virtually daily negotiation and proposals and counter-proposals, leading to the full and complete Settlement Agreement now before the Court. *Id*. at ¶ 44.

Plaintiffs unequivocally can say – and believe this cannot be gainsaid – that the proposed Settlement is the product of two fully informed sides negotiating intensely at arm's length. *See id.* at ¶ 45. Both sides believe that it offers a fair and reasonable resolution of the litigation and incorporates and recognizes the substantial risks each side faced, whether through class certification of the state law claims, decertification motions related to the FLSA claims, summary judgment motions, at trials or upon appeals, had the litigation continued. *See id*. at ¶ 46.

## II.   <u>Summary of The Terms of The Settlement And Relief Presently Sought</u>

The Settlement Agreement provides that, if approved, Rite Aid will pay up to $20.9 million into a qualified settlement fund in order to resolve the claims as set forth in the Second Amended Complaint in their entirety. (*See* Settlement Agreement (Lesser Decl. Ex. A) §§ 6(a)). The qualified settlement fund will be administered by an independent and experienced third-party settlement administrator, Garden City Group, Inc. (the "Settlement Administrator"). (*See id.* § 9). This settlement amount is designed to cover all back pay and liquidated/statutory damages available under each applicable law asserted in the lawsuits, both federal and state, and to obtain a comprehensive settlement of the litigation and all claims that could be asserted concerning overtime and wage and

25

hour claims against Rite Aid by salaried Assistant Store Managers and Co-Managers.  The amount is also designed to cover the Settlement Class Counsel's fees and costs (up to 33-1/3% of the total fund), subject to Court approval.  In addition, the settlement includes Incentive Awards to the named Plaintiffs in the actions, all of whom will be named party Plaintiffs in the Second Amended Complaint and representatives of the Settlement Classes, as described below, also subject to Court approval.  (*Id.* §§ 4, 6(a), 7, 8).  Finally, the settlement fund will be responsible for paying the costs of notice and settlement administration.  (*Id.* § 9(c)).  In addition, the settlement fund will pay the amount of the participating class members' W-2 withholdings (and state/local withholdings if applicable) and any employer payroll taxes as defined in the Settlement Agreement.  (*Id.* § 9(e)).

In order to obtain the most effective resolution of all the federal and state wage and hour claims, the Settlement encompasses both the FLSA claims, in the form of a collective action resolution (the "Federal Class"), and the state law claims in the form of a state law Rule 23 class (the "State Law Class"), within which are differing claims periods depending on the varying state statutes of limitations.[7]  (*Id.* § 5).  According to Rite Aid's records, there are approximately

---

[7]  The Parties submit that the differences in the substantive elements of the claims from state to state are not material for purposes of this settlement only.  The parties note that a similar structure was approved by the District of New Jersey in similar FLSA/state wage and hour settlements in *Herring v. Hewitt*, No. 3:06-cv-267 (D.N.J.), *Staples, Inc. Wage and Hour Employment Practices Litig.*, 2:08-cv-05746 (D.N.J.), as well as elsewhere.  *See, e.g.*, *Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.).  *See also* n.12, below.

6,100 putative members of the classes combined.  Each claimant's payment will vary proportionately, as each claimant will receive a share of the net settlement amount based upon weeks worked during the applicable period.  The estimated average payment to claimants will be more than $2,000 (before taxes), and Plaintiffs believe will be well-received by the Settlement Classes.  (*Id.* § 11(l)(i)).

The Settlement provides that each individual who is a member of either of the Settlement Classes shall be sent a notice by the Settlement Administrator.  (*Id.* §§ 11(a), (b)).  Upon receipt, in order to receive payment, Participating Settlement Class Members must submit a Consent to Join and Claim Form ("Claim Form").  (*Id.* § 11(c)).  The Claim Form will be individualized with the Participating Settlement Class Members' dates of employment, the total number of completed workweeks, and the Distribution Amount the Participating Settlement Class Member would receive if the Settlement were to be approved.  (*Id.*).   For those ASMs and Co-Managers who send in a Claim Form, Rite Aid will obtain a release of all federal and state law overtime wage and hour claims that could have been asserted against it arising out of these individuals' employment with Rite Aid as an ASM.  (*Id.* §§ 12, 13).  For individuals in the Rule 23 State Law Class who have

not timely filed a valid and enforceable request for exclusion (opt-out), such state-law claims will be barred by the Settlement once it is final.  (*Id.*).[8]

Using Rite Aid's payroll data and subsequent computerized address searches when needed, the Settlement Administrator will make all reasonable efforts to ensure that each potential class member receives full and adequate notice of the Settlement by mail including performing Level 2 skip traces when necessary (*id.* § 11(h)), which notice shall set forth the material settlement terms; instructions on how to submit objections to the Settlement and when and where to appear at the Final Approval Hearing; and how to opt-out of the State Law Class.  (*Id.* § 11). Copies of the proposed Notice and Claim forms are attached to the Settlement Agreement at Exhibits C-D.

After final Court approval of the Settlement and in accordance with the terms of the Settlement Agreement, the Settlement Administrator will ensure distribution of the net settlement funds to the claimants by certified U.S. Mail.  (*Id.* § 11(m)).

