## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SHIRLEY CRAIG, *et al.* | : | 4:08-cv-02317-JEJ |
|  | : |  |
| v. | : |  |
|  | : |  |
| RITE AID CORPORATION, *et al.* | : |  |
|  | : |  |

**DECLARATION OF SETH R. LESSER IN SUPPORT
OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT**

SETH R. LESSER, an attorney admitted to the bar of this Court *pro hac vice*, declares, under penalty of perjury that:

1.     I am a partner in Klafter Olsen & Lesser LLP, who is, with other counsel, counsel for Plaintiffs Shirley Craig, Ralph Cedano, Sheryl Doyon, Larry Eaton, Jennifer Elliot, Thomas Finley, James Fisher, Jose Fermin, Donna Garcia, Rene Hough, Eddie Ibea, Daniel Knepper, Lisa Laun, Robin Mazzantini, Karriem Perkins, Angel Quinones, DeShawn Powell, Priscilla Thomas, Justin Torres, Robert Vasvari, and Yvon Witty (collectively, "Plaintiffs"), who are the Plaintiffs in (1) the thirteen cases that are presently before this Court; and (2) a parallel, presently non-removable state court case in Pennsylvania, the consolidated case of *Larry Eaton, et al. v. Rite Aid of Pennsylvania, Inc., et al.*, Case ID:  090400455, Philadelphia Court of Common Pleas, and *Lisa Laun and Deshawn Powell v. Rite Aid*

*Corporation*, Case ID: 090600789, Philadelphia Court of Common Pleas.  I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement, as well as for the sending of notice and the scheduling of a Final Approval Hearing.

2.     The scope of the litigation has involved approximately 4,700 stores, and, during the relevant time periods, Rite Aid's store hierarchy has largely consisted of a Store Manager ("SM") in each store, potentially an Assistant Store Manager or Co-Manager (collectively referred to herein as "Assistant Store Managers" or "ASMs"), Shift Supervisors, Cashiers, and Stockpersons in each store.  At all relevant time periods, Rite Aid designated all salaried ASMs as exempt under the Fair Labor Standards Act ("FLSA") and under the laws of the states that have analogous state wage and hour laws.

3.     On December 29, 2008, Plaintiff Shirley Craig filed the *Craig* action in this Court, a case that asserted claims under the FLSA on behalf of Rite Aid's salaried Assistant Store Managers.

4.     *Craig* was intensely litigated.  That case, whose docket has over 550 entries, proceeded through discovery; through this Court's conditional certification of a collective action of the matter pursuant to Section 16(b) of

the FLSA in February 2010; through approximately 40 depositions of ASMs and corporate employees throughout the country; exchange and analysis of hundreds of thousands of pages of documents; and through litigation and briefing regarding multiple issues including privileged documents, motions for summary judgment relating to bankruptcy and merits issues, the scope of discovery, and electronically stored information.  There were multiple motions involving disputed aspects of discovery, from the overall scope and timing of discovery to specific discovery disputes, and multiple hearings and motions before the Magistrate Judge.  In fact, the Magistrate Judge (almost at least once a month sometimes more often) was called upon to address disputes, provide direction, rule on motions and the like and there were routine telephone conference or in-person conferences with Magistrate Judge Carlson.

5.      Plaintiffs' counsel also reviewed hundreds of thousands of pages of "store level" documents for the opt-in deponents at many document storage facilities throughout the country.  The parties also addressed countless discovery matters in innumerable conferences with Magistrate Judge Carlson both in-person and via telephone.  In addition, the parties engaged in lengthy and complex conferrals about many difficult discovery issues pertaining to collective action certification.

6.     To assist with the complex electronic discovery issues, Plaintiffs engaged an expert consultant from OrcaTec to assist with an analysis of Rite Aid's electronic systems in order to determine the most effective and cost efficient way to obtain electronic discovery materials, which entailed multiple systems (including legacy systems) spanning multiple years.  The parties exchanged innumerable letters and emails and sought Court intervention (most often in the *Ibea* matter discussed below, but also in the *Craig* case) concerning these electronic discovery issues.

