# EXHIBIT A

# SETTLEMENT AGREEMENT

## RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION

This Settlement Agreement ("Agreement") is made by and between Shirley Craig, Eddie Ibea, Justin Torres, Priscilla Thomas, James Fisher, Robert Vasvari, Daniel Knepper, Ralph Cedano, Donna Garcia, Rene Hough, Sheryl Doyon, Robin Mazzantini, Lisa Laun, DeShawn Powell, Yvon Witty, Angel Quinones, Thomas Finley, Jose Fermin, Larry Eaton, and Karriem Perkins (the "Settlement Class Representatives"), on behalf of themselves, their agents, representatives, assigns, heirs, executors, beneficiaries, trustees and the "Settlement Classes" defined below; and Rite Aid Corporation on behalf of itself, its parent(s), divisions, affiliates, subsidiaries, predecessors and successors, including, but not limited to, any and all Rite Aid related entities operating Rite Aid brand retail stores and/or pharmacies and all entities named as Defendants in the "Wage-Hour Lawsuits" defined below and their directors, partners, principals, officers, members, fiduciaries, trustees, insurers, employees, attorneys and agents ("Rite Aid" or the "Company"): Rite Aid or the Company and the Settlement Class Representatives are referred to herein as the "Parties."

WHEREAS, the Settlement Class Representatives initiated or participated in one or more of the following lawsuits (collectively, the "Wage-Hour Lawsuits"):

*Shirley Craig, individually and on behalf of all other persons similarly situated v. Rite Aid Corporation*, Civil Action No. 08-2317 (the "*Craig* Action")

*Jose Fermin v. Rite Aid Corporation, et al.*, 1:08-cv-11364 (S.D.N.Y.) (December 31, 2008)

*Justin Torres v. Rite Aid Corporation, et al.*, 3:09-cv-02922 (D.N.J.) (June 16, 2009)

*Priscilla Thomas & Theresa Paris v. Rite Aid of New Jersey, Inc., et al., 1:09-cv-05878-JHR-KMW (D.N.J.) (November 7, 2009)*

*Daniel Knepper v. Rite Aid Corporation, et al.*, 1:09-cv-2069 (M.D. Pa.) (July 22, 2009)

*Ralph Cedano & Donna Garcia v. Rite Aid Corporation*, et al., 2:10-cv-00237 (D. Oregon) (March 2, 2010)

*Eddie Ibea v. Rite Aid Corporation, et al*., 1:11-cv-05260 (S.D.N.Y.) (July 6, 2010)

*James Fisher v. Rite Aid Corporation, et al.,* 1:10-cv-01865 (M.D. Pa.) (September 3, 2010)

*Yvon Witty v. Rite Aid Corporation, et al*., 1:11-cv-00013 (S.D.N.Y.) (January 3, 2011)

*Sheryl Doyon v. Rite Aid Corporation, et al*., 2:11-cv-00168 (D. Me.) (April 22, 2011)

*Rene Hough v. Rite Aid Corporation, et al*., 1:11-cv-2212 (M.D. Pa.) (May 5, 2011)

*Robin Mazzantini v. Rite Aid Corporation, et al.*, 1:11-cv-02324 (M.D. Pa.) (June 17, 2011)

*Angel Quinones & Thomas Finley v. Rite Aid Corporation*, et al., 1:12-cv-00870 (M.D. Pa.) (May 9, 2012)

*Lisa Laun and Deshawn Powell v. Rite Aid Corporation*, Case ID: 090600789, Philadelphia Court of Common Pleas (June 4, 2009)

*Larry Eaton, et al. v. Rite Aid of Pennsylvania, Inc., and Rite Aid Corporation*, Case ID: 090400455, Philadelphia Court of Common Pleas (April 8, 2009)

### SETTLEMENT AGREEMENT
### RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION

WHEREAS, in the Wage-Hour Lawsuits, the Settlement Class Representatives asserted wage and hour claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and various state laws, pertaining to hours of work, payment of wages, and overtime compensation; and

WHEREAS, the Settlement Class Representatives purported to bring claims on behalf of themselves and other purportedly similarly situated current and former Rite Aid employees who are or were employed within the applicable statute of limitations period(s) as salaried Assistant Store Managers and/or salaried Co-Managers (defined below), either as purported collective actions pursuant to 29 U.S.C. § 216(b) or purported class actions pursuant to Fed.R.Civ.P. 23, or analogous state rules or both; and

WHEREAS, Rite Aid denies that it has committed any wrongdoing or violated any state or federal laws pertaining to payment of wages or hours worked, has vigorously disputed the claims asserted in the Wage-Hour Lawsuits, and asserts that it has strong and meritorious defenses to the claims in the Wage-Hour Lawsuits; and

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties desire to resolve any and all suits, actions, causes of action, claims, or demands based on putative violations of the FLSA as well as any state or local law (both statutory and common law) related or pertaining to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted in the Wage-Hour Lawsuits based upon the allegations in them, regarding events that occurred or are alleged to have occurred, by salaried Assistant Store Managers and/or Co-Managers who worked for Rite Aid within the applicable statute of limitations period(s) ("Wage and Hour Claims"); and

WHEREAS, the Parties, through their counsel, represent that they have conducted a thorough investigation into the facts of the Wage-Hour Lawsuits and, having diligently investigated the Wage and Hour Claims, are of the opinion and belief that the settlement between the Parties is fair, reasonable, adequate and in the best interests of all in light of all known facts and circumstances, including the considerable expense of discovery and litigation, defenses asserted by Rite Aid, uncertainty of the result through continued litigation and appeal, and the risks of delay and an adverse judgment; and

WHEREAS, the Parties have engaged in arms-length comprehensive negotiations, including a mediation, over a seven month period, with the Honorable Joel Rosen, former Magistrate Judge of the United States District Court for the District of New Jersey and now a partner with Montgomery McCracken Walker & Rhoads LLP, between October 2011 and May 2012, which led to the Parties' agreement on the terms contained herein; and

WHEREAS, the Parties desire to resolve on the terms set forth herein, and in the Exhibits hereto (defined below), any and all Wage and Hour Claims that were asserted or could have been asserted on behalf of Plaintiffs, Opt-in Plaintiffs, the Settlement Class Representatives and the Settlement Classes (defined below) for work performed at Rite Aid during the applicable limitations period(s); and

## Settlement Agreement
## RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

1. **Definitions.**  As used in this Agreement, the following terms have the following meanings unless a section or subsection of this Agreement otherwise specifically provides:

   (a)  "Administration Costs" means any and all fees and costs of the Claims Administrator paid or incurred for, inter alia, creating and mailing notice packets, processing Claim Forms, addressing or responding to Settlement Class Member inquiries, advising Settlement Class Members of deficiencies in their Claim Forms, preparing affidavits to be filed with the Court and reports to counsel for the Parties, calculating Distribution Amounts, preparing and mailing of distributions of/from settlement funds, obtaining current addresses, preparing tax returns and paying any taxes owed on payments to Participating Settlement Class Members, Settlement Class Representatives, Class Counsel and/or any interest earned by the Qualified Settlement Fund (as defined herein); and the $75,000.00 reserve for late claims established by Section 12(m)(v) below; and any and all other fees, costs and/or expenses determined to be an expense reasonably necessary for the administration of the settlement.

   (b)  "Applicable Class Period" means the class period(s) described in Section 5 below which applies to the Settlement Class Members.

   (c)  "Assistant Store Manager(s)" means any person who was or is employed by Rite Aid in the U.S., excluding California, as a salaried Assistant Store Manager.

   (d)  "Co-Manager(s)" means any person who was or is employed by Rite Aid in the U.S. as a salaried Co-Manager.

   (e)  "Attorneys' Fees and Lawsuit Costs" means all attorneys' fees and litigation expenses and costs incurred in the Wage-Hour Lawsuits by Settlement Class Counsel (defined below) and retained and other associated counsel in the Wage-Hour Lawsuits.  Attorneys' Fees and Lawsuit Costs shall not exceed thirty-three and one third (33-1/3%) percent of twenty million and nine hundred thousand dollars, subject to Court approval.

   (f)  "Claim Period" means the period for filing claims, which shall be from the date of the first mailing of the Notice until thirty (30) days following the Final Approval Hearing.

   (g)  "Court" means the United States District Court for the Middle District of Pennsylvania; "courts" refers to the specific courts in which the Wage-Hour Lawsuits are filed.

**SETTLEMENT AGREEMENT**
## RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION

(h)    "Distribution Amount" means the amount distributed to a Participating Settlement Class Member who submits a Valid Claim Form in accordance with the terms of this Agreement.

(i)    "Effective Date" means the date on which the Final Judgment and Order Approving Settlement become Final.

(j)    "Employer Payroll Taxes" means FICA, FUTA and SUTA payment obligations as a result of payments made to members of the Settlement Classes under the terms of Agreement, which will be paid by the Claims Administrator from the QSF before Distribution Amounts are disbursed to Participating Settlement Class Members.

(k)    "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final and no longer subject to appeal:

(i)    if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired, or

(ii)    if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for *certiorari* or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in final judicial approval of this Agreement.

(l)    "Final Approval Order" means an order that finally and unconditionally grants final approval of the Settlement, grants final certification of the Settlement Classes for settlement purposes only, authorizes payments to the Settlement Class Members, the Claims Administrator, and Settlement Class Counsel as provided in this Agreement, and fully and finally extinguishes the Wage and Hour Claims of the Settlement Classes as set forth herein, which the Parties shall submit in a mutually agreed upon form.