The Parties propose that, along with granting preliminary approval of the Settlement, the Court adopt the schedule set forth below, to allow the Parties to effectuate the various steps in the settlement approval process under the Settlement

---

[8] Rite Aid is offering the Settlement funds in exchange for a resolution that provides it with as much finality as possible.  In order to release FLSA claims, an individual must sign a consent to join the FLSA collective action.  *See* 29 U.S.C. § 216(b).

28

Agreement and also to comply with provisions requiring notices to State Attorneys

General as mandated by 28 U.S.C. § 1715.

| *Event* | *Timing* |
|---|---|
| 1. Mailing of Notices | No more than thirty (30) days after Defendants provides Settlement Class member information to the Claims Administrator.  Defendant must provide Settlement Class Member information to the Claims Administrator no more than thirty (30) days after the Order preliminarily approving the settlement. |
| 2. Deadline for filing Objections | Twenty-one (21) days prior to the Final Approval Hearing. |
| 3. Deadline for requests to opt-out of the Settlement | Twenty-one (21) days prior to the Final Approval Hearing. |
| 4. Deadline by which Claim Forms must be postmarked | Thirty (30) days after the Final Approval Hearing. |
| 5. Final Approval Hearing | Not earlier than one-hundred (100) days after Preliminary Approval. |

As set forth below, the parties submit that the Settlement satisfies all the

criteria for preliminary settlement approval under federal and state law in that it

falls well within the range of possible approval.  Accordingly, the Parties request

that the Court grant the requested relief.

**III.   Legal Argument**

**A.   The Settlement Agreement Should Be Preliminarily Approved by The Court**

By this Motion, the Parties seek preliminary approval of the Settlement

Agreement.  "Compromises of disputed claims are favored by the courts."

*Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 317 (3d Cir. 1998) (*"Prudential II"*).  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  Federal Rule 23(e) provides that the Court must approve any settlement of a class action.  In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity."  *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) ("*GM Trucks*").  The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion.  *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424-25 (1968).  As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is well within the range of possible approval and thus should be preliminarily approved.

### 1.   The Standards And Procedures for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) The court must direct notice in a reasonable
> manner to all class members who would be bound
> by the proposal.
>
> (2) If the proposal would bind class members, the court
> may approve it only after a hearing and on finding that it
> is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement
> identifying any agreement made in connection with the
> proposal.
>
> (4) If the class action was previously certified under Rule
> 23(b)(3), the court may refuse to approve a settlement
> unless it affords a new opportunity to request exclusion
> to individual class members who had an earlier
> opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it
> requires court approval under this subdivision (e); the
> objection may be withdrawn only with the court's
> approval.

Fed. R. Civ. P. 23(e); *Amchem Prods. v. Windsor,* 521 U.S. 591, 617 (1997);

*Prudential II,* 148 F.3d at 316.

In determining whether preliminary approval is warranted, the primary issue

before the Court is whether the proposed settlement is within the range of what

might be found fair, reasonable and adequate, so that notice of the proposed

settlement should be given to class members, and a hearing scheduled to determine

final approval.  *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-

73 (2004) ("MANUAL FOURTH") (at the preliminary approval stage, "[t]he judge

31

must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval. *Id.* at 322. Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled. *Id.* at 320. In some cases, this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id.* at 320-21.

In deciding whether a settlement should be preliminarily approved under Section 16(b) of the FLSA and under Rule 23, courts look to whether there is a basis to believe that the more rigorous final approval standard will be satisfied. *See* MANUAL FOURTH § 21.633, at 321 ("Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members."). The standard for final approval of a settlement consists of a showing that the settlement is fair, reasonable, and adequate. *Prudential II,* 148 F.3d at 316-17; *GM Trucks,* 55 F.3d at 785; *Stoetzner*

v. *U.S. Steel Corp.,* 897 F.2d 115 (3d Cir. 1990); *Walsh* v. *Great Atlantic & Pacific Tea Co.,* 726 F.2d 956 (3d Cir. 1983); *Girsh* v. *Jepson,* 521 F.2d 153 (3d Cir. 1975).

> **2.     There Is A Strong Basis to Believe That The Settlement Is Fair, Reasonable And Adequate**

The Third Circuit has adopted the following four-factor test to determine the preliminary fairness of a class action settlement:

> (1)     the negotiations occurred at arm's length;
>
> (2)     there was sufficient discovery;
>
> (3)     the proponents of the settlement are experienced in similar litigation; and
>
> (4)     only a small fraction of the class objected.