7.     In addition to *Craig*, following the Court's conditional certification in that case, additional ASM cases were filed in Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Oregon, Pennsylvania, and Washington.

8.     On July 6, 2010, Eddie Ibea filed a lawsuit in the Eastern District of New York alleging that Rite Aid violated the FLSA by failing to pay Co-Managers overtime.  By agreement, the case was transferred to the Southern District of New York on July 28, 2011.  Thereafter, the parties engaged in FLSA § 216(b) pre-certification discovery which included, among other things, the depositions of 7 Co-Managers as well as a 30(b)(6) deposition covering multiple topics.

9.     On November 14, 2011, Plaintiff Ibea filed his motion for conditional certification pursuant to Section 216(b) of the FLSA, and Magistrate Judge Henry B. Pitman granted Plaintiff's motion on December 14, 2011.  Rite Aid objected to Magistrate Pitman's ruling, and the parties briefed the objections.  District Judge Jed S. Rakoff overruled Rite Aid's objections to Magistrate Judge Pitman's Order on January 9, 2012.

10.     Following the *Ibea* ruling, the parties litigated many issues, including the appropriate sample size for discovery of the opt-ins, multiple protective orders and motions to compel concerning payroll data for the collective action members, depositions of corporate witnesses and 30(b)(6) topics, and numerous other discovery issues that arose during the post-conditional certification discovery phase.  There were approximately 20 Court conferences in this matter alone addressing the certification motion and the discovery issues.

11.     In addition, the parties fiercely litigated electronic discovery matters relating to both Rite Aid's and the opt-ins' electronic materials. Both sides engaged electronic discovery consultants to manage the complicated issues that arose during the process.  The parties exchanged thousands of pages of electronic materials including various corporate policies and procedures, communications to the opt-ins' stores in the form of

"SYSMs", and electronic mail.  The parties also hotly litigated the issue of corporate custodians for additional electronic mail and addressed this matter in multiple court conferences before Magistrate Judge Pitman, both in-person and via telephone.

12.     The parties took the depositions of more than 30 Co-Managers and corporate employees in *Ibea*, and Plaintiffs planned to take 10 depositions of corporate witnesses including a Fed. R. Civ. P. 30(b)(6) witness covering multiple topics at the time of settlement.  To obtain these depositions, the parties had litigated numerous motions to compel and motions for protective orders that each side had filed.

13.     On October 31, 2008, Yatrim Indergit filed a Complaint in the Southern District of New York on behalf of himself and all other Store Managers and Assistant Store Managers alleging that Rite Aid violated federal and state law by failing to pay overtime.  On December 31, 2008 and September 1, 2010, Jose Fermin and Yvon Witty, respectively, filed Complaints against Rite Aid alleging violations of the New York Labor Law on behalf of themselves and all others similarly situated, including, as here relevant, ASM claims.

14.     On July 18, 2011, in a court conference before Magistrate Judge Henry Pitman, after issues of conflict of interest had arisen and been

addressed before the Court, the parties (including plaintiffs' counsel in

*Indergit*, *Fermin* and *Witty*) agreed before the Court to have counsel in

*Fermin* and *Witty* continue to represent the ASM claims, while *Indergit*

counsel would represent the SM claims. At the same time (July 18th), the

parties agreed to consolidate the *Witty* case with the *Fermin* case for all

purposes. On December 14, 2011, Plaintiffs moved to substitute Jennifer

Elliot for Yvon Witty as Plaintiff due to Mr. Witty's personal situation

requiring him to move to Haiti. The motion to substitute was among the

matters pending at the time that the parties reached a settlement.

15.     Discovery commenced in earnest in 2011 in *Fermin/Witty*, and

the parties engaged in pre-certification discovery covering matters relating to

Fed. R. Civ. P. 23 certification issues. Plaintiffs moved to compel a class

list of ASMs to obtain discovery from putative class members, and

Magistrate Judge Pitman granted Plaintiffs' motion on August 10, 2011.