(m)    "Gross Settlement Amount" means the settlement sum, paid by Rite Aid, which total amount shall not under any circumstance exceed twenty million and nine hundred thousand dollars and no cents ($20,900,000).

(n)    "Incentive Award(s)" means incentive payments to the Settlement Class Representatives, as set forth in Section 8 below.

(o)    "Lead Counsel" means Seth R. Lesser of the Klafter Olsen & Lesser LLP law firm.

(p)    "Net Distribution Amount" means the amount to be distributed from the Net Settlement Amount to Participating Settlement Class Members who submit Valid

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

Claim Forms pursuant to the terms and conditions set forth in Section 11 of this Agreement.

(q)    "Net Settlement Amount" means the Gross Settlement Amount, plus any applicable interest, less:

(i)    Attorneys' Fees and Lawsuit Costs awarded to Lead Counsel and Settlement Class Counsel pursuant to Section 7 of this Agreement;

(ii)    Incentive Awards to the Settlement Class Representatives pursuant to Section 8 of this Agreement; and

(iii)    Administration Costs.

(r)    "Notice" means the notice describing the Parties' proposed Settlement to Settlement Class Members, as approved by the Court in the Preliminary Approval Order, in the form attached as Exhibit C.

(s)    "Participating Settlement Class Member" means a Settlement Class Member who submits a Valid Claim Form within the Claim Period, in the manner described by and in compliance with the terms of this Agreement.

(t)    "Parties" means Rite Aid or the Company and the Settlement Class Representatives.

(u)    "Party" means Rite Aid or the Company, or any of the Settlement Class Representatives.

(v)    Plaintiffs' Local Counsel means Peter Winebrake and The Winebrake Law Firm, LLC.

(w)    "Preliminary Approval Date" means the date the Preliminary Approval Order is entered by the Court.

(x)    "Preliminary Approval Order" means the Preliminary Approval Order entered by the District Court, which the Parties shall request be substantially in the form attached as Exhibit "B".

(y)    "QSF" means the Qualified Settlement Fund established under Section 468B of the Internal Revenue Code, and more fully discussed herein, established and administered by the Claims Administrator.

(z)    "Released Parties" means Rite Aid Corporation, all of the entities named as Defendants in the Wage-Hour Lawsuits and all of their parent(s), divisions, subsidiaries, affiliates, related companies, partnerships, joint ventures, predecessors and successors, and all of its and their directors, principals, officers, stockholders, owners, members, fiduciaries, trustees, insurers, employees,

5

SETTLEMENT AGREEMENT
# RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION

attorneys, representatives, assigns, and agents (each in their individual and corporate capacities) collectively.

(aa) "Rite Aid's Counsel" means Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Epstein Becker & Green, and Rite Aid's local counsel in the Wage-Hour Lawsuits.

(bb) "Second Amended Complaint" means the Second Amended Complaint to be filed in the *Craig* action setting forth the claims to be encompassed and dismissed (including those in the consolidated cases) by the Settlement.

(cc) "Settlement" means the terms of the settlement agreed to by the Parties and their counsel, as set forth in this Agreement.

(dd) "Settlement Class Counsel" means Lead Counsel and all counsel of record for the Plaintiffs in the Wage-Hour Lawsuits, including but not limited to the following attorneys and law firms:   Peter Winebrake and The Winebrake Law Firm, LLC, Steve Larson and Stoll Berne Lotking & Shlachter P.C., Seth Lesser and Klafter Olsen & Lesser LLP, Robert DeRose and Barkan Meizlish, LLP, Nicholas Migliaccio and Whitfield Bryson & Mason LLP, Michael Josephson and Fibich, Hampton, Leeborn, Briggs & Josephson, LLP, Eric Young and Egan Young, Bradley Berger and Berger & Associates, Richard O'Meara and Murray, Plumb & Murray, Alexandra Warren and Cuneo Gilbert & LaDuca, LLP, Charles Gershbaum and Hepworth Gershbaum Roth PLLC, Robert Drexler & Khorrami LLP, Harris L. Pogust and Pogust, Braslow & Millrood, LLC.

(ee) "Settlement Class Representatives" means plaintiffs Shirley Craig, Eddie Ibea, Jose Fermin, Justin Torres, Priscilla Thomas, James Fisher, Robert Vasvari, Daniel Knepper, Ralph Cedano, Donna Garcia, Rene Hough, Sheryl Doyon, Robin Mazzantini, Lisa Laun, DeShawn Powell, Yvon Witty, Angel Quinones, Thomas Finley, Larry Eaton, and Karriem Perkins.

(ff) "Settlement Classes" means the Federal Settlement Class and the State Settlement Classes, as described in Section 5 below.

(gg) "Settlement Class Members" means the individuals in the Settlement Classes.

(hh) "Transfer Courts" means all the courts in which the Wage-Hour Lawsuits other than the U.S. District Court for the Middle District of Pennsylvania, where *Craig, Quinones, Hough, Fisher, Knepper,* and *Mazzantini* are currently pending.

(ii) "Valid Claim Form" means a completed and signed Claim Form that satisfies the requirements set forth in Section 12(d), below.

(jj) "Wage and Hour Claims" means any and all suits, actions, causes of action, claims, or demands based on putative violations of the Fair Labor Standards Act, as well as any state or local law (both statutory and common law), pertaining or

related to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted in the Wage-Hour Lawsuits based on the allegations in them, regarding events that occurred or are alleged to have occurred, by salaried Assistant Store Managers and/or Co-Managers who worked for Rite Aid within the applicable Statute of Limitations Period(s).

2. **No Admission of Liability and No Concession as to the Merits.** Rite Aid denies that it violated the law in any manner and specifically denies that it violated any statutory or common law alleged in the Wage-Hour Lawsuits, and asserts that it has strong defenses to the Wage-Hour Lawsuits and the Wage and Hour Claims.  Settlement Class Representatives make no concessions as to the merits of their claims against Rite Aid. The Parties have entered into this Agreement to avoid the risks, uncertainty, expense and burden of further litigation.  Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Rite Aid, or concession thereof on the part of the Settlement Class Representatives.

3. **Process for Approval of Settlement.**

   (a)    Immediately upon full execution of this Agreement and agreement as to the content of the attached Exhibits, the Parties shall submit to the Court a Motion for Preliminary Approval, along with this Agreement and the following, which are attached to the Agreement:

   (i)     Proposed Preliminary Approval Order (Exhibit B);

   (ii)    Second Amended *Craig* Complaint (Exhibit A);

   (iii)   Notice (Exhibit C); and

   (iv)    Claim Form, which includes the Claim Form, Consent to Join Form and Release (Exhibit D).

   (b)    In conjunction with the filing of the Motion for Preliminary Approval, the Parties will jointly request that the Court hold a hearing regarding the request for preliminary approval of the Settlement not less than fourteen (14) days after the filing of the Motion for Preliminary Approval and the transfer and consolidation of the Wage-Hour Lawsuits with *Craig* and other than *Eaton* and *Laun*, as set forth in Section 4(a) below.  Counsel for the Parties will communicate with the Clerk of the Court and make any further filings necessary to secure the approval of their request.  For purposes of this Agreement, "Preliminary Approval" shall occur upon the issuance of a Court order granting the Preliminary Approval of the Agreement preliminarily certifying the Settlement Classes for purposes of providing notice to the affected individuals; approving the form and content of the Notice and Claim Form (including a consent to join form and release); advising the Settlement Classes of the material terms of this Settlement, the procedure for approval thereof, and their rights with respect thereto; appointing Settlement

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

Class Counsel as counsel to the Settlement Classes; and appointing a Claims Administrator.

(c)     The Motion for Preliminary Approval will also include a request that the Court, consistent with its authority pursuant to the All Writs Act, 28 U.S.C. § 1651(a), enjoin all Settlement Class Members from initiating, continuing, or proceeding with lawsuits asserting Wage and Hour Claims against Rite Aid on behalf of any class or collective of Assistant Store Managers and/or Co-Managers until such time as Final Approval.  The Motion will request that the Court issue an injunction as broad and comprehensive as permitted and be included in the Preliminary Approval Order.

(d)     In connection with seeking Preliminary Approval, the Parties will ask the Court to schedule and conduct a Final Approval hearing regarding final approval of the Settlement (the "Final Approval Hearing"), and to grant final approval of the Settlement ("Final Approval") no earlier than the time period required by 28 U.S.C. §1715, and at least one hundred (100) days, or as soon thereafter as practicable, after the Preliminary Approval Date.  The Parties will file an agreed Motion for Final Approval of the Settlement, and shall present a proposed Final Approval Order in connection therewith.

(e)     If the Court enters the Final Approval Order, the Effective Date shall occur on the later of: (A) five (5) days after the expiration of the time for filing of an appeal from the Court's approval of the Agreement without the filing of a Notice of Appeal, or (B) if an appeal is filed, the final resolution of all appeals (including requests for rehearing petitions for certiorari) resulting in final judicial approval of this Agreement.

(f)     The Parties agree to cooperate and take all steps necessary and appropriate to obtain Preliminary and Final Approval of the Settlement Agreement, to effectuate all aspects of this Agreement, and to dismiss the Wage-Hour Lawsuits with prejudice after the Effective Date.