*GM Trucks,* 55 F.3d at 785.[9]

The Settlement Agreement meets all these tests.  It is beyond dispute that the Agreement was the result of arm's-length negotiations, conducted by experienced counsel for all parties and after more than sufficient discovery and litigation had

---

[9]  Obviously, the fourth factor is not applicable here, at this point.  For final approval, the Court reviews the settlement in light of the factors established by *Girsh*, 521 F.2d at 1157:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See also In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 301 (3d Cir. 2005).

been undertaken.  The settlement negotiations occurred under the direction and

guidance of the Hon. Joel B. Rosen, an experienced mediator and a former federal

Magistrate Judge.  The settlement was negotiated on behalf of Plaintiffs by a team

of attorneys who have been vigorously prosecuting this and parallel cases for

similar claims for several years and were, therefore, well versed in the issues and

how to evaluate the claims.  These attorneys have had considerable experience

(and success) in prosecuting (and settling) wage and hour claims previously, both

federal and state claims, and, in this case, were particularly well informed as to the

facts and circumstances of the litigation given the many years' worth of discovery

that has occurred concerning salaried Assistant Store Managers and salaried Co-

Managers.  In addition, Plaintiffs' counsel tried one of the few jury FLSA

misclassification collective action cases ever tried in the United States – and the

only one of which we are aware in the Third Circuit – against the retailer Staples,

Inc. for the same claims made in this case:  the misclassification of a class of retail

assistant "managers."  *Stillman v. Staples, Inc.*, 2009 U.S. Dist. LEXIS 42247

(D.N.J. May 11, 2009).  Rite Aid, similarly, is represented by counsel experienced

in collective and class wage and hour litigation.  Defense counsel from Ogletree,

Deakins, Nash, Smoak & Stewart, P.C. and Epstein Becker & Green, P.C. have

represented and currently represent employers in similar cases in many

jurisdictions and actively participated in discovery and motion practice in these cases.

As noted, the parties were sufficiently well-informed as to the facts and circumstances as to warrant the commencement of settlement discussions, given the large number of depositions in all of the cases, the expansive document production including electronically stored information, and the thorough briefing in the class and collective action motions.  Thus this first consideration is met, which is often shaped by the experience and reputation of counsel.  *GM Trucks,* 55 F.3d at 787-88; *Cotton v. Hinton,* 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

This settlement was, moreover, specifically negotiated by experienced counsel to meet all the requirements of the FLSA collective action provisions and the class action provisions of Rule 23, and specifically to provide administrative procedures to assure all class members' equal and sufficient due process rights. Accordingly, the settlement was informed by the vigorous prosecution of the case by experienced and qualified counsel and was not the product of collusive

dealings.   Further, continued litigation would be long, complex and expensive, and a burden to Court dockets.  *See In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 350 (3d Cir. 2010); *Benjamin v. Dep't of Pub. Welfare*, 807 F. Supp. 2d 201, 207 (M.D. Pa. 2011); *Lake v. First Nat'l Bank,* 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered).

Finally, there is no reason to doubt the fairness of the proposed Settlement Agreement.  The proposed Settlement Agreement does not unduly grant preferential treatment to the class representatives (although they are proposed to obtain service awards well within the parameters accepted in this Court), and it does not provide excessive compensation to counsel.  *See Martin v. Foster Wheeler Energy Corp.,* 2008 U.S. Dist. LEXIS 25712, at \*2 (M.D. Pa. Mar. 31, 2008); *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 153 (E.D. Pa. 2000); *In re Inter-Op Prosthesis Liab. Litig.,* 204 F.R.D. 359, 379 (N.D. Ohio 2001). Accordingly, the standards for preliminary approval are met in this case and the Court should grant Plaintiffs' motion in its entirety.  *Id.; see also In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

The actual, likely amount to be received by Participating Settlement Class Members is fair and reasonable.  It is expected that, on average, the value of the

Participating Settlement Class Members' claims will be $2,000. This amount is a reasonable and fair settlement for these claims, and is particularly fair and reasonable given the inherent risks of continued litigation.[10] For example, Rite Aid has indicated that it intended to move for decertification in the *Craig* and *Ibea* matters. If Rite Aid's motions were granted, the *Craig* and *Ibea* opt-ins would need to pursue their claims on an individual basis – a difficult option for many who lacked the financial resources to pursue litigation against a corporate defendant. Similarly, if the Plaintiffs' motions for class certification of the state law claims were denied, many class members would not have had an opportunity to pursue their claims against Rite Aid and, thus, would not have obtained any recovery – another reason why this Settlement Agreement is fair and reasonable. Additionally, any person who believes he or she should receive more can, of course, opt-out and pursue an independent remedy.

Finally, with respect to the reaction of the class to the settlement, the Court will only be able to evaluate this factor after the notice period.

---

[10]   Although it is not necessary, inasmuch as the laws of the States of New Jersey and Pennsylvania as to the claims in this case can be argued to make plaintiffs' cases materially easier, this settlement provides a 20% increased benefit to New Jersey Settlement Class Members and a 10% increased benefit to Pennsylvania Settlement Class Members, a matter of distribution that Settlement Class Counsel carefully considered in reaching that amount. Notably, other settlements, including at least one substantial settlement twice the size of this settlement, approved by the Honorable Patti Shwartz, and involving the same retail misclassification assistant manager claims (the *Staples* case noted above), did not provide such an increased benefit.

Accordingly, the standards for preliminary approval of the Settlement are met in this case. Therefore, the Court should grant the present motion so that the Settlement Classes can respond to the proposed Settlement and the Court can evaluate its fairness at a Final Approval Hearing.