Thereafter, the parties engaged in 30(b)(6) depositions covering multiple

topics and took more than 20 depositions of ASMs and corporate witnesses

across New York State covering matters relating to whether or not the ASMs

are similarly situated, Rite Aid's corporate policies and procedures, and the

nature and scope of the job duties that ASMs actually perform. The parties

also engaged in written discovery including the production of thousands of pages of documents.

16.     On January 23, 2012, Plaintiffs filed a comprehensive motion to certify a Rule 23 New York Labor Law class of ASMs who Rite Aid classified as exempt from overtime (a motion that had 41 exhibits, reflecting the scope of the discovery that had been undertaken), Rite Aid responded on April 13, 2012, and Plaintiffs' reply was not yet due at the time the parties reached a settlement.

17.     Plaintiff James Fisher originally filed his class action Maryland Wage and Hour Law ("MWHL") claim ("*Fisher I*") in the United States District Court for the District of Maryland on July 21, 2009.  Rite Aid moved to dismiss Plaintiff Fisher's claim, arguing that the first-to-file rule mandated that Mr. Fisher pursue his claim in the Middle District of Pennsylvania, where *Craig v. Rite Aid Corp*. was pending.  The parties fully briefed Rite Aid's motion to dismiss, and on June 8, 2010 Judge Bennett dismissed Plaintiff's MWHL claim without prejudice under the first-to-file-rule.

Plaintiff Fisher subsequently re-filed his Complaint in the Federal District Court for the Middle District of Pennsylvania.  On February 16, 2011, the Middle District of Pennsylvania dismissed Plaintiff's complaint

without prejudice on the grounds that Plaintiff's MWHL claim was "inherently incompatible" with the FLSA claim he asserted in the *Craig* action as an opt-in plaintiff.  The Court noted that Plaintiff could re-file his MWHL action in state court.

Plaintiff Fisher re-filed his action in the Baltimore City Circuit Court on April 18, 2011 ("*Fisher III*").  Defendants removed the action to United States District Court for the District of Maryland on April 14, 2011.  Rite Aid moved to dismiss Plaintiff Fisher's claims again, arguing that the law of the case doctrine mandated dismissal.  Judge Bennett again dismissed Plaintiff Fisher's claims on February 23, 2012.  Plaintiff appealed Judge Bennett's dismissal to the United States Court of Appeals for the Fourth Circuit.  Plaintiff thereafter voluntarily dismissed his appeal of *Fisher III* after the Third Circuit reversed the dismissal of *Fisher II*.

18.     On July 22, 2009, Robert Vasvari filed a Complaint in the Northern District of Ohio alleging that, on behalf of himself and all other Rite Aid Assistant Store Managers, Rite Aid violated the Ohio Minimum Wage Fairness Act.  On October 19, 2009, the parties stipulated to transfer this matter to the Middle District of Pennsylvania.  While the litigation was pending, Mr. Vasvari passed away, and Plaintiff made an unopposed motion to substitute Daniel Knepper, which the Court granted on December 3, 2010.

19.     While *Fisher* and *Knepper* were pending, Rite Aid moved to dismiss the actions based upon a theory referred to as "inherent incompatibility," essentially claiming that Plaintiffs' state law claims were incompatible with their FLSA claims asserted in *Craig*.

20.     On February 16, 2011, this Court granted Rite Aid's motion, and Plaintiffs appealed the ruling to the Third Circuit.

21.     After ordering briefing and holding oral argument, earlier this year, the Third Circuit reversed the order and reinstated the *Fisher* and *Knepper* actions holding that FLSA and state law claims are not inherently incompatible.  This was a significant decision resolving a substantial question of FLSA law – indeed, the United States Department of Labor had intervened as an *amicus* and argued before the Third Circuit – which allowed the *Hough* and *Mazzantini* cases (which were putative state law class actions pending in the Middle District of Pennsylvania that would have arguably been subject to dismissal pursuant to the inherent incompatibility ruling) to proceed with *Fisher* and *Knepper* in the Middle District of Pennsylvania.