(g)     The Parties agree that if the Court does not approve any material term in the Motion for Preliminary Approval or in the Agreement, or requires as a condition to granting the Preliminary Approval motion any term that effects a material change in this Agreement, then this Agreement may be voided by the Party or Parties adversely affected by such material change, provided notice of any decision to void this Agreement is issued to the adverse party within ten (10) days of any such Court ruling.  The Parties further agree that Rite Aid being required to pay any amount greater than the Gross Settlement Amount would constitute a material change in this Agreement.  The Parties further agree that any ruling that the Court may make regarding Settlement Class Counsel's motion or petition for an award of attorney's fees and costs shall not constitute a material change in this Agreement, unless such award would have the effect of requiring Rite Aid to pay

8

any amount greater than the Gross Settlement Amount or to alter the funding method.

(h)    If the Court does not grant Preliminary and Final Approval of the Settlement or if the Effective Date does not occur for any reason, then the Settlement Classes shall be deemed decertified, the settlement term sheet and the Settlement Agreement shall be null and void and of no further use or effect, and the parties will be returned to their respective positions in the Wage-Hour Lawsuits *nunc pro tunc* as of the date of the term sheet, including the posture of the cases vis-à-vis certification under 29 U.S.C. § 216(b) and Rule 23, without prejudice to the Settlement Class Representatives' ability to seek, or Rite Aid's ability to oppose, collective treatment under 29 U.S.C. § 216(b) and/or class certification under Rule 23 in each of the actions.  In this event, the settlement term sheet, this Agreement, and all information, negotiations and discussions leading to or arising out of those documents, shall not be used as evidence or for any other purpose in any lawsuit against Rite Aid alleging any violation of any federal, state or local wage and hour laws.  Further, in the event that Final Approval or the Effective Date do not occur for any reason, then the Claims Administrator shall return any amount of the Gross Settlement Amount that has been deposited into the QSF, plus interest earned thereon and less any Administration Costs incurred, to Rite Aid within 10 days of receipt of written notice from Rite Aid's counsel under this Paragraph, with instructions for delivery of the funds.  The Claims Administrator shall make a full accounting to Rite Aid of Administration Costs, if any, within 10 days of return of the funds.

(i)    This Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, common law principle, administrative code, rule or regulation, of any liability or wrongdoing by Rite Aid or of the truth (or by the Settlement Class Representatives of the infirmity) of any of the claims or allegations contained in the Wage-Hour Lawsuits and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Wage-Hour Lawsuits or in any other action or proceeding.  Rite Aid does not waive, and instead expressly reserves, its right to challenge the propriety of collective treatment class certification in the Wage-Hour Lawsuits or otherwise for any purpose as if this Agreement had not been entered into by the Parties, in the event that the Court does not certify the Settlement Classes for settlement purposes only or in the event that the Court does not grant Preliminary or Final Approval or if the Effective Date otherwise does not occur. The Parties expressly reserve all of their rights and defenses if the Effective Date does not occur. The provisions of this Agreement may be used by the Parties to enforce the terms of this Agreement.  Neither this Agreement nor any term contained herein shall be used as evidence in any other legal proceeding or for any other purpose whatsoever.

(j)    All terms and conditions of this Agreement, including without limitation, certification by the Court of the Settlement Classes are contingent upon the occurrence of the Effective Date.

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

4.    **Amendment to *Craig* Complaint and Transfer of other Wage-Hour Lawsuits.**

(a)    Within seven (7) days after the execution of this Agreement, Settlement Class Counsel shall file in each of the Wage-Hour Lawsuits other than *Craig, Quinones, Hough, Fisher, Knepper,* and *Mazzantini,* as well as *Eaton,* a motion pursuant to 28 U.S.C. §§ 1404 and Rule 42 of the Federal Rules of Civil Procedure to transfer to the Middle District of Pennsylvania and consolidate each such Wage-Hour Lawsuit together with *Craig* (the "Transfer Motions"). Rite Aid will consent for Settlement purposes only to each of the Transfer Motions. Each Transfer Motion will include a proposed order granting the transfer and consolidation with *Craig* stating, *inter alia,* that (i) transfer and consolidation is requested and granted only for purposes of facilitating this Settlement; and (ii) if for any reason the Effective Date does not occur, the Court will return the Wage-Hour Lawsuits to the respective Transfer Courts, without objection.

(b)    Within seven (7) days after the execution of this Agreement, Settlement Class Counsel shall file the Second Amended Complaint pursuant to Fed.R.Civ.P. 15(a)(2), which shall include all FLSA and state law claims asserted in the Wage-Hour Lawsuits as well as state law claims for other states in which Rite Aid does business (except California) that have analogous state law causes of action, as set forth in Section 5(b), below. The statutes of limitations for any claim shall run from the earlier of the date on which such claims were first asserted in any complaint, any of the Wage-Hour Lawsuits or the Second Amended Complaint. Rite Aid will give Settlement Class Counsel its written notice of its consent to the filing of the Second Amended Complaint.

(c)    Within seven (7) days after the execution of this Agreement, the parties shall stipulate to an amendment of the complaint in the consolidated *Eaton*/*Laun* case to assert FLSA claims and thereafter Defendants will remove the case to the Eastern District of Pennsylvania and then the parties will consent to transfer it to the Middle District of Pennsylvania. In the alternative, if the removal is not successful for any reason, the parties will jointly request to stay all proceedings in that case, without prejudice to reinstatement if the Settlement is not approved by the Court, which stay shall be superseded by the filing of a stipulated notice of dismissal by Class Counsel upon the Effective Date.

(d)    The Parties further agree and consent, in connection with seeking Preliminary Approval, that the Court postpone the deadline for Rite Aid to file a responsive pleading to the Amended Complaint, as well as to the *Quinones* Complaint, through the date of the Final Approval Hearing. Upon entry of the Final Approval Order, Rite Aid's response to the Amended Complaint shall be excused through the dismissal of *Craig* and the Wage-Hour Lawsuits. If, for any reason, Final Approval of the Settlement is not granted, Settlement Class Counsel and Rite Aid's Counsel shall jointly request (i) that the Court dismiss the Second Amended Complaint and reinstate the Amended Complaint in the *Craig* action, without prejudice or costs, (ii) set a deadline for defensive pleadings in response

10

to the *Quinones* Complaint, and (iii) transfer the other Wage-Hour Lawsuits to the Transfer Courts from which they came, without costs, and without prejudice to the statute of limitations of any plaintiffs or opt-in plaintiffs in the transferred actions, as if no transfer had occurred.  In such event, the Second Amended Complaint shall have no further effect and the fact that the Parties stipulated to the filing of the Second Amended Complaint and to Transfer and Consolidate the Wage-Hour Lawsuits for Settlement purposes only shall have no effect or bearing on any future motion to amend or transfer any of the complaints in the pending Wage-Hour Lawsuits as of the date this Agreement is executed by the Parties, and without prejudice to Rite Aid's ability to oppose or to assert arguments opposing such motions.

5.   **Settlement Classes.**

(a)   Solely for Settlement purposes, the Parties agree to seek conditional certification by the Court of the Federal Settlement Class as a collective action pursuant to 29 U.S.C. § 216(b), and of the State Settlement Class as a Rule 23 class.  Each of the Settlement Classes and applicable statutes of limitations periods is defined below.

(b)   The State Settlement Class includes all Assistant Store Managers and Co-Managers employed by Rite Aid as follows:

(i)   Alabama:  all Assistant Store Managers and Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(ii)   Colorado:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(iii)   Connecticut:  all Assistant Store Managers and Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(iv)   Delaware: all Assistant Store Managers and Co-Managers employed within the one year period preceding the filing of the Second Amended Complaint through the Effective Date.

(v)   District of Columbia:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(vi)   Georgia: all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

**Settlement Agreement**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

(vii)    Idaho:  all Assistant Store Managers and Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(viii)   Indiana:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(ix)    Kentucky:  all Assistant Store Managers and Co-Managers employed within the five year period preceding the filing of the Second Amended Complaint through the Effective Date.

(x)     Louisiana:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xi)    Maine:  all Assistant Store Managers and Co-Managers employed at any time from April 22, 2005 (the six year period preceding the filing of the *Doyon* matter) through the Effective Date.

(xii)   Maryland:  all Assistant Store Managers and Co-Managers employed at any time from September 3, 2007 (the three year period preceding the filing of the *Fisher* matter) through the Effective Date.

(xiii)  Massachusetts:  all Assistant Store Managers and Co-Managers employed at any time from June 17, 2008 (the three year period preceding the filing of the *Mazzantini* matter) through the Effective Date.

(xiv)   Michigan:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xv)    Mississippi:   all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xvi)   Nevada: all Assistant Store Managers and Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xvii)  New Hampshire:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xviii) New Jersey:  all Assistant Store Managers and Co-Managers employed at any time from July 31, 2004 (the two year period preceding the filing of the *Hearn* matter) through the Effective Date.

12

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

(xix)    New York:  all Assistant Store Managers and Co-Managers employed at any time from October 30, 2002 through the Effective Date.

(xx)    North Carolina:  all Assistant Store Managers and Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxi)    Ohio:  all Assistant Store Managers and Co-Managers employed at any time from July 22, 2006 (the three year period preceding the filing of the *Vasvari/Knepper* matter) through the Effective Date.

(xxii)    Oregon:  all Assistant Store Managers and Co-Managers employed at any time from March 2, 2004  (the six year period preceding the filing of the *Cedano/Garcia* matter) through the Effective Date.

(xxiii)    Pennsylvania:  all Assistant Store Managers and Co-Managers employed at any time from April 8, 2006 (the three year period preceding the filing of the *Eaton/Laun* matter) through the Effective Date.