**B.      Certification of The Settlement Classes Is Appropriate**

Pursuant to the Settlement Agreement, and in accordance with the model of other wage and hour misclassification cases, including retail misclassification cases, that counsel have settled in the federal courts, the Parties have stipulated, for settlement purposes only, to the following two classes:

a.   **FEDERAL CLASS** – The Settlement Class Representatives, and all individuals who as of the date of the Settlement Agreement have filed consents to join any of the Wage-Hour Lawsuits identified in the Settlement Agreement, who worked at Rite Aid as a salaried Assistant Store Manager and/or a salaried Co-Managers during the three-year period prior to the earlier of their becoming a Plaintiff in their respective actions or opting into any of the Wage-Hour Lawsuits; and All other salaried Assistant Store Managers and/or salaried Co-Managers employed by Rite Aid, except in California, from three years prior to the filing of the Second Amended Complaint through the Effective Date.

b.   **STATE LAW CLASS** – All current and former Rite Aid salaried Assistant Store Managers and/or salaried Co-Managers who are or were employed by Defendant in the following States during the applicable statute of limitations period: Alabama, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Idaho, Indiana, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, and West Virginia.

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *See Amchem,* 521 U.S. at 591; *Prudential II,* 148 F.3d at 283; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998). Here, and for settlement purposes only, the parties submit that the elements of Rule 23 are met with respect to the proposed settlement, which, accordingly, warrants settlement class certification.[11]

### 1. The Elements of Rule 23(a) Are Satisfied for Settlement Purposes in The Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a); *see e.g. Barnes v. American Tobacco Co.,* 161 F.3d 127 (3d Cir. 1998); *Prudential II,* 148 F.3d at 308-09; *Wetzel v. Liberty Mut. Ins. Co.,* 508

---

[11] The prerequisites for a conditional certification of a FLSA collective action class are often considered to be more lenient than those under Rule 23 of the Federal Rules of Civil Procedure. This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action class.

F.2d 239 (3d Cir. 1975).  Here, all four elements are satisfied for purposes of certifying the settlement classes.

### 2.   Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  While no specific number of class members is required to maintain a class action, a class of more than 40 people generally satisfies the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity.").  Numerosity is satisfied here, where the settlement class size is approximately 6,100.

### 3.   Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) ("*Dukes*").  "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S. Ct. at 2545.  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Stewart*, 275 F.3d at 227; *Baby Neal*

v. *Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *Ross v. Citizens Bank, N.A.*, 667 F.3d 900,

908 (7th Cir. 2012) (in context of state wage and hour off-the-clock claim: "To

satisfy the commonality element, it is enough for plaintiffs to present just one

common claim.") (citing *Dukes*, 131 S. Ct. at 2556).

     Commonality exists where the class claims arise "from a 'common nucleus

of operative fact' regardless of whether the underlying facts fluctuate over the class

period and vary as to individual claimants." *In re Asbestos Sch. Litig.*, 104 F.R.D.

422, 429 (E.D. Pa. 1984).[12]  "Factual differences among the claims of the putative

class members do not defeat certification." *Baby Neal*, 43 F .3d at *56; Prudential*

*II*, 148 F.3d 283.  As the Seventh Circuit held in *Ross*, "[a]lthough there again

might be slight variations in the exact duties that each [assistant bank manager]

performs from branch to branch, the [assistant bank managers] maintain a common

claim that unofficial company policy compelled them to perform duties for which

they should have been entitled to collect overtime."  667 F.3d at 909; *Youngblood*

*v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389, at *8 (S.D.N.Y. Oct.

4, 2011) (court certified retail store manager misclassification claim because the

"the crux of [the] case is whether . . . company-wide policies, as implemented,

violated Plaintiffs' statutory rights"); *Cuevas v. Citizens Fin. Group, Inc.*, 2011

---

[12] Rather than requiring that all questions of law or fact be common, Rule 23 provides that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

U.S. Dist. LEXIS 155160, at *7 (E.D.N.Y. May 21, 2012) (same) (collecting cases).

For purposes of settlement only, commonality is met here insofar as the claims of the Settlement Class Representatives and the members of the State Law Class are predicated on the core common issue as to whether Rite Aid's classification of them as exempt employees was proper. At least in the settlement context, this is sufficient to meet the Rule 23(a)(2) standard of commonality. *See*, *e.g.*, Preliminary Approval and Final Approval Orders in *George v. Staples, Inc.*, 2:08-cv-05746 (D.N.J.) (dkt. nos. 116, 128, 131); *see also, e.g.*, *Damassia*, 250 F.R.D. at 158 (finding commonality in, like here, retail drugstore assistant store manager misclassification case because "disputed questions of law are common to all class members' claims for relief" including "whether the class member is exempt from [New York Labor Law] overtime requirements because he or she performs either 'executive' or 'administrative' duties" and whether the company had good faith defenses to claims); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004) (holding commonality established where "class members were all employed by defendant [and c]ommon questions of law include whether [class members] were properly classified as exempt and whether the defendant acted in bad faith in so classifying" them).