22.     On April 22, 2011, Sheryl Doyon filed a lawsuit alleging, on behalf of herself and all others similarly situated, that Rite Aid violated the Maine Wage Payment Statute by failing to pay overtime to ASMs.

23.    On June 24, 2011, Rite Aid moved to change venue to the Middle District of Pennsylvania claiming that Plaintiff Doyon was an opt-in in the *Craig* matter and her Complaint made the same allegations and therefore should be transferred to the Middle District of Pennsylvania. Plaintiff opposed the motion noting that, among other reasons, Ms. Doyon was no longer an opt-in in *Craig* due to the FLSA statute of limitations.  Rite Aid withdrew the motion, and discovery commenced thereafter.

24.    Plaintiff again made a motion to compel the class list of ASMs, and Magistrate Judge John Rich granted Plaintiff's motion on November 18, 2011.  Pre-certification discovery followed including 30(b)(6) depositions covering multiple topics, the depositions of Plaintiff and a Regional Vice President in charge of Rite Aid's Maine stores.  Plaintiff filed a motion for class certification pursuant to Fed. R. Civ. P. 23 on April 19, 2012 while other discovery matters were being litigated including electronic discovery and the depositions of the ASMs who offered declarations in support of Plaintiff's motion for class certification.

25.    On March 2, 2010, Plaintiff Sandra Zirkel filed a complaint in the federal district court of Oregon on behalf of herself and all other similarly situated current and former Assistant Store Managers employed by Rite Aid within the state of Oregon for violation of Oregon's state overtime

wage laws.  An Amended Complaint was filed adding Thrifty Payless, Inc. as a Defendant on March 15, 2010.   Discovery requests were exchanged between the parties in July 2010 and responses were provided in August 2010.  Documents were exchanged in October 2010.

26.    Plaintiff filed an unopposed Motion to file a Second Amended Complaint that was granted, and, on December 15, 2010, a Second Amended Complaint adding Ralph Cedano as a Plaintiff was filed.  On December 17, 2010, Sandra Zirkel's claims were dismissed due to her bankruptcy filing in which she did not list this lawsuit as a potential claim.  Shortly thereafter, the parties addressed many issues through motion practice.

27.    On March 4, 2011, Defendants filed a motion for stay asking that the *Cedano* case be stayed until the U.S. Supreme Court issued a ruling in the *Dukes v. Wal-Mart, Inc.* case.  On March 7, 2011, Plaintiffs filed a motion to compel to obtain the names and addresses of all the other current and former Oregon Assistant Store Managers, Store Managers, and District Managers.  Shortly thereafter, Defendants filed a motion for protective order seeking to preclude Plaintiffs from taking the depositions of Store Managers John Chamberlain and Paul Oleson, and District Manager Denny Horton, because defense counsel believed the court needed to resolve certain ethical considerations defense counsel had raised regarding representing store

managers at depositions when those store managers were also opt-in
collective action members in the *Indergit* store manager case pending in the
Southern District of New York.  After the motion for a protective order was
filed, Plaintiffs also filed a motion to compel the three depositions that had
been noticed, as well as the depositions of the four *Indergit* opt-ins
Defendants refused to identify.  On April 26, 2011, the Oregon court held a
hearing to address these motions and granted Plaintiffs' motions to compel
the class list and the depositions.  The court denied Defendants' motions to
stay and motion for a protective order.  Plaintiffs then moved to file a Third
Amended Complaint to add Donna Garcia as plaintiff on August 30, 2011.
The court granted the motion in October 2011.

       28.    Plaintiffs sought to take the depositions of non-party putative
class members in support of their motion for class certification.  Defendants
filed a motion for a protective order on November 15, 2011, seeking to bar
Plaintiffs from taking those depositions.  On December 6, 2011, the Court
granted the motion for a protective order.   On March 21, 2012, Defendants
filed a motion to compel supplemental responses by Donna Garcia to
Defendants' Second Request for Production of Documents and Second Set
of Interrogatories.  Plaintiffs opposed this motion to compel on the grounds

that it sought attorney work product.  The Court denied Defendants' motion to compel on April 23, 2012.