(xxiv)    Rhode Island:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxv)    South Carolina:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxvi)    Tennessee: all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxvii)    Utah:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxviii)    Vermont:  all Assistant Store Managers and Co-Managers employed within the six year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxix)    Virginia:  all Assistant Store Managers and Co-Managers employed within the three year period preceding the filing of the Second Amended Complaint through the Effective Date.

(xxx)    Washington:  all Assistant Store Managers and Co-Managers employed at any time from May 5, 2008 (the three year period preceding the filing of the *Hough* matter) through the Effective Date.

(xxxi)  West Virginia:  all Assistant Store Managers and Co-Managers employed within the two year period preceding the filing of the Second Amended Complaint through the Effective Date.

(c)  The Federal Settlement Class includes:

(i)  The Settlement Class Representatives, and all individuals who as of the date of this Agreement have filed consents to join any of the Wage-Hour Lawsuits, who worked at Rite Aid as Assistant Store Managers and/or Co-Managers during the three-year period prior to the earlier of their becoming a Plaintiff in their respective actions or opting into any of the Wage-Hour Lawsuits; and

(ii)  All other Assistant Store Managers and/or Co-Managers employed by Rite Aid, except in California, from three years prior to the filing of the Second Amended Complaint through the Effective Date.

6.  **Settlement Funding and Payments.**

(a)  Rite Aid agrees to pay up to twenty million and nine-hundred thousand dollars and no cents ($20,900,000), in order to fully and finally resolve the Wage-Hour Lawsuits in their entirety, inclusive of all Attorneys' Fees and Lawsuit Costs; interest; Administration Costs; liquidated, punitive and multiplier of damages; taxes; payroll taxes, Employer Payroll Taxes, and Incentive Awards, if any.  Rite Aid shall not be responsible for any taxes imposed by law on the Settlement Class Members as a result of payments made to the Settlement Classes, or any other sums in excess of the Gross Settlement Amount.

(b)  Rite Aid shall deposit the Gross Settlement Amount into the QSF as follows: Within twenty-one (21) days after the entry of a Preliminary Approval Order, Rite Aid shall deposit one-half of the Total Settlement Amount into an interest-bearing account mutually agreed upon by Settlement Class Counsel and Rite Aid's Counsel and to be under the control of Lead Class Counsel and designated as a QSF to be held in escrow pending the Effective Date.  Rite Aid will pay the remaining one-half of the Total Settlement Amount into the QSF within ten (10) business days after the Final Approval Date.

(c)  Rite Aid's payments into the QSF shall be treated as a payment of a Qualified or Designated Settlement Fund under I.R.C. §468B and the regulations or proposed regulations promulgated hereunder (including without limitation Treasury Reg. §1.468B-1-5 or any successor regulation).

(d)  The QSF will be established pursuant to the Internal Revenue Code and insured and guaranteed to the full extent permissible under 12 CFR § 370.4.  Any funds on deposit in the QSF shall be deemed and considered to be in *custodia legis* of the Court.  The QSF will be created as an interest bearing account and the Claims

Administrator will prepare any tax returns on any interest earned by the QSF and pay such taxes from the QSF.

(e)     After the Effective Date and upon the Court's ruling on the amounts to be awarded for (a) Attorneys' Fees and Lawsuit Costs and (b) Incentive Awards, the Net Settlement Amount shall be determined by the Claims Administrator.

(f)     The Parties acknowledge and agree that no portion or part of the Gross Settlement Amount or any payment hereunder is being made as a fine or penalty to a governmental agency.

(g)     Any portion of the Net Distribution Amount that is represented by check(s) that are uncashed/undeposited by Participating Class Members within the period specified in Section 12(m), or that otherwise remains in the QSF or under the control of the Claims Administrator upon the final accounting of the settlement funds, shall be allocated as follows:

    (i)     Fifty-percent (50%) shall be transferred to the National Employment Law Project, the National Association of Consumer Advocates, and the Children's Miracle Network, in equal shares of 25% of the 50%, and, also as an equal 25% share divided into three, the Community Justice Project of Pennsylvania, MidPenn Legal Service, and North Penn Legal Services (the "Cy Pres Beneficiaries"); and

    (ii)    Fifty-percent (50%) shall revert to Rite Aid.

7.     **Attorneys' Fees and Lawsuit Costs.**

(a)     Within thirty (30) days preceding the date of the Final Approval Hearing or the date set by the Court, Settlement Class Counsel shall make, and Rite Aid agrees not to oppose, an application for Attorneys' Fees and Lawsuit Costs that does not exceed thirty-three and one-third percent (33-1/3%) of the twenty million and nine hundred thousand dollars.  The Attorneys' Fees and Lawsuit Costs awarded by the Court shall be the sole aggregate compensation for all Settlement Class Counsel and retained and other associated counsel in the Wage-Hour Lawsuits for work related to the Wage-Hour Lawsuits and the Settlement.

(b)     Any Attorneys' Fees and Lawsuit Costs awarded in conjunction with the Settlement shall be paid from the QSF and shall reduce the amount of the Gross Settlement Amount payable to Settlement Class Members.  Any fees and costs awarded by the Court in connection with this Settlement shall include and constitute satisfaction of the entire amount of attorneys' fees and costs awarded by the Court in the Wage-Hour Lawsuits.

(c)     Any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement shall be retained by the Claims Administrator in the QSF until ten (10) days after the Effective Date.  In the alternative, upon Lead Counsel's written

request, and then only after Lead Counsel obtains the express written consent of Rite Aid and Rite Aid's counsel, which will not unreasonably be withheld, any Attorneys' Fees and Lawsuit Costs, or portions thereof, may become payable to Lead Counsel, on behalf of all Plaintiffs' counsel, after entry of both the Final Judgment and an order providing final approval of an award of the Attorneys' Fees and Lawsuit Costs.  If the Final Judgment is reversed or modified on appeal, or if the Effective Date does not occur, or if the Settlement Agreement is otherwise terminated pursuant to the provisions of this Settlement Agreement, then any Attorneys' Fees and Lawsuit Costs are no longer payable.  And in the event that any portion of the Attorneys' Fees and Lawsuit Costs had been paid from the QSF, Lead Counsel shall, within five (5) business days from the reversal or modification of the Final Judgment, the event which precludes the Effective Date from occurring, or the termination of the Settlement Agreement, as applicable, refund to the QSF the Attorneys' Fees and Lawsuit Costs paid to Lead Counsel, and each Settlement Class Counsel, on behalf of himself/herself and each of his or her partners, and in addition shall pay into the QSF interest on the amount refunded at the average rate earned on the QSF from the time of payment until the date of refund.  As a condition of receiving any Attorneys' Fees and Lawsuit Costs, Lead Counsel, on behalf of himself and each of his partners, agree that their law firm and partners are subject to the jurisdiction of the Court for the purpose of enforcing this Section 6(c) of this Stipulation.  Lead Counsel and Settlement Class Counsel expressly agree that they will be jointly and severally liable for refunding the Attorneys' Fees and Lawsuit Costs.  Without limitation, Lead Counsel and Settlement Class Counsel agree that the Court may, upon application of Defendants or Defendants' Counsel and upon notice to Lead Counsel and Settlement Class Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, against them or any of them should such Lead Counsel or Settlement Class Counsel fail timely to refund any Attorneys' Fees and Lawsuit Costs and pay any associated interest.

(d)     Regardless of the timing of the payment of Attorneys' Fees and Lawsuit Costs, Lead Counsel shall allocate the Attorneys' Fees and Lawsuit Costs payable to Plaintiffs' counsel in a manner that, in Lead Counsel's good-faith judgment, reflects such counsel's contribution to the institution, prosecution, or resolution of the Wage and Hour Claims and thereafter shall be distributed as directed by Lead Counsel or by order of the Court.  By executing this Agreement, all Settlement Class Counsel specifically agree to this process and waive any right to seek any additional Attorneys' Fees or costs from Rite Aid.  Payments made pursuant to this Section shall be reported to state and federal taxing authorities by the Claims Administrator as non-wage income on IRS form 1099.

8.      **Settlement Class Representative Incentive Awards.**

(a)     Lead Counsel and Settlement Class Counsel may petition for Incentive Awards for the Settlement Class Representatives.  Any such petition shall be filed no less

than thirty (30) days prior to the Final Approval Hearing or the date set by the Court.

(b)     Any Incentive Awards approved by the Court in conjunction with the Settlement shall be paid from the QSF and shall reduce the amount of the Gross Settlement Amount payable to the Settlement Class Members.  Incentive Awards to Settlement Class Representatives shall be in addition to their respective payments that the Settlement Class Representatives shall receive as members of the Settlement Classes.  Incentive Awards shall be distributed by the Claims Administrator in separate checks mailed within ten (10) days after the Effective Date and shall be reported by the Claims Administrator to state and federal taxing authorities as non-wage income on IRS Form 1099.

(c)     Subject to Court approval, the Settlement Class Counsel may seek, and Rite Aid will not oppose, Incentive Awards of up to seven thousand five hundred dollars ($7,500) to Shirley Craig and up to five thousand dollars ($5,000) each of the other Settlement Class Representatives.

9.     **Claims Administrator.**

(a)     The Parties shall jointly retain The Garden City Group as Claims Administrator (the "Claims Administrator") prior to filing the Motion for Preliminary Approval. The Claims Administrator shall serve as the administrator of the Settlement and perform the services described in this Agreement, including, without limitation:

(i)     Establish and maintain a QSF;

(ii)     Receive from Rite Aid and update and maintain as necessary a mailing list, mail the Notices and Claims Forms, along with the follow-up methods of contacts set forth herein to effectuate notice;

(iii)     Receive Valid Claim Forms and opt-out forms;

(iv)     Establish and maintain a toll-free hotline staffed by live operators to respond to inquiries by Settlement Class Members regarding the Settlement;

(v)     Establish and administer a website with links to a sample form of Notice and Claim Form, and containing a mutually agreed-upon list of frequently asked questions and answers for Settlement Class Members.