### 4.   Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.  The commonality and typicality requirements of Rule 23(a) "tend to merge."  *Gen. Tel. Co. of Southwest* v. *Falcon,* 457 U.S. 147, 157 n.13 (1982).  The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  *Id.*; *Prudential II,* 148 F.3d at 311; *Bogosian* v. *Gulf Oil Corp.,* 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litigation,* 104 F.R.D. at 429-30.  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.* v. *Giuliani,* 126 F.3d 372 (2d Cir. 1997).  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory."  *Hayworth* v. *Blondery Robinson* & *Co.,* 980 F.2d 912, 923 (3d Cir. 1992). In other words, typicality is demonstrated where a plaintiff can "show that two issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." *Weiss* v. *York Hosp.,* 745 F.2d 786, 809-10 (3d Cir. 1984).  Here, too, this

requirement is met by the proposed settlement class to the extent that the claims,

for settlement purposes only, arise from a common course of conduct by Rite Aid

in treating all salaried Assistant Store Managers and Co-Managers as exempt

wherever they worked in the company.  *See*, *e.g.*, *Damassia,* 250 F.R.D. at 158

(finding typicality in retail drugstore assistant manager misclassification case

because "all class members' claims, including those of named plaintiffs, are based

on the same course of events and legal theory, namely, that Duane Reade's

decision to classify its assistant managers as 'exempt' is inconsistent with the

requirements of the [New York Labor Law]").

## 5.   Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which

requires that "the representative parties will fairly and adequately protect the

interests of the class."  The Third Circuit has ruled that:

> Adequate representation depends on two factors: (a) the
> plaintiff's attorney must be qualified, experienced and
> generally able to conduct the proposed litigation; and (b)
> the plaintiff must not have interests antagonistic to those
> of the class.

*Weiss,* 745 F.2d at 811 (quoting *Wetzel* v. *Liberty Mut. Ins. Co.,* 508 F.2d at 247);

*see also Prudential II,* 148 F.3d at 312.  These two components are designed to

ensure that absentee class members' interests are fully pursued.  The existence of

the elements of adequate representation are presumed and "the burden is on the

defendant to demonstrate that the representations will be inadequate."  *Asbestos*

44

*School Litig.,* 104 F.R.D. at 430 (*citing Lewis* v. *Curtis,* 671 F.2d 779 (3d Cir.

1982)); *Cook* v. *Rockwell Int'l Corp.,* 151 F.R.D. 378 (D. Colo. 1993) (quoting 3

*Newberg on Class Actions* (Fourth), §7.24 at pp. 78-79 (2002)).

Adequacy is easily met here with regard to the Settlement Class Counsel's

qualifications – plaintiffs' attorneys, proposed Settlement Class Counsel, are

exceedingly experienced and competent in complex litigation and have an

established track record in employment law, including, specifically, wage and hour

cases. *See* Lesser Decl. at Exhibit B (firm resumes of Plaintiffs' counsel). Lead

counsel, the Klafter Olsen & Lesser LLP firm, among other things, served as trial

counsel in the *Stillman v. Staples, Inc*. FLSA misclassification collective action

trial which resulted in a verdict for plaintiffs, a group of assistant store managers at

Staples and, this year successfully obtained a collective action verdict in an

arbitration, thereby having been successful on behalf of two FLSA collective

actions which proceeded to trial/hearing. In addition, the Settlement Class

Representatives affirm that they have no interests antagonistic to the class, and a

number of them have demonstrated allegiance to this litigation through their

depositions and by responding to the discovery propounded by Defendants.

Having demonstrated that for settlement purposes each of the mandatory

requirements of Rule 23(a) are satisfied here for settlement purposes only,

Plaintiffs now turn to consideration of the factors which, independently, justify

class treatment of this action for present purposes under subdivision 23(b)(3) of the

rule.

### 6.    The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes

Plaintiffs' proposed State Law Class also meet the requirements of Rule

23(b)(3). Under 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting
> only individual members, and that a class action is superior to
> other available methods for the fair and efficient adjudication of
> the controversy. The matters pertinent to the findings include:
> (A) the interest of members of the class in individually
> controlling the prosecution or defense of separate actions; (B)
> the extent and nature of any litigation concerning the
> controversy already commenced by or against members of the
> class; (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; (D) the
> difficulties likely to be encountered in the management of a
> class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521

U.S. at 623.  Although Rule 23(b)(3) requires that common issues of law and fact

predominate, it does not require that there be an absence of any individual issues.

*In re Sugar Industry Antitrust Litig.,* 73 F.R.D. 322, 344 (E.D. Pa. 1976).  The

Court must find that "the group for which certification is sought seeks to remedy a

common legal grievance." *Hochschuler* v. *G.D. Searle & Co.,* 82 F.R.D. 339, 348-

49 (N.D. Ill. 1978); *Dietrich v. Bauer,* 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Systems,* 172 F.R.D. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues, and if these issues are common to the class, common questions may be held to predominate over individual questions. *See id.* "Plaintiffs' burden is not to prove each element of their claim, but to show each element is capable of proof through common evidence." *Sherman v. Am. Eagle Express, Inc*, 2012 U.S. Dist. LEXIS 30728, at *30 (E.D. Pa. Mar. 8, 2012).