29.     Throughout the course of litigating these various motions in *Cedano*, the parties engaged in discovery which included written discovery and document production, the depositions of Plaintiff Garcia, a Store Manager, a District Manager, and a Regional Vice President, and discovery of electronically stored information.  After these depositions, the parties exchanged various letters concerning deficiencies in the Defendants' responses to discovery requests.  The parties were preparing to address these discovery matters with the Court at the time the settlement was reached.

30.     On June 16, 2009 and November 7, 2009, Justin Torres and Priscilla Thomas, respectively, filed Complaints against Rite Aid alleging violations of the New Jersey Wage and Hour Laws on behalf of themselves and all others similarly situated.  On February 9, 2011, the actions were consolidated while pre-certification discovery was ongoing in the *Torres* matter.

31.     After a wait during which a motion for lead counsel appointment under Federal Rule of Civil Procedure 23(g) was filed (and then denied), the parties continued with pre-certification discovery, and exchanged documents.  Plaintiffs took a Rule 30(b)(6) deposition covering

various pre-certification topics.  Plaintiffs made a motion to compel the class

list of New Jersey ASMs, a motion that was granted on April 24, 2012. The

parties engaged in multiple conferrals regarding various discovery issues and

deficiencies in responses to discovery requests.

32.     On May 5, 2011, Rene Hough filed a Complaint against Rite

Aid in the Western District of Washington alleging, on behalf of herself and

all other Rite Aid Assistant Store Managers, that Rite Aid violated

Washington's overtime laws.  On August 2, 2011, Rite Aid filed a motion to

dismiss and/or transfer to the Middle District of Pennsylvania.  Plaintiffs

opposed the motion.  On November 8, 2011, the Court granted the motion to

transfer and the case was transferred to the Middle District of Pennsylvania.

The case was going to proceed under this Court's direction, in light of the

Third Circuit's *Fisher/Knepper* decision at the time the settlement was

reached.

33.     On June 17, 2011, Robin Mazzantini filed a Complaint against

Rite Aid in the District of Massachusetts alleging, on behalf of herself and

other Rite Aid Assistant Store Managers, that Rite Aid violated

Massachusetts General Laws by failing to pay overtime and all wages owed.

On August 11, 2011, Rite Aid moved to transfer the case to the Middle

District of Pennsylvania and Plaintiff opposed the motion.  Oral argument

was held on December 15, 2011 and, at that time, Judge Michael Ponser

ruled with Rite Aid to grant the motion to transfer.

34.     While the *Fisher* and *Knepper* appeals were pending in the

Third Circuit, the parties filed a joint motion to stay the *Hough* and

*Mazzantini* cases since the Third Circuit's decision would determine whether

or not the cases could proceed given the Court's ruling regarding inherent

incompatibility and the fact that Ms. Hough and Ms. Mazzantini are opt-ins

in the *Craig* matter (like Mr. Fisher and Mr. Knepper).  After the Third

Circuit ruled, the parties filed a joint motion to consolidate *Fisher, Hough,*

*Knepper*, and *Mazzantini* for discovery purposes on April 18, 2012.

35.     On March 23, 2012, Angel Quinones filed a Complaint in the

Southern District of New York against Rite Aid alleging, on behalf of

himself and all Co-Managers, that Rite Aid violated New York Labor Law

by failing to pay all wages due to him and other Co-Managers including

overtime.  On May 10, 2012, Plaintiff voluntarily dismissed this action

subject to an agreement with Rite Aid allowing re-filing in the Middle

District of Pennsylvania.  On May 9, 2012, Angel Quinones re-filed his

Complaint against Rite Aid which included allegations that Rite Aid also

violated New Jersey Wage and Hour Laws on behalf of Plaintiff Thomas

Finley and New Jersey Co-Managers.