(vi)     Establish and maintain a toll-free hotline staffed by live operators to respond to inquiries by Settlement Class Members regarding the Settlement.  Counsel for the Parties shall agree upon and approve a script to provide to the Claims Administrator which will be used to answer any such inquiries.

(vii)    The Claims Administrator may also, thirty (30) days after the initial mailing, place automated reminder telephone calls with a mutually agreed-upon message to Settlement Class Members who have not submitted a Valid Claim Form or Request for Exclusion.

(viii)    Calculate the Distribution Amounts for Participating Settlement Class Members, including calculating applicable payroll taxes and withholdings, Employer Payroll Taxes, and depositing taxes and withholdings with appropriate taxing authorities;

(ix)    Pay from the QSF, the Attorneys' Fees and Lawsuit Costs, the Incentive Awards and any other awards approved by the Court;

(x)    Pay, from the QSF, the Distribution Amounts from the Net Distribution Amount to Participating Settlement Class Members who submit Valid Claim Forms during the Claim Period, and any Employer Payroll Taxes;

(xi)    Prepare tax returns and tax reporting of payments;

(xii)    Make determinations concerning disputes submitted by Settlement Class Members concerning their workweeks, in accordance with Section 11(i); and,

(xiii)    Prepare and submit to the Court a final accounting of the Settlement, twenty (20) days after the Claim Period expires in accordance with this Agreement; and

(xiv)    Any other obligations established in this Agreement or subsequently agreed to by the Parties.

(b)    All disputes relating to the Claims Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

(c)    All Court-approved Administration Costs, in an amount to be sought for approval from the Court at the time of the Final Approval Hearing which shall constitute the Claims Administrators' good faith estimation of costs to be incurred, shall be paid from the QSF and shall reduce the amount of the Gross Settlement Amount available for Distribution Payments to Participating Settlement Class Members.

(d)    The Settlement Fund shall be distributed by the Claims Administrator as follows:

(i)    First, all Court-approved Administration Costs, including but not limited to the payment of any taxes (including any estimated taxes, interest, or penalties) due as a result of interest income, if any, earned by the QSF;

SETTLEMENT AGREEMENT
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

(ii)     Second, all Employer Payroll Taxes and federal, state and local income, employment or other taxes required to be withheld under the law;

(iii)    Third, all Court-approved Attorneys' Fees and Lawsuit Costs;

(iv)    Fourth, all Incentive Awards; and,

(v)     Fifth, Distribution Amounts to Participating Settlement Class Members.

(e)     The Claims Administrator shall withhold from the Distribution Amount payable to each Participating Settlement Class Member his or her share of all federal, state and local income and employment taxes required to be withheld under the law, prepare and deliver the necessary tax documentation for signatures by all necessary parties, and cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur.

(f)     The Claims Administrator, in cooperation with Rite Aid, shall calculate the Employer Payroll Taxes, prepare and deliver the necessary tax documentation for signatures by all necessary parties, and cause the appropriate deposits of Employer Payroll Taxes and informational and other tax return filing to occur.

(g)     The Claims Administrator will provide copies of all cancelled settlement checks, including payments of Distribution Amounts, Incentive Awards and Attorneys' Fees and Lawsuit Costs, to Rite Aid's Counsel and Settlement Class Counsel.

(h)     The Claims Administrator shall provide proof of bonding and insurance coverage sufficient to secure the Gross Settlement Amount.

(i)     The Claims Administrator shall execute a non-disclosure agreement consistent with the provisions in Section 16.

10.    **Notices Mandated by Statute.**

(a)     The Claims Administrator shall prepare and mail notices of the Settlement to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") as required by 28 U.S.C. § 1715, no later than ten (10) days after Preliminary Approval.

11.    **Notice of Settlement and Distribution of Settlement.**

(a)     Mailing Notice to Class Members.  Within thirty (30) days following the Preliminary Approval Order, Rite Aid shall provide to the Claims Administrator: (i) a confidential list of names, current or last known addresses, and Rite Aid store numbers (and a list of store locations by number) at which each person worked, for all Settlement Class members; and (ii) the number of work weeks, excluding leaves of absence, worked by each Settlement Class Member as an Assistant Store Manager and/or Co-Manager during the Applicable Class Period.  Within thirty

19

(30) days after Rite Aid provides the list in this Section to the Claims Administrator, the Claims Administrator will mail to Settlement Class Members packets containing a Notice and Claim Form.  The Claims Administrator shall send such packets by first class U.S. Mail to each Settlement Class Member at such individual's last known address as provided on the list provided by Rite Aid.

(b)    Notice.  The Notice informing Settlement Class Members of the Settlement will include the date of the Final Approval Hearing and will explain the method of calculating the Distribution Amount for each Participating Settlement Class Member based on the number of completed workweeks, excluding leaves of absence, during the Applicable Class Period(s).  The Notice will state that although the actual net amount of the per week value that will be used to calculate the Distribution Amount is unknown, the estimated gross value will be approximately $XX.00 for each completed workweek as an Assistant Store Manager and/or Co-Manager during the Applicable Class Period, net of disbursements from the Gross Settlement Amount, including Attorneys' Fees and Lawsuit Costs, Incentive Awards, Administration Costs, and taxes.  As to individuals who previously filed a consent to join in any of the Wage-Hour Lawsuits, the determination of the completed workweeks shall take into account the date of the individuals' filing of their consent to join and include applicable workweeks for the three year period prior to the filing of their consent to join in the Wage-Hour Lawsuits.  In addition, the Notice will be individualized to include the anticipated Distribution Amount the Participating Settlement Class Member would receive if the Settlement were to be approved consistent with the terms of the Settlement Agreement.

(c)    Claim Form.  The Claim Form shall denote that the individual returning the form consents to join as a party plaintiff to the FLSA claims asserted in the Amended Complaint, if the recipient has not already previously filed such consent in any of the Wage-Hour Lawsuits, and authorizes Settlement Class Counsel to file the consent to join with the Court for settlement purposes only.  The Claim Form will also include a specific release consistent with the Release contained in Section 12 of this Agreement.  The Claim Form will be individualized with the Participating Settlement Class Member's dates of active employment with Rite Aid as an Assistant Store Manager and/or Co-Manager, the total number of completed weeks of employment as an Assistant Store Manager and/or Co-Manager for Rite Aid, excluding leaves of absence, and the Distribution Amount the Participating Settlement Class Member would receive if the Settlement were to be approved consistent with the terms of the Settlement Agreement.

(d)    Validity of Claim Form.  In order to be a Valid Claim Form, the Claim Form must be completed as instructed on the Claim Form with no other material alterations (excepting disputes pursuant to Section 11(i)), signed, dated, and postmarked or otherwise returned to the Claims Administrator within the Claim Period.

    (i)    Within ten (10) days of receipt of an unsigned, incomplete or altered claim form, the Claims Administrator shall notify the Settlement Class Member who returned the form of its deficiency and provide such individual with a substitute form that the individual may use to cure the deficiency within the later of the Claim Period or ten (10) days after being notified of the deficiency by the Claims Administrator.  The notice of deficiency and substitute form required hereunder shall be provided to the individual via U.S. mail.  The substitute Claim Form must be returned and be a Valid Claim Form in the time provided in this subsection.  A Claim Form that remains unsigned, incomplete or altered after the close of the Claim Period is void, absent a showing of good cause made more than ten (10) days prior to the accounting performed by the Claims Administrator.  The Parties agree to allow the Claims Administrator to resolve any challenges regarding the validity of any Claim Form made pursuant to this subsection, consistent with the terms of this Agreement, and to make a final and binding determination on all issues presented by any such challenges.

    (ii)    Settlement Class Members who do not return a Valid Claim Form to the Claims Administrator in compliance with the preceding paragraphs, and do not timely opt-out prior to the Final Approval Order, shall be deemed to release all claims against Rite Aid as described in Section 13(a) and shall be deemed to have waived any right to receive a payment in conjunction with the Settlement.

(e)    <u>Filing of Consents to Join with Court</u>.  Upon the expiration of the Claim Period, the Claims Administrator shall separate the consent to join portion of the Claim Forms and shall, after making a copy, transmit all originals of such to Klafter Olsen & Lesser LLP, who shall file such portion with the Court ten (10) days prior to the distribution of the Distribution Amounts to Participating Settlement Class Members.  Simultaneously, the Claims Administrator shall compile, make a copy, and transmit all originals of the Release portion of the Claim Forms to Rite Aid's counsel.  In addition, at such time, the Claims Administrator shall submit to the Court a declaration verifying full compliance with the Final Approval Order and this Agreement.  Should the Agreement not receive Final Approval, the consent to join forms and releases are void.

(f)    <u>Timeliness of Submissions</u>.

    (i)    A required mailing sent by a Settlement Class Member shall be considered timely pursuant to this Agreement if the mailing is sent by U.S. Mail and postmarked before the applicable deadline.  Notwithstanding this requirement, if a Settlement Class Member fails to send a required form by U.S. Mail, then the form will not be considered valid unless actually received by the Claims Administrator before the applicable deadline.