Common questions of law and fact predominate. All of Plaintiffs' claims arise out of (1) common corporate-wide policies which define the roles and place restrictions upon ASMs' duties and responsibilities, (2) the job duties of ASMs which are primarily non-exempt duties such as stocking shelves, unloading the delivery truck, operating the cash register, and cleaning the store, and (3) Rite Aid's common policy to classify all ASMs as exempt from the overtime requirements of federal and state laws. ASMs who worked overtime hours have not been paid any overtime compensation. Plaintiffs maintain that this presents common operative facts and common questions of law which predominate over

47

any factual variations in the application of the classification and compensation policies to individual ASMs nationwide.[13]  These common questions of law and fact include, without limitation: (a) whether the duties performed by ASMs are non-exempt duties under the FLSA and applicable state laws; (b) whether Rite Aid has violated the FLSA and applicable state wage and hour laws; and (c) whether Rite Aid's policy of classifying some ASMs as exempt is proper under applicable federal and state laws.  This suffices, for purposes of a settlement class, to present a common predominance of issues and it is for this reason that courts have often certified such cases.  *See, e.g., Damassia*, 250 F.R.D. at 160 (citing numerous such cases and noting, "[m]oreover, to the extent that there are differences, there is no evidence that they are of such a magnitude as to cause individual issues to predominate.  Where, as here, there is evidence that the duties of the job are

---

[13]  Many of the state law claims are brought under statutes that impose liability in a similar manner to the federal FLSA.  Several states' wage laws have standards of liability and remedies different from the standards and remedies that apply under the FLSA, but when considered in the context of the proposed settlement only, these claims are not so materially different as to overshadow the similarities, and thus the settlement should be approved, *see Wolfert v. Transamerica Home First Inc.*, 439 F.3d 165 (2d Cir. 2006) (setting forth standard of materiality of differences), which is just as, for instance, courts routinely recognize that differences in states laws do not militate against settling nationwide cases in such settings as consumer laws notwithstanding the divergence in state uniform and deceptive acts and practices statutes).  *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528-29 (3d Cir. 2004) ("DuPont's alleged deceptive conduct arose from a broad-based, national campaign conducted by and directed from corporate headquarters, and individual reliance on the misrepresentations was irrelevant to liability."); *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 n.9 (1st Cir. 2003); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Given the settlement, no one need draw fine lines among state-law theories of relief…."); *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Amer.)*, 148 F.3d 283, 314 (3d Cir. 1998) (approving certification of a nationwide consumer fraud class action citing *Amchem*); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023 (9th Cir. 1998).

largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about "individualized" differences in job responsibilities."); *see generally Ross*, 667 F.3d 900; *Sherman*, 2012 U.S. Dist. LEXIS 30728; *Cuevas*, 2011 U.S. Dist. LEXIS 155160; *Youngblood*, 2011 U.S. Dist. LEXIS 115389; *Morris v. Affinity Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 64650 (S.D.N.Y. 2012); *Espinoza v. 953 Assocs. LLC*, 2011 U.S. Dist. LEXIS 132098 (S.D.N.Y. 2011); *Han v. Sterling Nat. Mortg. Co., Inc.*, 2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. 2011).

Plaintiffs also believe that superiority is met because this settlement will resolve the pending Assistant Store Manager and Co-Manager lawsuits against Rite Aid in a single, consolidated proceeding – obviating the need for multiple trials in multiple transferee venues – and, given the Plaintiffs' argument regarding commonality of claims relating to a standard policy of Rite Aid, there would be little or no interest for each class member to proceed with his or her own cases. Indeed, the plan of distribution here treats all equitably by providing payments based upon length of employment, a distribution that makes particular sense in a case such as this. Accordingly, strictly for the purposes of settlement, the Parties agree that individual variations in the type or magnitude of damage suffered by individual class members should not affect predominance, as the class

49

representatives' position is that they have suffered the same type of damages – and seek the same type of relief – as all members of the proposed class.

Finally, Plaintiffs' position is that resolution of this litigation by class settlement is superior to the individual adjudication of class members' claims for compensatory relief.  The Settlement provides the Settlement Classes with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured Settlement Class Member will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in what could be a dozen or more separate trials, including trials in each of the lawsuits being settled herein.

Accordingly, strictly for purposes of the settlement posture in which the case now stands, the Settlement Classes are appropriate and should be certified for settlement purposes only.

### C.    The Proposed Notice Provides Adequate Notice to The Members of The Classes

#### 1.    The Notice Satisfies Due Process

The Parties propose that the Settlement Administrator send, by first class mail, to each member of the settlement classes, as defined above and in the Settlement Agreement (*see* Settlement Agreement §§ 5, 11(a)), one copy of the

Notice and Claim Forms.  The parties agree that the Notice and Claim forms explain the nature of the Settlement in a clear way so that Settlement Class Members can understand the Settlement.

The Parties propose that the Notice and Claim Form be sent to all known and reasonably ascertainable members of the classes based on Rite Aid's records. The notices will be sent by first class mail, and the Settlement Agreement provides that the Claims Administrator will endeavor to ensure that all members of the classes receive notice by taking all reasonable steps to trace the addresses of any member of the classes for whom a Notice or Claim Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches.  (*Id*. § 11(g), (h)).  The Settlement Administrator will then promptly re-mail the Notices and Claim Forms to members of the classes for whom new addresses are found.  To maximize assurance that the members of the Settlement Classes receive the notice, provision has also been made for a second mailing to those who do not respond promptly to the first mailing.  (*Id*. § 11(g)).