36.     On June 4, 2009, Plaintiffs Lisa Laun and DeShawn Powell

("*Laun* Plaintiffs") filed a Class Action Complaint in the Philadelphia Court

of Common Pleas alleging that Rite Aid violated the Pennsylvania Minimum

Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* by misclassifying them

and other Pennsylvania Assistant Store Managers as exempt from receiving

overtime premium pay.  On July 28, 2009, Rite Aid filed preliminary

objections pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(6),

arguing that another lawsuit titled *Janice Boyer et al. v. Rite Aid*

*Corporation*, No. 090400455, June Term, 2009[1] was filed in the same court

two months prior asserting similar PMWA class action claims on behalf of

Pennsylvania ASMs.  Rite Aid asked the Court to dismiss the *Laun*

Plaintiffs' class allegations and stay their individual claims pending further

order of the court.  Recognizing that the *Eaton* action was, in fact, filed first,

the *Laun* Plaintiffs did not oppose Rite Aid's preliminary objections.  The

*Laun* action remained stayed for over two years.

37.     While the *Laun* action was stayed, the *Eaton* action proceeded.

However, on May 6, 2011, the Plaintiffs in *Eaton* filed a "Motion to

Withdraw Motion for Class Certification and Discontinue Class Allegations"

---

[1]  In October 2009, the parties to the *Boyer* action stipulated to the dismissal of named
Plaintiff Janice Boyer.  Thereafter, the *Boyer* action was re-titled *Larry Eaton, et al. v.*
*Rite Aid of Pennsylvania, Inc. and Rite Aid Corporation*.

in which they sought to, *inter alia*, have their PMWA class allegations on behalf of ASMs discontinued.  Then, on November 3, 2011, the Philadelphia Court of Common Pleas entered an order in *Laun* lifting the stay and setting case management deadlines.  Soon thereafter, the *Laun* Plaintiffs filed a motion for reconsideration asking that their PMWA class claims be revived in light of the *Eaton* parties' desire to dismiss the same claims on behalf of ASMs.  On February 27, 2012, the Philadelphia Court of Common Pleas entered an order consolidating the *Laun* and *Eaton* actions and making the *Laun* action the lead case.

38.    While the stay in *Laun* was only lifted in the fall of 2011, the parties engaged in significant discovery during this period.  This included: (i) the *Laun* Plaintiffs responding to Rite Aid's First Set of Interrogatories and Document Requests; (ii) Rite Aid responding to Plaintiffs' First Set of Interrogatories and Document Requests which included the production of over 900 documents that were reviewed by Plaintiffs' counsel; (iii) the *Laun* Plaintiffs drafting a detailed letter to Rite Aid's counsel addressing deficiencies in Rite Aid's discovery responses concerning ESI; (iv) Rite Aid had produced for inspection numerous boxes of documents from the *Laun* Plaintiffs' respective stores; and (v) the *Laun* Plaintiffs serving a Second Set of Interrogatories and Document Requests on Rite Aid.

39.     On September 24, 2010, Wanda Hadra filed a Complaint against Rite Aid alleging, on behalf of herself and all others similarly situated, that Rite Aid violated the FLSA by failing to pay Assistant Store Managers all wages due including overtime.  The case was filed, in part, to allow late consenting ASMs from the *Craig* case to pursue a claim against Rite Aid.  On November 29, 2010, the Court granted permission to file late consents in the *Craig* matter, and the parties agreed to voluntarily dismiss the *Hadra* action on December 1, 2010.

40.     The final case, *Robert Lohman v. Rite Aid Corporation, et al.*, was filed on May 17, 2011 and alleged, on behalf of Mr. Lohman and all Rite Aid Assistant Store Managers, that Rite Aid violated the New Hampshire Protective Legislation Law.  Upon review of the law, on December 14, 2011, the parties stipulated to dismissal of the case because the New Hampshire Protective Legislation Law does not apply to employers who are subject to the FLSA.

41.     The scope of litigated matters has been varied and comprehensive – from substantive issues that required addressing at the Third Circuit, to a MDL petition, to discovery disputes that are essentially innumerable.   By the time that the parties agreed to discuss settlement, there can be no question whatever that both sides were well versed in the facts,

circumstances and law applicable to the disputed issues and had a comprehensive knowledge of what a potential trial record would look like.