SETTLEMENT AGREEMENT
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

(ii)   If the prescribed time period in which to complete any required or permitted notices or mailings in accordance with this Agreement expires on a Saturday, Sunday or legal holiday (as defined by Fed. R. Civ. P 6(a)(4)), such time period shall be continued to the next following business day.

(g)   Reminder and Subsequent Mailings.

(i)   Thirty-five (35) days after the first mailing by the Claims Administrator to Settlement Class Members, the Claims Administrator will mail, by first class U.S. mail, a second mailing, containing the same documents described in Section 11(a), to Settlement Class Members who have not returned a Valid Claim Form or submitted a timely request for exclusion from the State Settlement Class.  The Parties will confer with the Claims Administrator concerning this second mailing to ensure that the process is as efficient as possible and without confusion.  Seven (7) days prior to the second mailing, the Claims Administrator shall establish an automated telephone call to call Settlement Class Members who have not returned a Valid Claim Form or a timely request to opt-out to advise them that the second mailing shall be coming.

(ii)   Fifteen (15) days after the second mailing is completely mailed, the Class Administrator shall send buck slip reminders to Settlement Class Members who have not returned a Valid Claim Form or timely submitted a request to opt-out by that date, which buck slip shall inform the Settlement Class Members how to obtain a Claim Form by contacting the Claims Administrator by telephone, internet or mail.

(iii)   Counsel for the Parties agree to discuss the validity of untimely claims on a case-by-case basis. Any discussions pursuant to this Section shall be conducted between counsel identified in Section 23, or their designees.

(h)   Locating Class Members and Returned Notices.  If a Settlement Class Member's notice packet is returned with a forwarding address, the Notice shall be re-mailed by the Claims Administrator to that address within three (3) days following the receipt by the Claims Administrator of the returned mail.  If a Settlement Class Member's notice packet is returned without a forwarding address, the Claims Administrator shall perform a standard Level 2 skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice within three (3) days of receiving or obtaining such information. If a Settlement Class Member's notice packet is returned without a forwarding address and a new address is not obtainable from the U.S. Post Office or through a standard Level 2 skip tracing, the Claims Administrator shall notify Rite Aid's Counsel and Lead Class Counsel, who will confer in good faith , on a case-by-

22

case basis, whether to instruct the Claims Administrator to conduct further traces, such only occurring if counsel for both Parties agree.  If a new address is obtained at least fourteen (14) days prior to the end of the Claim Period, the Claims Administrator shall mail the notice packet to the address located and the Settlement Class Member shall have fourteen (14) days from the post-marked date of the packet to postmark and mail a completed Valid Claim Form to the Claims Administrator.

(i)    <u>Disputes</u>.

    (i)    If a Settlement Class Member disputes the number of weeks worked as listed for him/her in the Claim Form, he or she must present pay stubs evidencing the number of completed weeks worked as an Assistant Store Manager and/or Co-Manager, excluding leaves of absence.  Counsel for the Parties shall promptly be notified by the Claims Administrator of any such dispute.  The information as to the number of completed weeks worked as pre-printed on the Claim Form shall be determinative of any disputed Distribution Amount, except that a Settlement Class Member may present to the Claims Administrator one or more Rite Aid paycheck stub(s) demonstrating employment as an Assistant Store Manager and/or Co-Manager supporting a greater number of completed weeks worked.  In this event, the number of completed weeks worked as an Assistant Store Manager and/or Co-Manager as reflected on the Rite Aid paycheck stub(s) will be determinative unless the Claims Administrator concludes that the Rite Aid paycheck stub(s) is not authentic or was altered.  The Parties agree that the Claims Administrator's decision on completed work weeks will be final and binding.  Settlement Class Members will be advised in the Notice that, to participate in the Settlement, they must agree to this dispute provision as well.

    (ii)    If any person contacts any of the Parties or the Claims Administrator during the Claim Period, asserting that he or she should have been sent a Notice and should be entitled to participate in the Settlement but that person is not included in the list sent by Rite Aid to the Claims Administrator as described in Section 11(a), that person shall be instructed by the Party or Claims Administrator to submit the dispute in writing to the Claims Administrator together with any documents or other evidence in support of his or her position.  Counsel for the Parties shall be promptly notified of any dispute.  The Claims Administrator shall resolve the dispute by making a binding determination as to the issues presented by the claim, after consultation with the Parties' Counsel and review of any relevant documents.  The Claims Administrator shall inform the potential member of the Settlement Classes of the outcome of the dispute.  However, in making such a determination, the presumption will be that the records kept by Rite Aid are accurate.  Nothing in this Section will preclude any person from submitting an objection to the Court.

(iii)   If any Settlement Class Member contacts any of the Parties or Counsel for any of the Parties about the Settlement, he or she will be instructed to contact the Claims Administrator.  It is the intent of the Parties that the Claims Administrator be the initial interface with Settlement Class Members about this Settlement and administration of the Settlement.

(j)   Procedures for Objecting to the Settlement.

(i)   Settlement Class Members seeking to object to the Settlement must timely file and serve such objection at least twenty-one (21) days prior to the Final Approval Hearing.  The Notices mailed to Settlement Class Members shall contain the requirements and information set forth in this subsection.

(ii)   To object, Settlement Class Members must file with the Court and serve on Counsel for the Parties listed in Section 23 below by first-class mail a written statement describing their reasons for objecting to the Settlement. No person shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the Settlement, and no written objections or briefs submitted by any person shall be received or considered by the Court at the Final Approval Hearing, unless such written statement of objections and supporting materials are timely filed and served as set forth herein.

(iii)   Persons who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.  Persons who are not Settlement Class Members or who submit a timely request to opt out of the Settlement (if a member of the State Settlement Class), may not object to the Settlement, and any objections filed by such persons will be null and void.

(k)   Procedure for Opting Out of the Settlement.  Members of the State Settlement Class who wish to opt out of the Settlement must submit to the Claims Administrator a request to opt out that includes their name and the Rite Aid store(s) in which they worked, postmarked by first-class U.S. mail no later than twenty-one (21) days prior to the Final Approval Hearing.  If, however, the State Settlement Class Member submits a timely Valid Claim Form, his or her opt out request will be void. The Notices mailed by the Claims Administrator shall contain the requirements and information set forth in this subsection.

(l)   Calculation of Distribution Amounts.

(i)   Calculation of Individual Awards.  Each Settlement Class Member who submits a timely and valid Claim Form ("Participating Settlement Class Member") will receive an amount calculated pursuant to the formula below (his or her "Claim Amount"):

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

1.      Using Rite Aid's records, the Claims Administrator will calculate the approximate aggregate number of weeks that all Settlement Class Members were employed as Assistant Store Managers and/or Co-Managers during the applicable periods set forth in Section 5;

2.      Using Rite Aid's records, the Claims Administrator will calculate the approximate number of weeks that each Settlement Class Member was employed as an Assistant Store Manager and/or a Co-Manager during the applicable period set forth in Section 5 and, for each Participating Settlement Class Member who was employed in the State of Pennsylvania a 10% increase in the number of weeks shall be calculated, and, for each Participating Settlement Class Member who was employed in the State of New Jersey, a 20% increase in the number of weeks shall be calculated;

3.      For each Participating Settlement Class Member, divide the figure calculated pursuant to Section 11(1)(2) by the figure calculated pursuant to Section 11(1)(2) to arrive at the fraction of the Net Settlement Amount that the Participating Settlement Class Member is eligible to receive under this Agreement.

4.      Multiply the Net Settlement Amount by the fraction calculated as described in Section 11(1)(3) to determine the amount that the Participating Settlement Class Member may claim.

(ii)     The number of completed workweeks for each Participating Settlement Class Member shall include the total number of workweeks in any Settlement Class for which they are eligible, with no double-counting of weeks if the Participating Settlement Class Member is a member of multiple Settlement Classes.

(iii)    Each Participating Settlement Class Member shall be eligible to receive an award in the amount of the Weekly Payment multiplied by the number of completed workweeks that he or she worked for Rite Aid as an Assistant Store Manager and/or Co-Manager (subject to the limitation in Section 11(l)(ii) above), excluding leaves of absence, during the Applicable Class Period or as determined by a date three years prior to their having filed a consent to join in any of the Wage-Hour Lawsuits, whichever is longer.

(iv)    In the event that the QSF yields interest, the interest earned shall be paid to the QSF and included in the Total Settlement Amount.

(m)   Payments to Participating Settlement Class Members.

(i)     Within twenty-one (21) days after the Effective Date, the Claims Administrator shall disburse the Distribution Amounts to the Participating Settlement Class Members, less applicable taxes and withholdings, by

25

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

mailing checks by certified U.S. Mail.  Checks issued pursuant to this Section shall expire ninety (90) days after they are mailed, but a failure by any Participating Settlement Class Member to deposit or cash a check within the time period allotted shall have no effect on that individual's consent to join the Wage-Hour Lawsuits, not having opted out of the State Settlement Class, or Release pursuant to Section 12.  If the check has not been deposited or cashed by any Participating Settlement Class Member within thirty (30) days after it was mailed, the Claims Administrator shall contact the Participating Settlement Class Member and inquire whether they require a replacement check, in which case the Claims Administrator shall follow the procedures set forth below.  At the close of the 90-day period, the Claims Administrator will issue a stop-payment order on all uncashed/undeposited or returned checks.  If a check is returned as undeliverable, the Claims Administrator shall follow the procedures set forth in Section 11(h) regarding returned notice packets.  After following the foregoing procedures, the Claims Administrator shall issue a stop-payment order on all remaining uncashed/undeposited or returned checks.