In addition, a toll-free telephone line and a website will be created so that members of the Settlement Classes can readily have questions addressed or to obtain copies of any materials that they may misplace.  (*Id*. § 9).  This notice plan is consistent with – if not more robust than – class certification notices approved

by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable.

> **2.     The Proposed Class Notices Are Accurate, Informative And Easy to Understand**

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.  Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the federal class or opt-out of the state class.  *See Prudential II*, 148 F.3d at 326-27; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).  Similarly, pursuant to Section 16(b) of the FLSA, class members are entitled to notice to afford them with an adequate opportunity to opt-into the Action.  29 U.S.C. § 216(b).

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Settlement Agreement, including the monetary and other relief the Settlement will provide members of the classes (as well as an explanation of the method of allocating and paying net settlement amount monies to class members who submit a valid and timely Claim Form and of the claims process), the procedures and deadlines for opting-in to the Federal Class or opting-out of the State Law Class and submitting objections, the consequences of taking or foregoing the various options available to members of the classes, and the date,

time and place of the final settlement approval hearing.   *See* MANUAL FOURTH §

21.312.  Pursuant to Fed. R. Civ. P. 23(h), the proposed class notice also sets forth

the maximum amount of attorneys' fees and costs that may be sought by present

party plaintiffs and their counsel.

Accordingly, the Notice complies with the standards of fairness,

completeness, and neutrality required of a settlement class notice disseminated

under authority of the Court.  *See*, *e.g.*, 4 *Newberg on Class Actions* (Fourth) §§

8.21, 8.39; MANUAL FOURTH §§ 21.311-21.312.

### D.    A Final Fairness Hearing Should Be Scheduled

The Court should schedule a final approval hearing to determine that final

approval of the Settlement is proper.  The Final Approval Hearing will provide a

forum to explain, describe or challenge the terms and conditions of the Settlement,

including the fairness, adequacy and reasonableness of the Settlement.  At that

time, moreover, Class Counsel will present their application for their fees and

expenses pursuant to Rule 23(h) as well as for the award to the named class

representatives.  Accordingly, the Parties request that the Court schedule the final

fairness hearing for no earlier than one hundred (100) days from the date of this

motion, as required by 28 U.S.C. § 1715(d), at the Middle District of Pennsylvania,

Harrisburg Vicinage.

**IV.    The Court Should Issue An Injunction Prohibiting Duplicative Actions**

Immediately following preliminary approval of the Settlement, the Court should also issue an injunction pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651, prohibiting the Settlement Class members from initiating lawsuits and staying any pending lawsuits pertaining to hours of work or payment of wages of salaried Assistant Store Managers and salaried Co-Managers in federal or state court.[14]  Such a provision is common and based in the good sense that "preserv[es] the federal court's jurisdiction or authority over an ongoing matter." *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985).  Such an injunction is necessary to ensure the finality of the Settlement and to prevent impairment of the Court's "flexibility and authority to decide that case."[15]  *Atl. C. L. R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3rd Cir. 2002) ("The threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional

---

[14]  The parties are aware of one such case pending in the Superior Court of New Jersey which alleges that New Jersey Assistant Store Managers were misclassified as exempt under New Jersey Wage and Hour Law.  *Hearn v. Rite Aid Corp., et al.*, Docket No. SSX-L-429-06 (Superior Court of New Jersey, Sussex County).  The New Jersey Appellate Division recently reversed the trial court's denial of class certification and certified a class of New Jersey Assistant Store Managers.  *Hearn v. Rite Aid Corp.*, 2012 N.J. Super. Unpub. LEXIS 643 (N.J. Super. Ct. App. Div. Mar. 27, 2012).  Rite Aid intends to appeal the decision and file a petition for certification to the New Jersey Supreme Court.

[15] Upon preliminary approval of the settlement, the Court will have established personal jurisdiction over the Settlement Class members by approving the dissemination of notice and establishing an opt-out period, thus ensuring that an injunction will comport with the requirements of Due Process.  *See Carlough,* 10 F.3d at 198-99 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

class certifications and impending settlements in federal actions."); *Carlough v.*
*Amchem Products, Inc.*, 10 F.3d 189, 198-99 (3rd Cir. 1993) ("impending and
finalized settlements in federal actions [] justify[] 'necessary in aid of jurisdiction'
injunctions of duplicative state actions"); *accord also Klay v. United Healthgroup,*
*Inc.*, 376 F.3d 1092, 1104 (11th Cir. 2004) ("a district court may issue an
injunction under the All Writs Act to prevent prosecution of a state court action
that had already been settled under the terms of a federal settlement agreement.").

The All Writs Act permits federal courts to "issue all writs necessary or
appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. "Many--
though not all--of the cases permitting injunctions in complex litigation cases
involve injunctions issued as the parties approached settlement." *In re Diet Drugs*
*Prods. Liab. Litig.*, 282 F.3d at 236-37 (collecting cases). As the Third Circuit
held:

> Complex cases in the later stages--where, for instance, settlement
> negotiations are underway--embody an enormous amount of time and
> expenditure of resources. It is in the nature of complex litigation that the
> parties often seek complicated, comprehensive settlements to resolve as
> many claims as possible in one proceeding. These cases are especially
> vulnerable to parallel state actions that may frustrate the district court's
> efforts to craft a settlement in the multi-district litigation before it, thereby
> destroying the ability to achieve the benefits of consolidation. In complex
> cases where certification or settlement has received conditional approval, or
> perhaps even where settlement is pending, the challenges facing the
> overseeing court are such that it is likely that almost any parallel litigation in
> other for a presents a genuine threat to the jurisdiction of the federal court.