42.     In sum, the parties deposed nearly 100 individuals and reviewed and analyzed hundreds of thousands of pages of documents concerning Rite Aid's policies and procedures and the ASMs' job duties, which put the two sides in a uniquely well informed position as to the strengths and weaknesses of the facts and law presented.

43.     In November 2011, the parties engaged in an initial mediation with Judge Joel B. Rosen, a former Magistrate Judge of the District of New Jersey.  The mediation and settlement process ultimately consumed eight months, involving thorough written submissions to the mediator, an analysis of potential damages and methods to calculate damages, and extensive telephone and e-mail negotiations.

44.     On May 4, 2012, the parties agreed in principle to a settlement and negotiated the terms for the final settlement agreement which involved virtually daily negotiation and proposals and counter-proposals, leading to the full and complete Settlement Agreement now before the Court.

45.     On behalf of Plaintiffs, I believe it is fair to say – indeed, I believe this cannot fairly be gainsaid – that the proposed Settlement is the product of two fully informed sides negotiating intensely at arm's length.

46.     On behalf of Plaintiffs and all of the Plaintiffs' counsel, we believe the Settlement offers a fair and reasonable resolution of the litigation and incorporates and recognizes the substantial risks each side faced, whether at more trials or upon appeals, had the litigation continued.

47.     As noted briefly above, the litigation also entailed a trip to the Judicial Panel on Multidistrict Litigation.  At the time that the seven cases had been filed in Maryland, New Jersey, New York, Ohio and Pennsylvania, Plaintiffs' Lead Counsel, with the respective co-counsel in those cases, filed a motion for centralization under 28 U.S.C. § 1407.  After briefing, including Rite Aid's opposition, and argument before the Judicial Panel, on December 2, 2009, the motion was denied, thereby leading to the continued filing and separate litigation of the various cases addressed above.

48.     Annexed hereto as Exhibit A is a true and correct copy of the Settlement Agreement executed by the Parties on June 15, 2012.  Of note, regarding the structure and form of settlement, a similar structure was approved by in similar FLSA/state wage and hour settlements, *In re Staples, Inc. Wage and Hour Employment Practices Litigation*, No. 2:07-cv-00849-KSH-PS (D.N.J.) (settlement approved October 26, 2010), *Herring v. Hewitt*, No. 3:06-cv-00267 (D.N.J.) (settlement approved March 20, 2009), & *Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.).  In fact, the notice

plan here is substantially the same as what was approved in those cases (direct mail notice to the class), although here it is more robust than in *Herring* with some additional matters, such as a second mailing, a telephone line and a settlement website.

49.     Annexed hereto as Exhibit A to the Settlement Agreement is a true and correct copy of the proposed Second Consolidated Amended Collective/Class Action Complaint.

50.     Annexed hereto as Exhibit B to the Settlement Agreement is a true and correct copy of the proposed Preliminary Approval Order.

51.     Annexed hereto as Exhibit C to the Settlement Agreement is a true and correct copy of the proposed Notice to the Settlement Classes.

52.     Annexed hereto as Exhibit D to the Settlement Agreement is a true and correct copy of the Claim Form, which includes the Claim Form, Consent to Join Form and Release.

53.     Annexed hereto as Exhibit B are copies of the firm resumes of the proposed Settlement Class Counsel, Klafter Olsen & Lesser LLP, as well as Plaintiffs' counsel separated by separate tabs:  (1) The Winebrake Law Firm, LLC; (2) Whitfield, Bryson & Mason, LLP; (3) Hepworth Gershbaum & Roth PLLC; (4) Fibich, Hampton & Leeborn, LLP; (5) Barkan Meizlish Handelman Goodin DeRose Wentz LLP, (6) Murray,

Plumb & Murray; (7) Cuneo Gilbert & Laduca, LLP, (8) Pogust Braslow & Millrood, LLC, (9) Berger Attorney, P.C., and (10) Stoll Stoll Berne Lokting & Shlachter P.C.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and corrected. Executed on this 15th day of June, 2012, in Rye Brook, New York.

/s/ Seth R. Lesser

_____

Seth R. Lesser