(ii)     In the event of a Participating Settlement Class Member's report of a lost or destroyed check within the applicable check-depositing/cashing period, the Claims Administrator shall issue a stop payment order on the original check and issue a new check to such Participating Settlement Class Member.

(iii)    The Parties agree that fifty percent (50%) of all Distribution Amounts shall be treated as wages, and the remaining fifty percent (50%) shall be treated as liquidated damages (in lieu of interest) for tax purposes.

(iv)    The payment of Distribution Amounts to Participating Settlement Class Members shall have no impact on their entitlement to or receipt of any benefits under any Rite Aid policy, practice, or welfare or benefit plan, except for compensation paid in connection with this Settlement, as to which no benefits will be paid; or, as allowable by law, to their entitlement or receipt of workers compensation benefits or unemployment compensation.

(v)     The parties agree that the sum of $50,000 shall be reserved as an Administration Cost to pay any late claims that are received within one year following the Effective Date, or to correct any errors, and any amounts of this sum that remain undisbursed as of one year following the Effective Date shall be returned to Rite Aid.

(n)     No claim of any Settlement Class Member shall be barred or limited by reason of any release or waiver or declaration of any kind previously executed by him or her relating to compensation paid or allegedly owed to such Settlement Class Member by reason of any work performed during the Applicable Class Period,

excepting payments made in connection with any Wage and Hour Claims.  The payment of a Distribution Amount to a Participating Settlement Class Member who is subject to such a previously executed release or waiver, however, shall not invalidate or render unenforceable such release or waiver or any part of an agreement in which such a release or waiver is included.

(o)     All Distribution Amounts that have not been claimed by Participating Settlement Class Members or otherwise remaining after the provisions of Sections 6(c) and 12(m)(ii) are met, will be distributed pursuant to Section 6(g) when the settlement checks expire.  The Claims Administrator shall transfer the aggregate of all Distribution Amounts as set forth in Section 6(g) within one hundred and twenty (120) days after the Effective Date.  The Final Distribution of Funds shall be deemed to have occurred upon the transfer of funds to Rite Aid pursuant to this paragraph.

12.     **General Wage and Hour Release and Covenant Not to Sue.**

(a)     Upon the Effective Date, all members of the State Settlement Class who have not opted out, including their heirs, assigns and estates, shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of any state or local law (both statutory and common law) pertaining to hours of work or payment of wages while employed by the Released Parties in the position of Assistant Store Manager and/or Co-Manager, including without limitation all state and local claims that were asserted or could have been asserted in the Wage-Hour Lawsuits, based on the allegations in them, regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of the Final Approval Order, provided however that this release shall not bar any claims arising after the Final Approval Order, including retaliation claims.

(b)     Upon the Effective Date, all individuals who join the *Craig* Wage-Hour Lawsuit as members of the Federal Settlement Class (including, without limitation, all individuals who have filed opt-in forms in the Wage-Hour Lawsuits and who timely return a Claim Form containing a consent to join the Action pursuant to 29 U.S.C. 216(b)) shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties, from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of federal law pertaining to hours of work or payment of wages while employed by the Released Parties, in the position of Assistant Store Manager and/or Co-Manager, including without limitation all claims that were asserted or could have been asserted in the Wage-Hour Lawsuits under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of Final Approval Order, provided however

SETTLEMENT AGREEMENT
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

that this release shall not bar any claims arising after the Final Approval Order, including retaliation claims.

(c)     Upon the Effective Date, the Settlement Class Representatives, including their heirs, assigns and estates, fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of any state or local law (both statutory and common law) pertaining to hours of work or payment of wages while employed by the Released Parties, including without limitation all state and local claims that were asserted or could have been asserted in the Wage-Hour Lawsuits, based on the allegations in them, regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of the Final Approval Order, provided however that this release shall not bar any claims arising after the Final Approval Order, including retaliation claims.

(d)     Upon the Effective Date, the Settlement Class Representatives, including their heirs, assigns and estates, fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties, from any and all suits, actions, causes of action, claims, or demands against the Released Parties or any of them based on putative violations of federal law pertaining to hours of work or payment of wages while employed by the Released Parties, including without limitation all claims that were asserted or could have been asserted in the Wage-Hour Lawsuits under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., regarding events that occurred or are alleged to have occurred from the beginning of time until the 10th business day following the entry of Final Approval Order, provided however that this release shall not bar any claims arising after the Final Approval Order, including retaliation claims.

13.     **Covenant Not to Sue.**  Settlement Class Representatives, State Settlement Class Members and Participating Settlement Class Members promise not to file a lawsuit in any court alleging Wage and Hour Claims, or participate as a party or as a class member in any administrative or other legal proceedings, in any forum, against the Released Parties, for any claim included in the General Wage and Hour Release in subsections 13(a), 13(b), 13(c) and 13(d) above.  In consideration of the promises made by Rite Aid in this Agreement, each Settlement Class Representative, State Settlement Class Member and Participating Settlement Class Member agrees never to institute any suit, complaint, proceeding, grievance or action of any kind at law, in equity, or otherwise in any court of the United States, state or municipality, and administrative agency, or any arbitration or other legal forum, against Rite Aid for any claim included in the General Wage and Hour Release in subsections 13(a), 13(b), 13(c) and 13(d) above.  Each Settlement Class Representative, State Settlement Class Member and Participating Settlement Class Member also agrees that he/she will not join, participate in, or consent to opt in to any actions alleging that he/she is similarly situated to any other employee with respect to any such released claims, and that each will elect to opt out of any such actions against Rite Aid of which he or she is involuntarily made a member or participant (except that the

SETTLEMENT AGREEMENT
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

term participant does not apply to or include serving as a witness in another proceeding). If any Settlement Class Representative, State Settlement Class Member or Participating Settlement Class Member is joined in any class or collective lawsuits for any released claims, he/she will receive no further compensation of any kind for such released claim. Settlement Class Representatives, State Settlement Class Members and Participating Settlement Class Members further acknowledge and agree that the covenant not to sue is an essential and material term of this Agreement and that no settlement could have been reached by the Parties without this term.  The Settlement Class Representatives, State Settlement Class Members and Participating Settlement Class Members affirm that they understand and acknowledge the significance and consequence of this specific term of the Agreement.

14.   **Dismissal of Lawsuits.**  Within five (5) days after the disbursement of the Distribution Amounts to Participating Settlement Class Members, Rite Aid's Counsel shall file a stipulated dismissal with prejudice and without costs with the Court of the Wage-Hour Lawsuits and *Craig* pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii), for the Court's entry.  The Dismissal shall be executed by all counsel for the Parties not later than five (5) days following entry of the Preliminary Approval Order, and shall be held in escrow by Rite Aid's Counsel until the time prescribed in this Section.  In addition, following payment of the Distribution Amounts, the Claims Administrator shall provide a written certification of such payments to Counsel for the Parties.  If the Effective Date does not occur for any reason, Rite Aid's Counsel will return the executed dismissal to Settlement Class Counsel within five (5) days.

15.   **Voiding the Settlement Agreement.**

(a)   This Agreement is contingent upon the Court's approval of the Settlement.  If the Court refuses to grant Preliminary or Final Approval or the Effective Date does not occur, this Agreement may be voided at either party's option, in which case this Agreement, the term sheet, and the Exhibits, will not be admissible as evidence or otherwise and may not be used for any purpose in connection with any further litigation in the Wage-Hour Lawsuits or any other lawsuit, administrative or other legal proceeding, claim, investigation or complaint, except that the non-disclosure obligations in Section 16 below will remain in force with full effect.

(i)   Rite Aid, at its sole discretion, may withdraw from and void this Agreement by providing notice to Settlement Class Counsel and to the Court within ten (10) days after the Claims Administrator provides the Parties with a list of all State Settlement Class Members who have opted out of the Wage-Hour Lawsuits, if the total amount of the Distribution Amounts which the State Settlement Class opt-outs would have received had they not opted out equals or exceeds ten percent (10%) of the Net Settlement Amount.

(ii)   All pending lawsuits and any additional lawsuits filed until the date of Preliminary Approval asserting Wage and Hour Claims by Assistant Store Managers and/or Co-Managers not specifically listed in this Agreement and filed in federal court prior to Final Approval, if feasible, shall be added to this Settlement under the terms of this Agreement and dismissed following Final Approval.  Rite Aid's Counsel agrees to timely identify such pending lawsuits

16.   **Non-Disclosure and Communications.**

(a)   The Parties and their respective counsel agree that they will keep all settlement negotiations and/or communications leading up to the execution of this Agreement strictly confidential and will not publicize, discuss, disclose or in any way convey any such information in any manner, whether in writing, orally or electronically (including online, web or internet postings, pages and blogs) to anyone not a member of any Settlement Class, unless compelled by law.

(b)   The Parties will prepare a positive joint statement regarding the Wage-Hour Lawsuits and settlement of such lawsuits.  All communications by Lead Class Counsel, Settlement Class Counsel, the Settlement Class Representatives, and Rite Aid and Rite Aid's counsel regarding the Wage-Hour Lawsuits and settlement of such lawsuits shall be consistent with this joint statement.

(c)   Nothing in this Agreement shall prevent Rite Aid from filing any required regulatory disclosures regarding the Lawsuits or complying with its obligations as a public company.

(d)   Settlement Class Representatives, Lead Class Counsel and Settlement Class Counsel will promptly notify Rite Aid's Counsel in advance of any demand or compulsion by law to disclose the negotiations leading to this Agreement, and will cooperate fully with Rite Aid if Rite Aid decides to challenge the demand or legal compulsion to disclose this information.