*Id.* (internal quotations and citations omitted).

55

As stated by the Second Circuit, enjoining duplicative state proceedings is appropriate in these circumstances because:

> The success of any federal settlement [is] dependent on the parties' ability to agree to the release of any and all related civil claims the plaintiffs had against the settling defendants based on the same facts. If . . . others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement. Any substantial risk of this prospect would threaten all of the settlement efforts by the district court . . . .

*Baldwin-United*, 770 F.2d at 337.

Here, the Parties have negotiated a global Settlement, and they intend that this Settlement will conclude all litigation related to the hours of work and payment of wages of salaried Assistant Store Managers and salaried Co-Managers under federal and state law.  Initiation and continuance of duplicative lawsuits would disrupt the finality of the Settlement and negate the Court's efforts to assist the parties in resolving the cases before this Court.  Under these circumstances, an injunction through the date of dismissal of the Lawsuits, as defined in the Settlement Agreement, is clearly warranted.

## V.   <u>Conclusion</u>

For the foregoing reasons, the Parties respectfully request that this Court enter the Preliminary Approval Order, attached as Exhibit B to the Settlement Agreement, which, *inter alia*: (1) authorizes the filing of Plaintiffs' Second Amended Complaint in the *Craig* action; (2) certifies the Federal Class and State

56

Law Class for settlement purposes only; (3) grants preliminary approval of the

Settlement; (4) appoints Lead, Local and Settlement Class Counsel; (5) appoints

the named Plaintiffs as Settlement Class Representatives; (6) directs distribution of

the proposed Notice to all members of the Classes regarding settlement of the

claims against Defendants on a final and complete basis, in accordance with this

motion; and (7) sets a date for the final fairness hearing for no earlier than one

hundred (100) days after the date of this motion, at the Middle District of

Pennsylvania, Harrisburg vicinage.

Dated:  June 15, 2012

Respectfully submitted,

For Settlement purposes only,

s/ Seth R. Lesser_____
Seth R. Lesser
Fran L. Rudich
Michael J. Palitz
KLAFTER OLSEN & LESSER LLP
Two International Drive
Suite 350
Rye Brook, NY  10573
Telephone:  (914) 934-9200

Peter Winebrake
Andrew Santillo
Mark Gottesfeld
THE WINEBRAKE LAW FIRM, LLC
Twining Office Center, Suite 114
715 Twining Road
Dresher, Pennsylvania 19025
Telephone: (215) 884-2491

*s/ Daniel E. Turner*
Daniel E. Turner
(admitted *Pro Hac Vice*)
daniel.turner@ogletreedeakins.com
Tracey T. Barbaree
(admitted *Pro Hac Vice*)
tracey.barbaree@ogletreedeakins.com
Beth A. Moeller
(admitted *Pro Hac Vice*)
beth.moeller@ogletreedeakins.com
Justin M. Scott
(admitted *Pro Hac Vice*)
justin.scott@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
One Ninety One Peachtree Tower
191 Peachtree Street, NE, Suite

Marc Hepworth
David Roth
Charles Gershbaum
HEPWORTH GERSHBAUM &
ROTH PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone:  (212) 545-1199

Gary E. Mason
Nicholas A. Migliaccio
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Avenue, NW
Suite 605
Washington D.C. 20036
Telephone: (202) 429-2290

Michael A. Josephson
FIBICH, HAMPTON & LEEBORN, LLF
1150 Bissonnet
Houston, Texas 77005
Telephone: (713) 751-0025

Robert E. DeRose
BARKAN MEIZLISH HANDELMAN
GOODIN DEROSE WENTZ LLP
250 E. Broad Street, 10th Floor
Columbus, Ohio 43215
Telephone: (614) 221-4221

Steve Larson
STOLL BERNE LOKTING &
SHLACHTER P.C.
Suite 500
209 SW Oak Street
Portland, Oregon 97204
Telephone: (503) 227-1600

4800
Atlanta, GA 30303
Telephone: (404) 881-1300
Facsimile: (404) 870-1732

Brian P. Downey (PA 59891)
**PEPPER HAMILTON LLP**
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, Pennsylvania 17108-1181
Telephone: (717) 255-1155
Facsimile: (717) 238-0575
Email:
downeyb@pepperlaw.com

Attorneys for Defendants

Alexandra Warren
CUNEO GILBERT & LADUCA, LLP
106-A S. Columbus Street
Alexandria, Virginia 22314
Telephone: (202) 789-3960

Richard O'Meara
MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, Maine 04104-5085
Telephone:  (207) 773-5651

Andrew J. Sciolla
POGUST BRASLOW &
MILLROOD, LLC
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, Pennsylvania 19428
Telephone: (610) 941-4204

Bradley Berger
BERGER ATTORNEY, P.C.
321 Broadway
New York, New York 10605
Telephone:  (800) 529-4444

**Attorneys for Plaintiffs**