17.   **Return of Documents.**  Any documents and information produced by Rite Aid as part of settlement discussions until execution of this Agreement, including all copies, excerpts, and electronic versions thereof, shall be destroyed by Settlement Class Counsel or returned to Rite Aid's Counsel within ten (10) days of the Effective Date.  Within fourteen (14) days after the Effective Date, each Lead Class Counsel and Settlement Class Counsel shall notify Rite Aid's Counsel in writing that he or she has destroyed or returned any and all such documents produced by Rite Aid and has not retained any copies thereof.

18.   **No Retaliation.**

(a)   Consistent with its legal obligations, Rite Aid will not retaliate against any Participating Settlement Class Member.  Neither Party will retaliate against any

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

Settlement Class Member based on his/her decision to participate or not to participate in the Wage-Hour Lawsuits and/or the Settlement.

(b)     Rite Aid will affirmatively encourage participation by Settlement Class Members in the Settlement by providing talking points to Store Managers and District Managers directing them to encourage participation by Assistant Store Managers and Co-Managers if asked about the Settlement.  Rite Aid will not discourage Settlement Class Members from submitting claims for Distribution Amounts, including those who signed declarations on behalf of Rite Aid to be used in the Wage-Hour Lawsuits.  Settlement Class Counsel will promptly notify Rite Aid's Counsel of any complaints by Settlement Class Members about any conduct by a Rite Aid employee at the Store Manager level or higher regarding this obligation. Rite Aid agrees that the list of individuals who participate in the Settlement shall not be shared beyond its legal department except as necessary to effectuate the Settlement.

19.     **Mutual Full Cooperation.**  The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents as may be necessary to implement the terms of this Agreement.  The Parties shall use their best efforts to effectuate this Agreement, including during any appeals.  As soon as practicable after execution of this Agreement, Settlement Class Counsel shall, with the assistance and cooperation of Rite Aid's Counsel, take all necessary steps to secure Preliminary and Final Approval.  Settlement Class Representatives, Settlement Class Counsel and Rite Aid each agree to abide by the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend it from any legal challenge, whether by appeal or collateral attack.

20.     **Non-Waiver.**  No delay or omission by either Party in exercising any right under this Agreement shall operate as a waiver of that or any other right.  A waiver or consent given by a Party on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

21.     **Complete Agreement.**  Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith.  This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

22.     **Knowing and Voluntary Agreement.**  The Parties each agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance.  The Parties further affirm that they have not been coerced, threatened, or intimidated into signing this Agreement; that they have been advised to consult with an attorney; and that

they in fact have consulted with an attorney before signing this Agreement.  Lead Class Counsel and Settlement Class Counsel represent that they have conducted a thorough investigation into the facts of the Wage-Hour Lawsuits and have diligently pursued an investigation of the claims asserted on behalf of Settlement Class Members against Rite Aid.

23. **Notifications and Communications.**  Any notifications and communications made pursuant to, required by or otherwise in connection with the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

*For Settlement Class Representatives and*        *For Rite Aid to:*
   *Settlement Class Members to*:

                                                      Daniel E. Turner, Esq.
Seth R. Lesser, Esq.                            **Ogletree, Deakins, Nash, Smoak**
**Klafter Olsen & Lesser LLP**                 **& Stewart, P.C.**
Two International Drive, Suite 350      191 Peachtree Street, N.E.
Rye Brook, NY 10573                Suite 4800
seth@klafterolsen.com              Atlanta, Georgia  30303
                                                   daniel.turner@ogletreedeakins.com

24. **Severability.**  If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law.  If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law, subject to the provisions of Section 3(d) permitting any Party to void the Agreement in the event of a change to a material term.

25. **Enforcement of Settlement Agreement and Governing Law.**  This Agreement shall be governed by Pennsylvania law, without regard to that state's choice of law provisions.  The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval and enforcement of the terms of this Agreement.

26. **No Settlement Party Is the Drafter**.  No Party shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that would or might cause any provision to be construed against the drafter hereof.  This Agreement was drafted with the input by all Parties upon consultation with their counsel, and no reliance was placed on any representations other than those contained herein.

27. **Headings Not Controlling.** The headings in this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

28.   **Calculation of Time Periods.**  All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a partner in Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the observance of New Year's, the birthday of Dr. Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal or a Pennsylvania state holiday on which the Court is closed.

29.   **Agreement Form and Construction.**

(a)   The Parties agree that the terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

(b)   This Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties, and, if material, approved by the Court.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties.

(c)   To the extent necessary to effectuate the terms of this Agreement, including without limitation the meaning of any defined terms, the singular shall be construed as the plural and the plural construed as the singular, except where a plain reading of the language indicates that the use of the singular or plural is intended.

(d)   This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

(e)   The Notices will advise all Settlement Class Members of the binding nature of the Agreement.  Submission of a Valid Claim Form or cashing of the Distribution Amount check shall constitute acceptance of this Agreement and have the same force and effect as if each Participating Settlement Class Member signed this Agreement.

(f)   This Agreement may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon the Effective Date as to all Parties subject to the terms and conditions provided herein.

**SETTLEMENT AGREEMENT**
**RITE AID ASSISTANT STORE MANAGER & CO-MANAGER LITIGATION**

(g)     This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the released claims.

(h)     In the event of an inconsistency between the (1) Notices and/or Claim Form; and (2) the Settlement Agreement, this Agreement shall govern.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Shirley Craig | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | 6-13-2012 Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Shirley Craig | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| *Priscilla Thomas* | 6/11/12 | Jose Fermin | |
| Priscilla Thomas | Date | | |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Shirley Craig | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | 6/13/12 Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| Shirley Craig | Date | Eddie Ibea | Date |
|---|---|---|---|

| Justin Torres | Date | Karriem Perkins | Date |
|---|---|---|---|

| James Fisher | Date | Robert Vasvari | Date |
|---|---|---|---|

| Daniel Knepper | Date | Ralph Cedano | Date |
|---|---|---|---|

| Donna Garcia | Date | Rene Hough | Date |
|---|---|---|---|

| Sheryl Doyon | Date | Robin Mazzantini | Date |
|---|---|---|---|

| Lisa Laun | Date | DeShawn Powell | Date |
|---|---|---|---|

| Yvon Witty | Date | Angel Quinones | 6/14/2012 Date |
|---|---|---|---|

| Thomas Finley | Date | Larry Eaton | Date |
|---|---|---|---|

| Priscilla Thomas | Date | Jose Fermin | |
|---|---|---|---|

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Shirley Craig | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date  6/13/12 |
| Daniel Knepper | Date | Ralph Celano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | |

Fax
914-934-9220

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Shirley Craig | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| *Daniel Knepper* (signed) | 6-13-12 Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | Date |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| _Shirley Craig_ | | | |
| Shirley Craig | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | |

Jennifer Elliot                     6-13-2012
Jennifer Elliot                     Date

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| _____ | Date | _____ | Date |
| Shirley Craig | | Eddie Ibea | |
| _____ | Date | _Karriem Perkins_ | _6/14/12_ |
| Justin Torres | | Karriem Perkins | Date |
| _____ | Date | _____ | Date |
| James Fisher | | Robert Vasvari | |
| _____ | Date | _____ | Date |
| Daniel Knepper | | Ralph Cedano | |
| _____ | Date | _____ | Date |
| Donna Garcia | | Rene Hough | |
| _____ | Date | _____ | Date |
| Sheryl Doyon | | Robin Mazzantini | |
| _Lisa Laun_ | _6-14-12_ | _DeShawn Powell_ | _6/13/12_ |
| Lisa Laun | Date | DeShawn Powell | Date |
| _____ | Date | _____ | Date |
| Yvon Witty | | Angel Quinones | |
| _____ | Date | _____ | Date |
| Thomas Finley | | Larry Eaton | |
| _____ | | _____ | |
| Priscilla Thomas | Date | Jose Fermin | Date |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | Date | | Date |
|---|---|---|---|
| Shirley Craig | | Eddie Ibea | |
| Justin Torres | | Karriem Perkins | |
| James Fisher | | Robert Vasvari | |
| Daniel Knepper | | Ralph Cedano | |
| Donna Garcia | | Rene Hough | |
| Sheryl Doyon | | Robin Mazzantini | 6-14-12 |
| Lisa Laun | | DeShawn Powell | |
| Yvon Witty | | Angel Quinones | |
| Thomas Finley | | Larry Eaton | |
| Priscilla Thomas | | Jose Fermin | |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Shirley Craig | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | 6-13-012 |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this
Agreement to be signed and entered under seal as of the respective dates written below as their
free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| Shirley Craig | Date | Eddie Ibea | Date |
| --- | --- | --- | --- |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | 6/13/12 Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| *Shirley Craig* | Date | Eddie Ibea | Date |
| Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | |

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Shirley Craig | Date | Eddie Ibea | Date |
| *Justin Torres* (signature)  6/12/12 Justin Torres | Date | Karriem Perkins | Date |
| James Fisher | Date | Robert Vasvari | Date |
| Daniel Knepper | Date | Ralph Cedano | Date |
| Donna Garcia | Date | Rene Hough | Date |
| Sheryl Doyon | Date | Robin Mazzantini | Date |
| Lisa Laun | Date | DeShawn Powell | Date |
| Yvon Witty | Date | Angel Quinones | Date |
| Thomas Finley | Date | Larry Eaton | Date |
| Priscilla Thomas | Date | Jose Fermin | |